# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ESTATE OF ANTONIO GONZALEZ,**
    Plaintiff,

    v.                                  Case No. 21-cv-0848

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

**ESTATE OF JAY ANDERSON, JR., et al.,**
    Plaintiff,

    v.                                  Case No. 21-cv-1179

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

**ESTATE OF ALVIN COLE, et al.,**
    Plaintiff,

    v.                                  Case No. 22-cv-0856

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

## DECISION AND ORDER

Plaintiffs in these consolidated cases are the estates and relatives of individuals who were fatally shot by defendant, Wauwatosa police officer Joseph Mensah. Plaintiffs bring claims under § 1983 and Wisconsin law against Mensah, former Wauwatosa police chief Barry Weber, the City of Wauwatosa, and the Cities and Villages Mutual Insurance Company ("CVMIC"). Before me now are defendants' motions to dismiss in the Anderson and Cole cases.

## I. ALLEGATIONS

On July 15, 2015, defendant Mensah responded to a call about an intoxicated Hispanic individual, Antonio Gonzales, who had threatened his boyfriend with a knife. Plaintiffs allege that, when Mensah arrived, Gonzales's boyfriend was safe, and Gonzales no longer posed a threat. When Mensah arrived, Gonzales was holding what plaintiffs describe as a decorative sword. Plaintiffs allege that Mensah ordered Gonzales to drop the sword and, without giving Gonzales time to respond, fired his weapon eight times, killing Gonzales. Mensah was placed on inactive duty for four months. Plaintiffs allege that defendant Weber returned Mensah to active duty without conducting an internal investigation into the shooting or a fitness for duty exam and later awarded Mensah a medal of valor for his conduct.

On June 23, 2016, Mensah encountered Jay Anderson Jr., an African American, sleeping in his car in a parking lot adjacent to a park. Plaintiffs allege that Mensah woke Anderson and ordered him to put his hands above his head, that Anderson complied with the order but that Mensah fired on him until his gun was empty, killing him.

On February 2, 2020, Mensah and other Wauwatosa Police Department "WPD" officers were dispatched to a mall after receiving a report of a verbal dispute. Upon their arrival, they witnessed Alvin Cole, an African American, exit the mall and chased him on foot. Cole had a gun, and the officers ordered him to drop it. Plaintiffs allege that, while attempting to drop the gun, Cole accidently shot himself in the forearm, that he then dropped the gun and dropped to his hands and knees, and, ten seconds later, Mensah ran towards him and, without giving any additional directions, shot him five times, killing him. Weber later awarded Mensah a medal of valor for his conduct.

Plaintiffs allege that the WPD maintained a culture of racism; in the 1980s and 1990s, it organized "MLK parties" at which officers would dress in black face while wearing name tags bearing the names of African Americans and distribute Ku Klux Klan and white supremacist literature. Plaintiffs allege that then police chief Weber failed to discipline the attending officers and promoted several, some of whom were supervisors at the time of Mensah's shootings. Plaintiffs also allege that the WPD over-policed African Americans and that, while slightly more than 5% of Wauwatosa's residents are African American, in 2018, 83% of WPD arrests and 64% of its traffic stops involved people of color. Plaintiffs also allege that the WPD has a longstanding practice of using excessive force, especially against people of color. In addition to the Mensah shootings, they point to excessive force incidents against African Americans occurring in 2002 and 2006.

## II. DISCUSSION

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. In construing plaintiff's complaint, I assume that all factual allegations are true but disregard statements that are conclusory. *Iqbal*, 556 U.S. at 678.

### A. Excessive Force Claims Against Weber and the City

Defendants move to dismiss plaintiff's excessive force claims against Weber and the City. Plaintiffs bring these claims pursuant to the Fourth Amendment. *Graham v.*

*Connor*, 490 U.S. 386, 388 (1989). Plaintiffs bring individual and official capacity claims against Weber. Defendants argue that plaintiffs' individual capacity claims against him fail because he was not personally involved in the shootings of Anderson and Cole. To be liable under § 1983, a supervisor must be personally involved in the deprivation of a constitutional right. *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). "To show personal involvement, the supervisor must 'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see," *Id.* (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)). A supervisor's negligence is insufficient to establish personal involvement; the supervisor must "act either knowingly or with deliberate, reckless indifference." *Jones*, 856 F.2d at 992.

Plaintiffs allege that Weber knew Mensah had previously shot Gonzales, that he had failed to conduct an internal investigation of the shooting and that he failed to determine whether Mensah was fit for duty before returning him to active duty. Plaintiffs allege that these failures indicate that Weber turned a blind eye toward whether the Gonzales shooting was justified and recklessly disregarded whether Mensah posed a danger to the constitutional rights of others such as Anderson and Cole. Plaintiffs further allege that by awarding Mensah a medal of valor for the Gonzales shooting, Weber condoned Mensah's conduct. These allegations are enough for plaintiffs to withstand Weber's motion based on the issue of his personal involvement. Plaintiffs' official capacity claims against Weber are duplicative of his claims against the City and, therefore, must be dismissed.

In order to survive the City's motion, plaintiffs must allege that the constitutional violation they complain of was brought about by (1) an express municipal policy; (2) a de

4

facto custom or practice; or (3) a decision by a municipal agent with "final policymaking authority." *Darchak v. City of Chicago Bd. of Ed.*, 580 F.3d 622, 629 (7th Cir. 2009). Plaintiffs allege that the City had a de facto practice of using excessive force against people of color, that the City was on notice of this practice and that the practice brought about the shootings of Anderson and Cole. *See, e.g., Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003); *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 407 (1997).

In support of their claim, plaintiffs allege several previous incidents of excessive force against people of color, including the Gonzales incident, statistics showing that City officers stopped and arrested a much higher percentage of African Americans than whites and that the WPD had a history of not disciplining officers for racist behavior. Defendants argue that plaintiffs' allegations fall short of establishing a custom or practice. At the pleading stage, however, the bar is not as high as in subsequent stages of the case. *Williams v. City of Chicago*, 314 F.Supp.3d 1060, 1079 (N.D. Ill. 2018) (collecting cases). Considering all the circumstances, plaintiffs identify three incidents of alleged excessive force against people of color preceding the Anderson shooting and four preceding the Cole shooting. Plaintiffs' also allege a practice of over-policing African Americans, of racist behavior by officers going undisciplined and of Mensah being awarded medals for shootings. At this stage of the case, this is enough for plaintiffs to withstand the City's motion.

Plaintiffs also allege that Weber, a final policy maker, caused the shootings of Anderson and Cole by clearing Mensah for active duty without conducting a fitness for

5

duty test or an internal investigation of the Gonzales matter. This, too, is sufficient to enable plaintiffs to proceed on their claim against the City.

## B. Equal Protection Claims Against Mensah, Weber and the City

Plaintiffs also allege that Mensah, Weber and the City deprived them of equal protection of the law by using excessive force against Cole and Anderson because of their race. This claim is largely duplicative of plaintiffs' excessive force claim. To state an equal protection claim, plaintiffs must allege that "the defendant acted with a discriminatory purpose and discriminated against [them] because of [their] membership in an identifiable group." *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 697 (7th Cir. 2015). Based on the parties' agreement, this claim will be dismissed as to Weber. The other defendants argue that the claims against them fail because plaintiffs do not identify similarly situated white suspects. But prior to discovery, plaintiffs are not required to do so. *Geinosky v. City of Chicago*, 675 F.3d 743, 748 n. 3 (7th Cir. 2012) ("Even the more demanding pleading requirements under *Iqbal* and *Twombly* do not require a plaintiff to identify specific comparators in a complaint.") Thus, plaintiffs may proceed on this claim against Mensah and the City.

## C. Claims for Loss of Society and Companionship

Defendants move to dismiss a claim for loss of society and companionship under § 1983 brought by J.A., Anderson's daughter. Defendants argue that J.A. lacks standing to bring a claim for loss of society and companionship because she cannot show that *her* constitutional rights, as opposed to those of her father, were violated. The Seventh Circuit has yet to consider whether minor children have standing to bring claims under § 1983 for the loss of society or companionship of a parent. Defendants ask me to extend the

6

holding of *Russ v. Watts*, which established that parents do not have "a constitutional right to recover for the loss of companionship of an adult child when that relationship is terminated" as a result of state action. 414 F.3d 783, 791 (7th Cir. 2005). But in *Russ*, the court declined to consider whether a minor child could recover for the loss of companionship of a parent, stating that a minor child's "need for guidance and support of their parents warrants sharply different constitutional treatment." *Id.* at 790. The only courts in this district to consider the issue have inferred from this language that minor children may proceed on loss of society and companionship claims brought under § 1983 for the loss of a parent. *Est.of Fiebrink by Cade v. Armor Corr. Health Servs., Inc.*, 2019 WL 1980625, at *11 (E.D. Wis. May 3, 2019); *Avery v. City of Milwaukee*, 2015 WL 13016242, at *1 (E.D. Wis. May 19, 2015); *see also Mombourquette ex rel. Mombourquette v. Amundson*, 469 F.Supp.2d 624, 654 (W.D. Wis. 2007). I agree with the reasoning of these courts. If plaintiffs can show that Anderson's death was caused by a violation of his constitutional rights, J.A. may recover for the loss of society and companionship.

J.A., the Estate of Jay Anderson and Starkiesha Delarosa also bring claims for loss of society and companionship under state law. But, under Wisconsin law, damages for loss of society and companionship may only be "awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death." Wis. Stat. § 895.04(4). Delarosa was the mother of Anderson's child, but not his spouse. And the Estate of Jay Anderson is obviously not a child, parent, spouse or sibling of the deceased. Accordingly, the claims for loss of society and

7

companionship brought by Delarosa and the Estate must be dismissed. Because J.A. is Anderson's daughter, she may proceed with her state law claim.

### D. Other Claims

Plaintiffs bring an assortment of other claims such as a purported deliberate indifference claim under the Fourteenth, as opposed to the Fourth Amendment, an indemnity claim, claims under § 1983 against CVMIC and claims involving damages. These claims are either duplicative or inappropriately concern available relief and must be dismissed.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the motion to dismiss at ECF no. 50 in 21-cv-1179 is **GRANTED IN PART** and **DENIED IN PART** as explained above.

**IT IS FURTHER ORDERED** that the motion to dismiss at ECF no. 21 in 22-cv-856 is **GRANTED IN PART** and **DENIED IN PART** as explained above.

Dated at Milwaukee, Wisconsin, this 11th day of April, 2023.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge

8

Case 2:21-cv-00848-LA   Filed 04/11/23   Page 8 of 8   Document 54