

OFFICE OF THE DISTRICT ATTORNEY

# Milwaukee County

**JOHN T. CHISHOLM • District Attorney**

Chief Deputy Kent L. Lovern, Deputies James J. Martin, Patrick J. Kenney,
Lovell Johnson, Jr., Jeffrey J. Altenburg, Karen A. Loebel, Elisabeth Mueller

COPY 16-18370

Gale G. Shelton
David Robles
Steven H. Glamm
John M. Stoiber
Thomas L. Potter
Rayann Chandler Szychlinski
Carole Manchester
Steven V. Licata
Brad Vorpahl
Paul Tiffin
Dennis P. Murphy
Bruce J. Landgraf
Denis J. Stingl
Patricia A. McGowan
Irene E. Perthum
Ronald S. Dague
Karina O'Byrne
Kurt B. Benkley
James C. Griffin
William P. Pipp
Joanne L. Hardtke
Laura A. Crivello
Shawn Pompa
Kevin R. Shomin
Beth D. Zirgibel
Karen A. Vespalec
Paul C. Dedinsky
David T. Malone
Kelly L. Hedge
Rachael Stencel
Kathryn K. Sarner
Daniel J. Gabler
Joy Hammond
Grant I. Huebner
Stephan Eduard Nolten
Claire Starling
Rebecca A. Kiefer
Matthew J. Torbenson
Katryna L. Childs
Anthony White
Antoni Apollo
Nicole D. Loeb
Erin Karshen
Lucy Kronforst
Michael J. Lonski
Paul M. Hauer
Sara Beth Lewis
Jenni Spies Karas
Renee Heinitz
Karl P. Hayes
Holly L. Bunch
Megan M. Williamson
Sarah Sweeney
Kimberly D. Schoepp
Dax C. Odom
Benjamin A. Wesson
Jennifer L. Williams
Patricia I. Daugherty
Marissa L. Santiago
Meghan C. Lindberg
Ann M. Lopez
Matthew G. Puthukulam
Randy Sitzberger
Nicolas J. Heitman
Chad Wozniak
Kristin M. Schrank
Francesco G. Mineo
Tyrone M. St. Junior
Hanna R. Kolberg
Joshua M. Mathy
Antonella Aleman
Cynthia M. Davis
Jesica A. Ballenger
Matthew R. Westphal
Catelin A. Ringersma
Sara Volden Schroeder
Abbey M. DeSiato
Molly M. Schmidt
Jay R. Pucek
Danielle E. Chojnacki
Benjamin T. Lindsay
Michael Schindhelm
Brittany C. Grayson
Nathaniel E. Adamson
Margaret Kunisch
Sarah McNutt
Sarah J.S. Waldschmidt
Ryan T. Sanson
Jeremy R. Arn
Brandon A. Wigley
Sarra M. Klaie
Zachary A. Wittchow
William T. Berens
Patrick J. Anderson
Alex Mueller
Owen Poltrowski
Alyssa Schaller
Brittany S. Kachingwe
Elizabeth A. Longo
Katherine M. Halopka-Ivery
Benjamin Verhulst
Porchia S. Lewand
Kelly J. O'Neill
Jeanette Corbett
Katherine Ann Seelow
Stephanie M. Chiarelli
Jennifer L. Pickett
Erika Frank Motsch
Taylor L. Kraus
Michelle A. Schwab
William P. Dockry
Jessica Bellows
Ian F. Vance-Curzan
Daniel G. Murphy
Joshua A. Dryak
Angela D. Cunningham
Jennifer Lindeke Tate

December 5, 2016

Chief Barry Weber
City of Wauwatosa Police Department
1700 N. 116th Street
Wauwatosa, WI 53226

Re: Fatal critical incident involving Officer Joseph Mensah

Dear Chief Weber:

This letter summarizes the conclusions of the office regarding the June 23, 2016 critical incident involving Officer Joseph Mensah, which resulted in the death of Jay Anderson Jr. For the reasons indicated below, I find that Officer Mensah acted in accord with Wisconsin law and justifiably used deadly force in this incident.

On Thursday, June 23, 2016, at approximately 5:30 a.m., Milwaukee County District Attorney Investigators Joseph Link and Anna Linden and I responded to the area of 9800 W. Glendale Avenue in the City of Wauwatosa, which is the parking lot for Madison Park. The scene was comprised of two vehicles, one a Nissan Altima that was driven to the parking lot by Mr. Anderson, the other a marked Wauwatosa police squad vehicle facing the Altima. Six fired casings were located in the parking lot near the Altima. At the scene, we reviewed approximately twenty-eight seconds of video captured by Officer Mensah's squad car after the camera was activated by the officer. The District Attorney representatives then left the scene of this incident as the investigation of the officer involved shooting was undertaken by the Milwaukee Police Department, which oversaw all of the interviews and collection of evidence in this matter.

The investigation ultimately revealed that Officer Mensah was on patrol during the early morning hours of June 23. Just after 3:00 a.m., he drove his squad car into the parking lot at Madison Park to determine whether there were any occupants within the lot after the closure of the park. Upon entering the lot, Mensah communicated to Wauwatosa Police dispatch his specific location in the lot and the presence of another occupied vehicle there. The dispatch operator responded by instructing an additional Wauwatosa squad to report to the parking lot. Mensah then conveyed to the dispatch operator the license plate information on the Nissan Altima in the parking lot. After receiving this information, which indicated that the vehicle was owned by O.D.,[1] the officer parked his squad so it

---

[1] It was later determined that O.D. is the mother of S.D., who was the fiancée of Jay Anderson, Jr. S.D. later told investigators that Anderson awoke her at 11:30 p.m. on June 22 and told her he was leaving their residence and going to the gas station.

DEFS' RPD 000016
Case 2:21-cv-00848-LA   Filed 07/17/23   Page 1 of 4   Document 76-20 DEC. 5, 2020 EXHIBIT R

faced the Altima and shone a spotlight on it. The Altima had one occupant, the driver later identified as Jay Anderson, Jr.

Officer Mensah later reported that as he first observed the vehicle, he saw movement by Anderson. As the officer approached the Altima, Anderson appeared to be sleeping. Mensah believed that Anderson was not really asleep because he saw him move when he first arrived in his squad, and as Mensah approached on foot, Anderson appeared to be breathing quickly with his eyes closed. The officer approached the front seat passenger door and rapped on the window and identified himself as a police officer. Mensah was wearing his official Wauwatosa police uniform. According to the officer, Anderson eventually opened his eyes, looked at the officer, shrugged his shoulders and appeared to return to sleep. Mensah repeated his words to Anderson, who then rolled down the front passenger window so the two men could talk more easily.

During this conversation, Mensah asked Anderson if he had a driver's license and Anderson indicated he did not. Mensah observed Anderson repeatedly look down toward the front passenger seat of the Altima and then toward the officer. Mensah took a step closer to the vehicle and observed a semi-automatic firearm resting in plain view on the passenger seat. It was later determined that a cell phone and some U.S. currency were on the seat as well. Upon viewing the firearm, Mensah took out his own firearm from his holster and ordered Anderson to place his hands in the air and not to reach for the gun. Mensah also radioed to Wauwatosa dispatch the words, "Step it up. He has a gun." This statement to dispatch occurred approximately 3 ½ minutes after Mensah first informed dispatch of his arrival at Madison Park. The officer later reported that Anderson said, "What? There's nothing there. It's nothing," while the officer repeated his command to Anderson to keep his hands in the air, and repeatedly told Anderson not to reach for the gun on the seat.

According to Mensah, Anderson then lowered his right arm toward the passenger seat. Mensah became concerned that Anderson might reach for the handgun next to him, so the officer pointed his own gun at Anderson and repeated the order for him to keep his hands in the air, and to not reach for the handgun. The officer reported that Anderson lowered his right arm at least three more times toward the passenger seat, in disregard of his orders. Fearing that Anderson might take possession of the firearm within his reach, the officer fired his gun several times at Anderson. Anderson suffered multiple injuries to his head and upper torso area and later succumbed to these gunshot wounds. It was determined that Mensah discharged his firearm six times.

Immediately after firing the shots, Mensah successfully activated his squad video through a button near his radio. Wauwatosa police officers are not equipped with body cameras, but by activating the squad camera, the officer preserved twenty-eight seconds of video leading up to the shooting. Mensah's decision to activate the squad camera is also significant because there are no other witnesses to this incident.

As you are aware, in the time since this incident, the Milwaukee Police Department and this office sought efforts to enhance the quality of the squad video. The State of

DEFS' RPD 000017
Case 2:21-cv-00848-LA    Filed 07/17/23    Page 2 of 4    Document 76-29 EXHIBIT R

Wisconsin Department of Justice Division of Criminal Investigation produced enhancements of the video in late September, while the FBI recently produced an enhanced version as well. The video is still comprised of the same twenty-eight seconds as the original squad video, but DCI successfully enhanced the video and aided the investigation. Through several meetings, the Anderson family and their attorneys were apprised and presented the original and additional evidence as it became available to my office.

The video commences with the officer pointing his gun at Anderson, which would have occurred after his discovery of the firearm in the seat next to Anderson. Significantly, Mensah sent his radio dispatch regarding his observation of Anderson's firearm a full minute before firing shots. This substantiates the officer's report that he repeatedly verbalized commands to Anderson and that Anderson understood the commands by placing his hands in the air. During the twenty-eight second video, Anderson is seen moving his right arm three times toward the passenger seat, the last two times out of view of the camera, which would be below the dashboard of the Altima. As Anderson lowered his right arm the last two times, his torso leaned toward the passenger seat both times. During the final sequence, Anderson lowered his arm, then lifted it above the dashboard before quickly lowering it again toward the passenger seat where his firearm was located. After that quicker movement by Anderson, Mensah fired six shots rapidly while stepping back away from the Altima. Mensah called to dispatch, "Shots fired, shots fired!" approximately one minute after notifying dispatch of the presence of the firearm, and approximately four minutes and forty seconds after Mensah first informed dispatch of his presence in Madison Park.

Additional Wauwatosa police squads arrived at the scene, along with emergency medical responders. Squad video from an assisting police car shows officers removing Anderson's handgun from the front passenger seat of the Altima. The camera also captured a brief statement Mensah gave as the backup officers arrived and tried to assess the scene. Two days later, Mensah gave a more extensive interview about the details of this incident. Investigating officers at the scene reported that the interior of the vehicle contained a strong odor of marijuana.

The semi-automatic firearm recovered from the vehicle driven by Anderson was examined and found to be loaded with sixteen rounds, including one in the chamber. Anderson's DNA was also detected on the handgun. In addition, a toxicology report ordered during the autopsy of Anderson revealed the presence of marijuana in his system, and blood alcohol level of .114. In Wisconsin, a person may not lawfully operate a motor vehicle or handle a firearm with a blood alcohol level of .08 or above. Anderson did not have a concealed carry permit, and he was not allowed to possess a firearm because of his intoxication. Under Wisconsin law, a gun located within the passenger area of a vehicle is considered concealed. Anderson was found in possession of 12.41 grams of marijuana.

Wisconsin Statutes Section 938.48(1) states as follows:

DEFS' RPD 000018
Case 2:21-cv-00848-LA    Filed 07/17/23    Page 3 of 4    Document 76-20
DECL. EXHIBIT R

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

This is a two-part test, with subjective and objective components.

1) Did the officer have an actual subjective belief that deadly force was necessary to prevent imminent death or great bodily harm to himself or others?
2) Was that belief objectively reasonable?

See *State v. Head*, 2002 WI 99, 255 Wis. 2d 194, 648 N.W.2d 413.

The evidence in this case supports the use of deadly force by Officer Mensah. Mensah first made contact with Anderson as someone in a park after hours with no driver's license driving a vehicle titled in someone else's name. The evidence further indicates that Anderson was unlawfully carrying a loaded handgun concealed within the vehicle. The officer identified himself as a police officer wearing an official uniform and driving a marked police squad car. As the officer sought to determine the nature of the Anderson's possession of the firearm, he repeatedly gave Anderson a lawful command to keep his hands in the air until additional officers could arrive to investigate the situation further. He also repeatedly ordered Anderson not to reach toward the firearm. These repeated commands occurred for at least one full minute between the time Mensah communicated with police dispatch that Anderson had a gun and the time Mensah fired shots at Anderson. Anderson failed to comply with the officer's directives by repeatedly lowering his right arm and hand toward the area where his handgun was located. Once Anderson lowered his hand below the dashboard, lifted it briefly and quickly lowered it again toward the seat where his handgun was located, Mensah had an objective reasonable belief that he needed to use deadly force to prevent Anderson from potentially harming him with the handgun within his reach.

Accordingly, the conduct of Officer Joseph Mensah on June 23, 2016 was privileged in self-defense and justified under Wisconsin law. This office has concluded its review of this matter.

Sincerely,

Kent Lovern
Kent Lovern
Chief Deputy District Attorney

DEFS' RPD 000019
Case 2:21-cv-00848-LA   Filed 07/17/23   Page 4 of 4   Document 76-20 DECL. EXHIBIT R