
OFFICE OF THE DISTRICT ATTORNEY

# Milwaukee County

JOHN T. CHISHOLM · District Attorney

Chief Deputy Kent L. Lovern, Deputies Lovell Johnson, Jr., Jeffrey J. Altenburg, Karen A. Loebel,
Elisabeth Mueller, Matthew J. Torbenson, Bruce J. Landgraf

October 7, 2020

Chief Barry Weber
City of Wauwatosa Police Department
1700 North 116th Street
Wauwatosa, WI 53226

      Re:    February 2nd 2020 critical incident involving Officer Joseph Mensah and Alvin Cole at Mayfair Mall

Dear Chief Weber:

I reviewed the evidence related to the fatal shooting of Alvin Cole by Wauwatosa Police Officer Joseph Mensah on February 2nd of 2020 in the west parking lot of Mayfair Mall. A substantial part of the review consisted of evaluating the statements of witnesses and closely examining whatever objective independent evidence is available that sheds light on what occurred before and during the encounter. This includes reviewing squad videos and audio recordings of the encounter. I have compiled portions of the key moments in a video presentation that will be made public, by accessing the link at https://youtu.be/l29GHCysqcs. But the video and audio, while helpful, is limited by the quality and capacity of the recording systems. It is my understanding that the Wauwatosa Police Department has committed to implementing body worn cameras, which I strongly support and believe that the use of body worn cameras, while by no means perfect, has generally allowed me to make more informed and accurate determinations related to use of force by police officers. In my experience, the vast majority of lethal encounters occur within close range of the participants, and, particularly when a foot chase is involved, occur some distance from the squad recording device. While recording and surveillance devices have become ubiquitous for both the general public and private businesses, there is no substitute for recording devices designed to make officer's actions more transparent and accountable. In this case for example, there are brief frames from Officer Shamsi's squad video that support some of the officer's observations and statements related to the use of force, but they are not clear pictures because of the distance involved.

What I can determine from all the evidence is that Alvin Cole was in possession of a stolen 9mm pistol that day. Mr. Cole should not have been in possession of a firearm for any lawful reason. He had that pistol in a sling bag that he brought to Mayfair Mall. He was involved in an argument in the Mall with another patron and displayed the firearm. He was encountered by Wauwatosa Police officers in the parking lot of Mayfair Mall, ran from the police, discharged the firearm and was ordered to surrender the weapon. He did not surrender the weapon and was fired upon by Officer Mensah causing his death.

A more detailed summary is based on the best available evidence that supports the following recitation of facts. On February 2nd at approximately 5:43 pm Alvin Cole DOB 01/17/2003 entered Mayfair Mall in the City of Wauwatosa. Mr. Cole was armed with a semi—automatic pistol with a

SAFETY BLDG., RM. 405, 821 W. STATE STREET, MILWAUKEE, WI 53233-1485
PHONE: 414-278-4646 FAX: 414-223-1955

Case 2:21-cv-00848-LA   Filed 07/17/23   Page 1 of 14   Document 76-25
DEF'S RPD (ANDERSON) 008740

30 round extended magazine that was loaded with 9mm ammunition. The firearm was concealed in a sling bag hanging from his shoulder. A short time after arriving at the mall Mr. Cole encountered an adult male, SI, they exchanged words, it escalated to a verbal confrontation and Mr. Cole revealed to SI that he was armed with a pistol by displaying the gun. SI responded angrily and a portion of that confrontation was recorded by a citizen and posted on Facebook. Mayfair Security separated the two individuals and asked them to leave the mall. SI informed security that during the encounter the person he was speaking to had a gun that was displayed, at which time Mayfair Security contacted the Wauwatosa Police Department. A general description of Mr. Cole was broadcast and Wauwatosa Police Officers Olson, Shamsi, Schleis, Johnson and Mensah responded to the Mall in their marked police squads which are equipped with video recording cameras. A group including Mr. Cole was observed by Officers Johnson and Shamsi leaving the parking garage south of the Nordstrom store. The video from Shamsi's and Johnson's squads show KD, Alvin Cole and a female. Upon the approach of the police, Cole and KD started running west towards 108th Street (Mayfair Road). Two other juveniles, KH and TV, were already heading west towards Mayfair Road and are not seen clearly in the Shamsi squad video. At the same time, Officer Olson was arriving at the intersection of Mayfair Road and North Avenue. KH is seen briefly on Olson's squad camera when Officer Olson stops KH and TV at the far west end of the parking lot near the intersection of Mayfair Rd and North Avenue. A pursuit of Cole, partially captured by Officer Shamsi's video, followed during which time one of the male individuals (KD) was detained by Officer Schleis, and Mr. Cole was pursued by Mayfair Security guard DB, Officer Shamsi, Officer Mensah and Officer Johnson in that respective order. During the pursuit a shot was discharged from Cole's vicinity (this is captured by Shamsi's video/audio and Olson's audio) and Cole went to the ground with a firearm in his right hand. Because it was later determined that Alvin Cole had a graze wound to his left forearm, and because a spent casing was still in the chamber of the firearm recovered from Cole, it is believed that Cole discharged the firearm while running. Cole was ordered to surrender the firearm by Officer Shamsi who was closest to him. Officers Olson, Shamsi and Mensah all stated that at some point Mr. Cole pointed the gun in their direction and did not surrender the firearm. Officer Mensah fired 5 rapid succession rounds at Mr. Cole which ultimately led to Mr. Cole's death. Pursuant to protocol and in conformity with §175.47 of the Wisconsin Statutes, the Milwaukee Police Department was designated as the independent lead investigative agency, supplemented by suburban law enforcement agencies and the Wisconsin Crime Lab and State Patrol.

SUMMARY OF INVESTIGATION:

The following evidence is presented in chronological order of relevance.

*9mm Firearm reported stolen.* On Tuesday October 15th, 2019 City of Milwaukee Police Officer Mustafa went to a residence in the City of Milwaukee and spoke to an adult female who indicated that she believed her firearm had been misplaced sometime around July 4th of 2019, but she was now reporting it as missing because Department of Corrections Agents had recently visited the residence to check on a person under DOC supervision who was also suspected of being involved in a homicide (the individual in question is currently awaiting trial on a homicide charge). While checking the residence the agents noticed a manufacturer's box for a firearm and asked if there was a gun in the residence because it would be a violation for the person to be in a location with firearms. The adult female indicated the gun had been missing since July and they suggested she report it to the police. Officer Mustafa recorded the firearm information on the manufacturer's box

as a Smith & Wesson M&P 9mm with serial number SN#NAV4219. This is the firearm that was recovered from the scene of the critical incident at Mayfair Mall on February 2nd 2020.

*Facebook picture of Cole with firearm from night before incident.* A picture of Alvin Cole and two other individuals was posted to social media after the shooting incident showing Alvin Cole in possession of a semiautomatic pistol with an extended magazine. The person posting the video indicated it was taken from the night before the shooting. Alvin Cole was prohibited from possessing firearms because of felony juvenile adjudications and because of his age. Even without the prohibition, he would not have been allowed to legally purchase, possess or conceal a handgun. The consequences for illegal gun possession are significant and may have contributed to Mr. Cole's flight from police.



*Security Video from Nordstrom.* Investigators from the Milwaukee Police Department obtained video security footage from the Nordstrom store that shows on February 2nd at 5:43 pm, Alvin Cole and several other young men enter the store, ascend an elevator and enter the main mall. The camera clearly records Alvin Cole in possession of a sling bag.

*Live Facebook recording of confrontation between SI and Alvin Cole.* A video recording of the live confrontation that occurred inside Mayfair Mall between Alvin Cole and SI, an adult male, was posted to social media and recovered during the investigation. The video depicts SI confronting Alvin Cole.

*SI's statement.* Mr. SI was interviewed by Milwaukee homicide detectives and he stated that he went to Mayfair Mall with his nephews to exchange a necklace. As they were walking through the common area of the mall on the first floor SI and his nephews walked by the mother of a girl one of his nephews had dated in the past. The mother came up behind SI to scare him. After this interaction with the female, they were laughing and joking about the incident. As they were laughing and joking, a black male wearing a grey sweatshirt and a fanny pack across his chest (believed to be Alvin Cole) became upset, thinking SI and others were laughing at him. This subject took a phone out of the fanny pack. SI asked, "Did you just take your phone out of a purse?" SI heard the patrons in the mall start to laugh about what he said, but his group continued to walk. He

saw that the male became upset. SI then observed that the person he made the comment to and another male and a female started to follow them as they continued to walk in the mall. SI asked the person with the fanny pack why they were following them. When they reached the middle of the mall a group of 6-7 other people joined the three people that were following them. One of the subjects from the group of 6-7, wearing a jersey with red on it, went down a hallway with the person with the fanny pack. A few seconds later the two individuals came back in view and the subject with the fanny pack walked up to him with his hand in the fanny pack. SI stated he then saw the person start to pull a firearm out of the fanny pack. SI told him that he was not afraid and that he should just go home because he was a kid. SI saw the subject pull the gun out further and saw it had green sights and an extended 30 round magazine. SI tried to grab the gun but the subject turned away from him, preventing him from grabbing the gun. When he tried to grab the gun a second time a security officer that worked for the mall grabbed him. He then reported to security that the subject with the fanny pack had a gun. SI stated that security allowed him to walk away and he went with his group to the Piercing Pagoda so his nephew could exchange his necklace. While they were at the Piercing Pagoda he spoke to a Wauwatosa Police officer regarding what took place on the first floor of the mall. SI stated that he did not give a full description of the suspect with the gun because he did not want the person to get in trouble since he appeared to be a kid. Once they were done exchanging the necklace, SI's group was escorted in the mall with security following them. As he was walking out of the mall at the north end, near Macy's, he heard 6-8 shots. He drove from the Macy's parking lot and saw a large presence of squads at the south end of the mall parking lot. He then saw on the news that the police shot and killed a person. He saw posts on Facebook with a photo of the person that was shot by the police, and it was the person (Alvin Cole) that he was face to face with and who had the gun inside the mall.

*911 dispatch.* The original call to the Wauwatosa Police Department described a disturbance that was labeled "domestic" meaning a dispute between people or parties with a possible gun involved. It was later upgraded after an officer spoke to SI to include a description of a black male, slim build approximately 5'5'' tall with a fanny pack. SI confirmed that a firearm was displayed by the person he was arguing with. Approximately 20 minutes later officers encountered the group matching the description of the individuals involved, including Cole, outside of the Nordstrom parking deck and the pursuit initiated.

*Officer Shamsi's squad video.* The squad camera video from Officer Shamsi's car provides the most complete visual depiction of the encounter with Alvin Cole but does not include synchronized audio with Shamsi's microphone. (The audio is limited to what can be heard inside the squad. For example, the audio captures the squad's radio when an officer broadcasts the foot pursuit and a gun discharge can be heard. A "shots fired" dispatch is also heard). At the beginning of the video, Mr. Cole, a juvenile male (KD) and a female are walking west as they leave the south parking deck of Nordstrom on the south end of Mayfair Mall. When ordered to stop, Cole and the other individual flee west bound. (Note: Officer Johnson is also at the location of the first encounter with Cole and leaves his squad to pursue Cole on foot). Shamsi pursues the individuals in his squad. A Mayfair Security car also pursues and Security Guard DB leaves his car to pursue Cole on foot. Officer Shamsi parks his car just as Officer Schlei runs across the front of his squad and arrests the juvenile KD who fled with Cole. Security Guard DB can be seen running rapidly after Cole and closing the distance as Officer Shamsi gets out of his squad to pursue. Just as Security Guard DB is about to catch Cole, a radio transmission indicating pursuit is broadcast. At this time a distinct gunshot and muzzle flash come from Alvin Cole's location. Officer Mensah enters the video running towards Cole followed by Officer Johnson. At this time the light from Officer Olson, who has arrived on

Mayfair Road to the west of Cole, is seen directing light towards Cole. Officer Mensah arrives near Cole and five shots are discharged.

*Officer Olson's video/audio.* Officer Olson's squad camera depicts the initial encounter between Olson and one of the two juveniles as they approached the bus stop just north of the intersection of North Avenue and Mayfair Road. Officer Olson activated a microphone system that links to his squad video. This allows us to hear the encounter from Olson's position. Olson initially stopped his squad just as one of the juvenile comes around a snow bank to get to the sidewalk on the east side of Mayfair Road. That individual has a fanny pack and Olson orders him and another juvenile male to the ground. The juveniles can be heard saying "No gun" and "I'm down". Officer Olson is seen to orient towards the ground where the juveniles are detained. At that point there is a distinct gunshot to the east of Olson, later determined to be coming from Alvin Cole who was approximately 30-40 feet behind the two juveniles Olson had detained. Olson reorients to the east after the gunshot, and his audio picks up Officer Shamsi ordering Cole to drop the gun and to throw it. Officer Mensah is heard to shout "The gun is out" prior to hearing 5 distinct gunshots, determined to have come from Officer Mensah. Officer Olson takes control of the scene from that point and orders Cole not to move. Olson can be heard to kick the gun away at one point in the audio.

*Composite video/audio.* Because the video from Officer Shamsi's squad is taken from several hundred feet from the incident (capturing the view from east to west) and does not have synced audio, the Wisconsin Department of Justice Division of Criminal Investigation used the audio from Officer Olson and the video from Officer Shamsi's squad, using the discharge of Alvin Cole's pistol as the point of synchronization. To be clear, when watching and listening to the composite, Officer Olson is giving his commands to the two juveniles detained near Mayfair Road, while Officer Shamsi is giving orders to Mr. Cole. "The gun is out" warning is given by Officer Mensah when he arrives in the vicinity of Cole.

Because the officers were equipped with flash lights we can determine their approximate locations by the beam of their light. Officer Olson activates his light after the discharge from Cole while he is still approximately 30-40 feet from Cole near Mayfair Road (this is the bright light that is seen in Shamsi's video after the gunshot is heard). Shamsi activates his light and is within 10 feet of Cole to the north-west. Mensah is running west and can be seen withdrawing his pistol and activating his light and does not reach the location of Shamsi and Cole until approximately 10 seconds after the discharge. Officer Johnson is the last Officer to arrive in the video frame.

ANALYSIS OF VIDEO AND AUDIO:

Milwaukee Police Detectives reviewed the Shamsi squad camera video and annotated the significant timeline as follows:

- 18:05:13  The second male in the grey sweatshirt begins to run west. The squad is still facing north and the subjects are out of camera view.
- 18:05:17  A uniformed police officer is seen running west through the parking lot after the subjects. The officer yells, "Police Stop".
- 18:05:22  Heard on the radio is an officer yelling "foot pursuit, west through the lot."
- 18:05:26  Mayfair security is seen driving west and then south past this squad camera.

- 18:05:32  A black female wearing a dark shirt, jacket, blue jeans, and white tennis shoes walks in front of the squad car with her hands up. The squad then turns around and starts driving west through the lot.

- 18:05:59  The squad drives though the south side of Cheesecake Factory parking lot and the first subject wearing the blue sweatshirt is running in front of his squad in a northwest direction.

- 18:06:01  One officer's is seen running north after the subject in the blue and the subject in the grey sweatshirt is continuing to run west.

- 18:06:03  Mayfair security is seen running west after the subject in the grey, followed by a uniformed police officer.

- 18:06:11  Another uniformed officer is running after the subject, security officer and other uniformed officer.

- 18:06:13  An officer is on the radio saying he is running west bound and then I hear a gunshot and observed a muzzle flash by the suspect.

- 18:06:16  An officer is on the radio yelling shots fired. Another officer is running after the others and the security officer runs back east.

- 18:06:20  Dispatch repeats shots fired shots fired all squads respond Mayfair mall.

- 18:06:22  It appears the subject in the grey is in a kneeling position and then I see the muzzle flash and hear five gunshots from one of the uniformed officers.

- 18:06:33  An officer goes over the radio calling out shots fired again and dispatch asked if all officers were okay. A officer walks the subject in the blue hooded sweatshirt past the squad car while he is in custody.

- 18:06:42  Officers run towards the shot subject to render aid and they go over the radio with a subject down, breathing and shot.

- 18:07:22  Officers stated their location was on the south side of Cheesecake Factory and the north side of the black fence.

FRAME BY FRAME ANALYSIS:

The original discharge by Cole can be seen and heard in the unedited Shamsi video. By slowing the video and going frame by frame, critical moments in the encounter can be better examined. The Wisconsin Department of Justice Division of Criminal Investigation used the discharge from Cole's gun to sync the audio from Officer Olson's audio system to the Shamsi squad video. Key moments are those just before Security Guard DB catches up to Cole, when Cole flares slightly to the north. At the same time, an officer broadcasts the pursuit over the radio, the gunshot is heard and a muzzle flash facing east (towards DB and Shamsi) is seen. At the same time, per his video, Officer Olson has arrived to the west on Mayfair Road and detains two juveniles. He can also be vaguely seen in the background of the Shamsi video. He orders the juveniles to the ground (one has a fanny pack in his hand per Olson's video). Olson is oriented towards the ground but can be seen to reorient from the two juveniles to the east after the discharge of Cole's firearm. Going back to the composite Shamsi/Olson tape, it should be noted that the officers are equipped with high-intensity flashlights that activate when they press a toggle on the side of the firearm. This allows us to see the position of

the officers prior to and during the shooting. The light that shines west-to-east shortly after the discharge from Alvin Cole's firearm comes from Officer Olson's firearm. At that time Olson is approximately 30-40 feet from Cole. Shamsi is within 10 feet of Cole (his flashlight is also activated) and Mensah is running west but arrives approximately 10 seconds after Cole has gone to the ground. Officer Shamsi has ordered Cole to drop the gun and to throw it. Officer Olson says that the "No gun" statements heard on the audio came from the two youths he was detaining, as he was approximately 30 feet to the west of Cole when Cole went to the ground and Shamsi ordered him to drop the gun. A dark spot on Alvin Cole appears to the east as Officer Mensah arrives and says "The gun is out", and the enhanced still shot from seconds' earlier shows a possible dark object in Cole's right hand elevated from the ground. All three of the most proximate officers say that Cole pointed the firearm in their direction and believed he posed an imminent risk of death or great bodily harm. While it may seem inconsistent that Olson and Shamsi say the gun was pointed towards them, there is a brief time when Officer Shamsi orders Cole to "Throw it" that a dark spot appears to the east. This is the same time Mensah arrives within feet of Cole. Officer Olson indicates that, even after being shot, Cole's right hand was on top of the pistol until he approached to kick it away. Olson can be heard kicking the gun away from Cole's hand on his audio recording. Officer Olson says he did not fire because it would have jeopardized other officers.

*The following is a transcript of the audio from Officer Olson's mic during the critical moments.*

- Any squad for an update (Wauwatosa Dispatch)
- Drop the gun, Drop the gun (Olson to KH and TV))
- Get on the fucking ground, get on the fucking ground (Olson to KH and TV)
- No Gun (Comes from KH or TV per Olson)
- (Discharge) (Olson states he recognizes this as a firearm discharge)
- No gun, no gun, no gun(or I'm down, no gun, no gun) (KH or TV or both per Olson)
- Quiet (Shamsi)
- Hey, put it down, put it down (Shamsi)
- No gun (KH or TV per Olson)
- Get on the ground, get on the ground (Olsen—directed to KH and TV)
- The gun is out, the gun is out (Mensah per Olson)
- Throw it, throw it, throw the fucking gun (Shamsi)
- (discharge interrupts last "throw the fucking gun")
- Stop, Stop (Olson)

***Officer Olson clarified in a later interview that after Alvin Cole is shot and is prone on the ground, and after he issues his last command to not move, Olson kicks the gun away from Alvin Cole's hand. This can be both seen and heard on the composite tape.

*Crime scene diagram.*

The Wisconsin State Patrol conducted a survey of the scene of the incident and created a three dimensional "fly through" of the crime scene and also created a diagram depicting the general scene with red dots signifying significant evidence recovered from the scene. The diagram is modified to show the general locations of the officers, who are depicted by stars and Mr. Cole as an arrow facing south. Officer Olson was furthest west on Mayfair Road, Officer Shamsi was north-west of Cole and when officer Mensah arrived he was north-east and north of Cole. Officer Johnson was furthest east.



*Image enhancement of two video frames from the Shamsi video showing Cole possibly with a dark object in hand before Officer Mensah arrives at Cole's location and an image showing a dark object facing east when he arrives.*

The following still pictures come from the Shamsi video. A focus of the investigation was the fact that Olson and Shamsi stated they saw Cole point the weapon at them and Mensah also claimed the weapon was pointed at him. Again, the video is far from clear, but there is *some* evidence that supports those views, at least to the extent they could not be disproven. Cole does appear to shift position in the video prior to Mensah's arrival. The frames provide some evidence supportive of both Officer Olson and Shamsi's statements that Cole had the weapon pointed west in their direction during the initial encounter and supportive of Mensah's statement that as he arrived from the east the weapon was pointed at him as well.

Chief Barry Weber
October 7, 2020
Page 9

Before Mensah arrives:



After Mensah arrives:



*Scene evidence (Cole's gun, cell phone, sling bag).*





October 7, 2020
Page 11



At the time Cole's firearm was recovered from the pavement of the parking lot, there was a spent casing in the chamber of the gun. The loaded extended magazine was recovered from inside the sling bag, indicating that the firearm was only capable of firing a round that was in the chamber. This means that Cole, presuming he fired the one round in the chamber as he was running, did not have any more bullets in the gun at the time he was shot. As a practical matter, it is very difficult, if not impossible, under the conditions described above, to distinguish a loaded vs unloaded firearm while the gun is gripped in a person's hand.

*Citizen statements.*

Citizen witnesses were interviewed by both law enforcement and by investigators representing the family of Alvin Cole. This included recorded statements from the juveniles who were with Mr. Cole during the incident and citizens who were in the vicinity of the scene. All the statements were reviewed and assessed.

*Statements from Officers Olson, Shamsi and Mensah and Security Officer DB.*

PO Olson stated that when he arrived at the south-west end of Mayfair Mall he observed officers running behind one individual with a shoulder bag so he redirected his attention to the two individuals closest to him and ordered them to the ground. As he did that, he heard one loud bang, which he believed to be a gunshot coming from where he just observed the black male subject with the shoulder bag. At this point PO Olson stated he thought he was being shot at by the person with the sling bag. PO Olson then looked back at that person and observed him to now be approximately 20-25 feet away from him. PO Olson stated at this time he observed the subject to be in a "low ready" crouched down position where his torso was past his knees. The subject's right arm was extended toward PO Olson and PO Olson observed a firearm in the subject's hand. At this point PO Olson feared for his safety and then he heard four to six gunshots coming from where the other officers were located.

PO Shamsi stated that after he arrived at the south end of Mayfair Mall he saw two individuals start running and he decided to go after the male matching the subject with gun description that had been broadcast earlier. PO Shamsi stated he exited his squad car and pursued the main subject on foot.

DEF of RPD (ANDERSON) 008750

PO Shamsi stated he observed a Mall Security person and ordered him to move away. PO Shamsi stated as he is chasing the subject he was shouting "Stop Police" multiple times. PO Shamsi stated he believes he was about 5-10 feet behind the person when the person goes forward with his knee's bent. PO Shamsi described a crouched position. PO Shamsi stated it is at this point in time he first observes the subject with a handgun in his right hand. PO Shamsi stated he observed the subject to have a black handgun and the persons trigger finger was in the trigger guard. PO Shamsi stated he immediately began shouting "Drop the gun" repeatedly. PO Shamsi stated he was directly behind the person about 10 feet away while shouting out the commands to drop the gun. PO Shamsi stated he focused on the firearm and believes the subject had the firearm away from his body. PO Shamsi stated the firearm would have been in a westerly direction (in front of subject) allowing him to be able to visually see the handgun. PO Shamsi stated he was focused on the firearm and did not see the police officer directly on the other side of the subject with gun.

PO Mensah stated that he arrived at Mayfair Mall and saw a foot pursuit and exited his squad and began chasing the individuals. He states as he is gaining on the fleeing individuals he hears a single gunshot. PO Mensah stated the gunshot was to the west of him, which would be closer to Mayfair Road. PO Mensah stated "Shots Fired" is broadcasted over the police radio. PO Mensah stated he was not aware who fired the shot and did not see any muzzle flash. PO Mensah stated after the gunshot is fired he observes two of the subjects go to the ground. PO Mensah stated the subject closest to Mayfair Road is in the prone position and the second subject furthest from Mayfair Road was on his knees. PO Mensah stated the subject on his knees was the closet person to him. PO Mensah stated this subject, later identified as Alvin T. Cole, had both knees and his left hand on the ground. PO Mensah stated he observed this subject to have a black handgun in his right hand. PO Mensah stated either PO Shamsi or PO Johnson shouted, "Drop the Gun" several times to the subject (Cole). PO Mensah stated while the subject (Cole) was on his left hand and knees he proceeded to move forward about three yards. PO Mensah described a manner of movement as a crawl. PO Mensah stated he continued to hear commands as well as his own for the subject (Cole) to drop the gun. PO Mensah stated as the subject (Cole) is moving forward Cole pointed the firearm with his right hand. PO Mensah stated the subject pointed the gun at him but was uncertain if it was from under or over his (Cole's) left shoulder. PO Mensah stated stop and "moved off the path" then discharged his duty weapon meaning to change positions from the initial target acquisition position. PO Mensah stated he fired his duty weapon 4-5 times at the subject (Cole) out of fear for his life, as the subject (Cole) pointed his handgun at him. PO Mensah stated he believed the firearm was a real handgun and was not certain if the subject (Cole) fired the initial single gunshot. PO Mensah stated he fired multiple shots because the subject was still armed and he last observed the firearm pointed at him. PO Mensah stated when the subject fell forward to the ground other police officers secured the subject (Cole). PO Mensah stated once he observed the subject secured he walked away from the immediate location. PO Mensah stated he walked to the north into the parking lot of the Cheesecake Factory. PO Mensah stated he remained in eye sight of the shooting location but out of the shooting scene. PO Mensah stated he was involved in a shooting incident and allowed the other officers to tend to the shooting victim. PO Mensah stated he waited for the supervisor to arrive and provide further instructions. PO Mensah stated sometime later he was ordered back to Wauwatosa Police Station, where he was photographed and his equipment was checked. PO Mensah stated at the scene he observed other officers provide medical attention to the subject (Cole) until other medical attention arrived on scene. PO Mensah stated his squad car is equipped with a camera but was uncertain if the unit was synced with his radio. PO Mensah had no further information and the interview was ended.

Security Guard DB stated he chased this subject who then turned his body to the left back towards DB, while reaching his hand into the fanny pack at the subject's chest. DB then heard a single gunshot, but was not able to see a muzzle flash or a gun. DB stated that he was certain that the gunshot came from the direction of this subject and not from behind him. DB gestured with his right hand and explained that this subject had his right hand near his upper right chest as he reached into the bag. DB believed that this subject had a gun within this fanny pack. DB stated that after the gunshot was fired, DB dropped to the ground, fearing this subject was going to shoot him.

MEDICAL EXAMINER FINDINGS:

Milwaukee County Medical Examiner Wieslawa Tlomak, M.D. examined Mr. Cole and determined that his death was caused by multiple gunshot wounds and the manner of death was ruled homicide, which for Medical Examiners means death at the hands of another. The examination revealed a gunshot wound to the left lower chest, the left upper chest, the back and the right portion of the back. Mr. Cole also suffered a tangential wound to his left forearm with signs of stippling, which is often associated with a close-range gunshot wound. While the Medical Examiner cannot determine conclusively that the tangential wound was self-inflicted, the totality of the evidence supports the inference that Alvin Cole discharged his firearm while he was running, striking his left forearm.

LEGAL CONCLUSION:

This case is reviewed as a homicide and I apply the same standard of review to this case as I would to any homicide. The standard is to determine in our professional judgement if there is sufficient admissible evidence to convince the trier of fact beyond a reasonable doubt that Officer Mensah killed Alvin Cole unlawfully. Under Wisconsin law, any time self-defense or defense of others is at issue, and it is clearly at issue here, I have an obligation to disprove beyond a reasonable doubt that the use of force was not objectively reasonable and, that at the time the force was used, Officer Mensah did not subjectively believe he faced a threat of death or great bodily harm or his belief was not objectively reasonable from the perspective of a trained police officer.

In determining whether his beliefs were reasonable, the standard is what an ordinary, prudent, and reasonably intelligent police officer would have believed in his position, having the knowledge and training that he possessed, and acting under the circumstances that existed at the time of the alleged offense. The reasonableness of his beliefs must be determined from the standpoint of the officer at the time of the acts and not from the viewpoint of an evaluation after the fact.

Wauwatosa Police Officers are trained in conformity with the Wisconsin Department of Justice training standards for law enforcement. The authorized use of force training is described in the Defensive and Arrest Tactics manual that describes three factors that must be met before an officer can employ deadly force. There must be a weapon, a means of delivering lethal force and intent displayed by the person who is armed. A final consideration in all circumstances is that the officer must be able to respond to force in a way that does not endanger other citizens or officers if possible.

In this case I must view all the circumstances that inform the decision by Officer Mensah to use force. What I can determine from all the evidence is that Alvin Cole was in possession of a stolen 9mm pistol that day. Mr. Cole should not have been in possession of a firearm for any lawful reason which may have been why he fled from police. He had that pistol concealed in a sling bag that he brought to Mayfair Mall. He was involved in an argument in the Mall with another patron and displayed the firearm, which again, may be why he fled from police. He was encountered by

DEF of RPD (ANDERSON) 008752

Wauwatosa Police in the parking lot of Mayfair Mall, ran from the police, discharged the firearm and was ordered to surrender the weapon. He did not surrender the weapon and in fact, according to the officers, pointed the weapon at them.

Wisconsin Statutes Section 938.48(1) states as follows:

> A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what the person reasonably believes to be an unlawful interference with his or her person by such other person. The actor may intentionally use only such force or threat thereof as the actor reasonably believes is necessary to prevent or terminate the interference. The actor may not intentionally use force which is intended or likely to cause death or great bodily harm unless the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself.

This is a two-part test, with subjective and objective components.

1) Did the officer have an actual subjective belief that deadly force was necessary to prevent imminent death or great bodily harm to himself or others?

2) Was that belief objectively reasonable?

See *State v. Head*, 2002 WI 99, 255 Wis.2d 194, 648 N.W.2d 413.

In this case, there is sufficient evidence that Officer Mensah had an actual subjective belief that deadly force was necessary and that belief was objectively reasonable. I do not believe that the State could disprove self-defense or defense of others in this case and therefore could not meet the burden required to charge Officer Mensah. With this I conclude my criminal review of the matter.

Sincerely,

*[signature: John T. Chisholm]*

John T. Chisholm
District Attorney

JTC/bl