# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF ANTONIO GONZALES, et al.,

        Plaintiffs,

    v.

JOSEPH ANTHONY MENSAH, et al.,

        Defendants.

Case No.: 21-CV-848-LA

---

ESTATE OF JAY ANDERSON, JR., et al.,

        Plaintiffs,

    v.

JOSEPH ANTHONY MENSAH, et al.,

        Defendants.

Case No.: 21-CV-1179-LA

---

ESTATE OF ALVIN COLE, et al.,

        Plaintiffs,

    v.

JOSEPH ANTHONY MENSAH, et al.,

        Defendants.

Case No.: 22-CV 856-LA

---

## PLAINTIFF'S PROPOSED FINDING OF FACT
## FOR THE ESTATE OF ALVIN COLE (22-CV-856)

---

NOW COMES Plaintiffs by and through their attorneys Cade Law Group LLC and

Motley Legal Services, to submit the following Proposed Findings of Fact pursuant to Fed.

R. Civ. P. 56 and Civil L. R. 56(b)(2)(B)(ii):

**Shooting of Alvin Cole at Mayfair Mall on February 2, 2020**

1.      Alvin Cole was involved with a disturbance inside Mayfair Mall on February 2, 2020, before he was shot and killed by Officer Joseph Mensah. ECF 20, ¶¶ 118-119.[1]

2.      Several Wauwatosa officers, including Jeffrey Johnson, Dexter Schleis, Evan Olson, and David Shamsi arrived at Mayfair Mall to investigate the alleged disturbance. Declaration of Kimberley Cy. Motley dated August 22, 2023, at Ex. 22 (hereafter "Shamsi Dep.") at 14:1-20; at Ex. 18 (hereafter "Schlesi Dep.") at 9-10; at Ex. 21 (hereafter "Olson Dep.") at 68-70; at Ex. 20 (hereafter "Johnson Dep.") at 49-50.

3.      Cole had not committed any violent crimes and was not under arrest. ECF 20 ¶¶ 118-120.[2]

4.      Johnson indicated he was on foot pursuit of the subjects heading westbound in the parking lot towards Cheesecake Factory. Olson Dep. at 13:13-21.

5.      Once Olson arrived, he exited his vehicle and observed two subjects running directly towards him. Olson Dep. at 16:6-8.

6.      Olson "ordered them to stop and drop the gun" and drew his service weapon and they immediately stopped running and went to the ground in a four-point stance. Olson Dep. at 17:3-13, 18:4-19.

---

[1] Defendants failed to filed answers to the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), and therefore, Defendants admit the allegations contained in the entire complaint but specifically Paragraphs 118-119 in the the Amended Complaint. *See* FRCP 8(b)(6)("Effect of Failing to Deny. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. . . ."); *Modrowski v. Pigatto,* 712 F.3d 1166, 1170 (7th Cir. 2013); *Barwin v. Village of Oak Park*, 14-cv-6046, 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[2] *Id.*

7. Cole was given conflicting commands to drop the gun and throw his gun. ECF 20 ¶123.[3]

8. While ordering the two men to the ground, Olson could see an officer, Johnson, running westbound towards him with a male African American boy wearing a grey sweatshirt, about 35 feet away. Olson Dep. at 18:20-19:2.

9. Olson was looking at the two subjects when he heard a single gunshot directly from the east where he observed Officer Johnson and the third subject, Alvin Cole. Olson Dep. at 19:16-24.

10. Olson observed Cole toward the east as in a "low ready stance" but could not see Cole's right arm. Olson Dep. at 20:6-16.

11. A "low ready stance" is "a crouched position where you're bent at the knees and your torso is almost completely horizontal." Olson Dep. at 20:17-21.

12. Olson states that Cole turned his right shoulder and head in his direction; in fact, Olson states that Cole "extended his right arm from under his body and pointed a dark colored semiautomatic firearm in [his] direction." Olson Dep. 24:24-25-7.

13. Johnson also hears the single gunshot but is unsure of where it came from, and continues to run toward the subject in grey when he hears a "volley of four more shots." Johnson Dep. 26:5-20, 28:2-8.

14. Johnson's depiction of the scene includes the following: "JJ" is where Johnson was standing when he heard the "four shots;" the "X AC" is where Alvin Cole

---

[3] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 123 of the Amended Complaint in the *Estate of Alvin Cole*, 22-cv-0856. FRCP 8(b)(6); *Modrowski*, 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

was located; and the two "X WPD" indicates where the other two officers were standing according to Johnson.



Johnson Dep. at Ex. 26.

15.    After hearing the single gunshot, and from about 40 yards away, Johnson observed Cole to be "falling or moving down" to "a hands-and-knees position" and was in the "act of falling." Johnson Dep 31:1-15, 34:10-17.

16.     Only after Mensah shoots Cole does Johnson identify Mensah and Shamsi near Cole as well as his first observation of "the gun *next to Alvin Cole.*" Johnson Dep. 37:14-23.

17.     Citizen witnesses with unobstructed views who clearly saw Cole because he was illuminated by flashlights, saw him on the ground and did not see anything in Cole's hands before, during, or after he was shot by Mensah.  Decl. Shenora Stanten-Jordan ¶110, 9--15; Decl. John Rawlings ¶9, 12-14; ECF 20 ¶126[4].

**Officer Shamsi Had Control of the Scene**

18.     While Shamsi was parking, he saw Johnson pursuing another subject passing in front of his vehicle. Shamsi Dep. at 22:9-17.

19.     While running, Cole was Shamsi's only focal point and Cole was about 20 feet ahead of him. Shamsi Dep. at 25:23-26:11.

20.     Shamsi did not have a flashlight or any other gear pulled out while he was running toward Cole because the encounter did not start off like it was going to escalate. Shamsi Dep. at 27:4-9.

21.     Now on foot, Shamsi began chasing Cole and heard what "sound[ed] like a gunshot" but did not register it at the time and had no idea whether the sound came from another officer or a subject. Shamsi Dep. at 22:22-23:1.

22.     The first gunshot that Shamsi believed to hear felt "out of context" to him because he never observed anyone nearby with a weapon and it was only one shot. Shamsi Dep. at 24:19-24.

---

[4] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 126 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

23.    After the single gunshot, Cole's knees were on the ground and his back straight – similar to the yoga "child's pose". Shamsi Dep. at 29:9-30:2.

24.    Shamsi states that while in this "child's pose" position, knees on the ground, that Cole's right arm is extended away from his body. Shamsi Dep. at 30:16-24.

25.    Shamsi observed Cole face down on the ground and approached Cole's feet – when Cole was running and going down to the ground, Shamsi noticed for the first time that Cole had a gun in his hand. Shamsi Dep. at 23:1-9.

26.    Shamsi verbally identified the firearm, and he drew his service weapon at Cole asking him to drop the gun while focusing solely on Cole's extended right arm. Shamsi Dep. at 23:10-14.

27.    Shamsi could not tell if Cole is aiming at Olson but thought that Cole's weapon could have been pointed towards Mayfair Road. Shamsi Dep. at 34:2-10.

28.    Suddenly, Shamsi hears "a volley of shots off to [his] left" and did not know there was another officer nearby; he looked to the left and saw Mensah and realized that Mensah had fired his weapon. Shamsi Dep. at 23:20-24.

29.    Between the time that Shamsi parked his vehicle and the time that Mensah fired his weapon was about 10-20 seconds. Shamsi Dep. at 24:2-11.

30.    Shamsi has his weapon drawn and is giving verbal commands to Cole to let go of the weapon, but Cole never moved, likely because Cole was unconscious. Shamsi Dep. at 31:11-23; Motley Decl., at Ex. 28 (hereafter "MPD Autopsy Report") pg. 4; Decl. Tracy Cole.

31.    Cole had abrasions to his face and his nose was swollen suggesting that Cole fell upon shooting himself accidentally and was unconscious. MPD Autopsy Report pg. 4; Decl. Tracy Cole.

32. Shamsi does not recall Cole moving or making any threatening movements and was sure that Cole's body and gun did not move. Shamsi Dep. at 31-32, 39:7-12, 42:8-23, 52:21-25, 55-56.

33. Shamsi arrived at the mall where "X1" appears on the map near Barnes and Noble to see if anyone walked out of that mall exit. Shamsi Dep. 15:1-16; Ex. 18.

34. Shamsi testified that he saw Johnson at "X2" exiting his vehicle and running toward a group of individuals consistent with the red marked arrows on Exhibit 18. Shamsi Dep. 20:2-16, Ex. 18.

35. The blue arrow shows that Shamsi drove his squad into Cheesecake Factory prior to getting out and pursuing the individuals on foot; where the blue arrows stop, at "X3" is where Shamsi gave case to a number of people. Shamsi Dep., 20:17-21:10, Ex. 18.

36. While running, Shamsi heard something that sounded like a gunshot but had no idea what it was at the time because he had not observed a gun. Shamsi Dep. 22:22-24; 24:15-24.

37. From the time that Shamsi parked his car to when Mensah ran onto scene and shot Cole was about 10-20 seconds at most. Shamsi Dep. 24:2-14.



Shamsi Dep. Ex. 18.

38. Shamsi was the only officer near Cole and had visual of the gun and Cole the entire time. Shamsi Dep. at 40:11-13, 42:8-23.

39. Shamsi did not remember observing Cole's right arm moving underneath his body toward the direction of Mensah and Shamsi did not understand why Mensah was shooting at Cole as Cole was not a threat to anyone and he had control of the situation without resorting to deadly force. Shamsi Dep. at 55:19-56:1; ECF 20 ¶142[5].

---

[5] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 142 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6);

40.     Cole did not have a gun in his hands when he fell to the ground and was his knees, he did not pose a threat of to anyone, and Mensah's deadly force was objectively unreasonable in light of the circumstances he was confronted with. ECF 20 ¶126, 128, 138, 166.[6]

**Alvin Cole Purportedly Aimed His Weapon at Olson**

41.     Once Cole had fallen to the ground, the right side of Cole's body was perpendicular to Olson. Olson Dep. at 21:24-22:3.

42.     According to Olson, Cole then turned his right shoulder and head towards Olson and "extended his right arm from under his body and pointed a dark colored semiautomatic firearm in [Olson's] direction." Olson Dep. at 24:23-25:3.

43.     Olson claims that Cole was looking only at him with Cole's right hand holding the gun and elevated off the ground. Olson Dep. at 25:8-26:3.

44.     According to Olson, Cole pointed his weapon *straight at him*; when Olson initially saw Cole, it appeared that Cole's right arm was under his body and facing Officer Johnson, but Cole eventually oriented his arm toward Olson. Olson Dep. at 51:24-52:9.

45.     Olson was "acquiring and isolating Mr. Cole;" Officers Shamsi and Olson controlled the situation knowing that the use of deadly force was not warranted." Olson Dep. at 29:24-30:6, ECF 20 ¶128[7].

---

*Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[6] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 126, 128, 138, & 165 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[7] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 128 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

46.    Olson did not see Cole point the firearm at anyone else. Olson Dep. 51:22-52:9.

47.    After the gunshots, Olson observes Cole "in the prone position now facing completely south, and his right arm is extended with the firearm in his right hand still orientated facing westbound." Cole's arm was flush on the ground. Olson Dep. at 35:5-19.

48.    Mensah ran up to the scene, and without giving any verbal directions shot at Cole five times midstride while Officer Shamsi yelled at Mensah to, "Stop! Stop." ECF 20 ¶130, 132-133, 141.[8]

49.    Each officer did not fear for the lives of other officers or the public, but only feared for his individual life. Olson Dep. at 29:24-30:6, 35:25-36:14, 51:17-21; Motley Decl., at Ex. 16 (hereafter "Mensah Dep. 6/26/23") at 269:14, Shamsi Dep. 36:24-25.

50.    Olson depicts the following scene: "X1" is where Olson parked his squad car; "X2" is where Cole had extended his right arm and pointed a firearm at Olson; "X3" is where Olson heard the first gunshot; "M" is where Olson observed Mensah; "S" is where Cole was with his head facing towards North Avenue, and "J" is where Johnson was standing. Olson Dep. at 47:22-52:12.

---

[8] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 130, 132, & 141 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).



Olson Dep. at Exhibit 22

**Alvin Cole Purportedly and Simultaneously Aimed His Weapon at Mensah**

51.     Despite the fact that Mensah did not see Cole point his gun at anyone else,

Mensah pulled his weapon while running and did not break stride until he fired five shots

at Cole without justification. Mensah Dep. 6/26/23 at 214:16-18; 224: 17-18; ECF 20

¶134[9].

52.     Two witnesses saw Cole stop running and fall to his knees on the ground.

Decl. of Shenora Stanten-Jordan at ¶ 9; Decl. of John Rawlings, at ¶8.

---

[9] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 134 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

53.    Two people who witnessed the shooting of Alvin Cole, never saw a gun in Cole's hands before, during, or after he was shot and killed.  Decl. of Shenora Stanten-Jordan, at ¶ 13-15; Decl. of John Rawlings, at ¶ 12-14.

54.    The witnesses also saw Mensah shoot Cole several times while Cole was on the ground.  Decl. of Shenora Stanten-Jordan, at ¶ 12; Decl. of John Rawlings, at ¶ 11.

55.    As he is running towards Cole, and after hearing the first gunshot but also not knowing where the shot came from nor did he see a muzzle flash, Mensah stated that he saw the subject who matched the description go down to all fours and start crawling towards the construction site.  Mensah Dep. 6/26/23 at 215: 1-12.

56.    Mensah never saw Cole turn his head or body around while he was running. Mensah Dep. 06/26/23 21:13-21.

57.    Cole was facing away from Mensah, and he could not remember whether the gun was over or under his right or left shoulder, but it was pointed at him.  Mensah Dep. 6/26/23 at 219: 5-10.

58.    According to Mensah, while Cole is crawling with his hands and knees on the ground there is a light illuminating him.  Mensah Dep. 6/26/23 at 217: 9-14; 218:9-10

59.    According to Mensah, Cole pointed his weapon directly at him and that is when he shot Cole, and this is inconsistent with Officer Shamsi who was the closest to Cole and did not report feeling threatened or Cole pointing his gun at anyone Mensah Dep. 6/26/23 at 222:8-15; Shamsi Dep. at 40:11-13, 42:8-23; ECF 20 ¶142[10].

---

[10] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 142 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

60.    Mensah states that no other officers were right next to him when he discharged his weapon.  Mensah Dep. 6/26/23 at 224:1-3.

61.    Mensah fired his gun at Cole five times, for all shots Cole was on the ground with the last three shots occurred when he was face down on the ground.  Mensah Dep. 6/26/23 at 216: 3-4.  ECF 20 ¶137[11].

62.    Officers were controlling the situation before Mensah shot and killed Cole, he was attempting to comply with their orders and was not a threat to them or any other persons, Mensah's use of deadly force was objectively unreasonable and excessive in light of the circumstances that he was confronted with, and Cole's constitutional rights were violated.  ECF 20 ¶128, 129, 142, 161 - 167[12],

63.    Defendant Mensah seized and used excessive force against Mr. Cole without reasonable suspicion or probable cause to believe that Mr. Cole had committed a crime, without the suspicion that he posed a threat of harm to any other person or was a flight risk that would legally justify the force used. The lack of any such reasonable suspicion or probable cause, along with WPD's long history of racially biased policing without intervention, are evidence that the seizure of Cole, that Mensah treated Cole less favorably- and with unreasonable excessive force – then his similarly situated White counterparts - wholly or in part because Cole was black.   ECF 20 ¶ 200, 201, 204[13].

---

[11] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 137 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[12] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 128, 129, 142, 161-167 of the Amended Complaint  in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[13] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended

64. Mensah's depiction of the shooting scene is as follows: "C" indicates the location of his parked squad car; "X1" indicates where Mensah hears the first gunshot and begins running to "X2" where he sees Cole, "S" on all fours and does not stop running until he shoots Cole. Mensah Dep. 215:13-15; 278:6-22.



Mensah Dep. at Exhibit 14.

Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 200, 201, 204 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

**Chief Weber and the City of Wauwatosa's Involvement**

65.     From July 15th of 2015 until February 2nd of 2020 and all times relevant, Weber was the police chief policy maker for the City of Wauwatosa and in that capacity established policies, procedures, customs, and/or practices for the same. Weber Dep. 7/7/23 at 3:12-15, 18-21, 5:12-21; ECF 20, ¶ 8, 179.[14]

66.     Barry Weber and Wauwatosa had decision-making power to investigate and discipline officers who violated WPD policies, despite this WPD had a defacto policy of violating the constitutional rights of people of color by seizing and using excessive force against people of color. Motley Decl., at Ex. 29, ECF 47, ¶39, 89, 134, 189-204.

67.     In the City of Wauwatosa, Mensah shot and killed three males of color in less than five years, firing his weapon nineteen times and Mensah is singularly responsible for 100% of all deaths by police shootings in Wauwatosa since at least January 2011 and 12% of all deaths by police shootings in Milwaukee County from 2013 through October 2020.[15] ECF 47, ¶ 52, 115, 116, 148.

68.     Mensah knew that Wauwatosa would not discipline him for using excessive force against Alvin Cole because of his race and in doing so the conduct against Cole was condoned when his constitutional rights were violated in comparison to that of his white counterparts.  Alvin Cole PL 1st RFA, Nos. 13 and 27, ECF 20, ¶200, 201, 206.[16]

---

[14] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 8 & 179 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[15] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 52, 115, 116, 148 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[16] Defendants have admitted the allegations contained in Paragraphs 99-100 of the Amended Complaint

69.     There is a history of over policing and devaluing people of color that is reflective in their policing by the Wauwatosa Police Department under the leadership of Weber which has resulted in racist "MLK" parties, the use of offensive literature from the KKK, overactive policing of Black and Brown individuals within Wauwatosa, and consistent racial profiling. Motley Decl., at Ex. 30 (Weber Depo. (*Knowlton et al matter*)) 5/13/21 299:3-9, 300:4-12 (ECF 20, ¶19-23, 38-40, 42, 45, 200, 201, 205-208[17] ; ECF 47, ¶ 22,23, 25, 42, 142-145.)[18]

70.     For example, in 2016 it was reported that WPD officers stop black people 16% longer than whites, in 2018 64% of traffic stops were of black people; in 2018 83% of all arrests were of black people despite them comprising only 5.3% of the population; despite all of these statistics and data, Weber does not believe that they have a racial profiling issue with the WPD, the WPD only have a racial profiling policy within the WPD because it is mandated by the state and he is unsure if any of his officers are members of the KKK or white supremist groups. Weber Depo. (*Knowlton et al matter*) 5/13/21 299:3-9, 300:4-12.

71.     Weber and the City of Wauwatosa knew that Mensah had a practice of using objectively unreasonable excessive force and that he fired his weapon nineteen

---

(Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[17] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 19-23, 38-40, 42, 45, 200, 201, 205-208 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[18] Defendants have failed to answer and thus have admitted the allegations contained in Paragraphs 22,23, 25, 42, 142-145 of the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

times killing three young males of color, he shot and killed Antonio Gonzales on July 16, 2015, Jay Anderson, Jr. on June 23, 2016, and Alvin Cole on February 2, 2020. Motley Decl. Ex. 29, ECF 47, ¶ 48, 71, 148, 154 218[19] ; ECF 20 ¶51, 52, 103, 230.[20]

72.    Mensah received "two medals of valor [from Weber], one while he was under investigation for the Jay Anderson shooting on August 22, 2016, related to the Antonio Gonzales shooting, (and) one related to the Cole shooting." Mensah Dep. 6/26/23 at 276: 19-23; ECF 20 ¶100, 153, & 221[21] ; ECF 47, ¶ 71.[22]

73.    Awarding someone a medal of valor sends them a message that they conducted themselves the way a Wauwatosa police officer should conduct themselves in a particular incident and ratifies the officer's conduct. Weber Dep. 6/6/23 at 30:19-23, 31:3-7.

---

[19] Defendants failed to file an answer to the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179, after the Court's ruling on the motion to dismiss, and therefore, Defendants admit the allegations contained in Paragraph 2 to the Amended Complaint. *See* FRCP 8(b)(6)("Effect of Failing to Deny. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. . . ."); *Modrowski v. Pigatto,* 712 F.3d 1166, 1170 (7th Cir. 2013); *Barwin v. Village of Oak Park*, 14-cv-6046, 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[20] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 51, 52, 103, & 230 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[21] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 100, 153, & 221 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[22] Defendants failed to file an answer to the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179, after the Court's ruling on the motion to dismiss, and therefore, Defendants admit the allegations contained in Paragraph 2 to the Amended Complaint. *See* FRCP 8(b)(6)("Effect of Failing to Deny. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. . . ."); *Modrowski v. Pigatto,* 712 F.3d 1166, 1170 (7th Cir. 2013); *Barwin v. Village of Oak Park*, 14-cv-6046, 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

74.     Weber gave the final approval for Mensah to get a medal of valor for the way he conducted himself during the Antonio Gonzalez shooting which he received in August 2016 while Mensah was being investigated for the shooting of Jay Anderson, Jr. Motley Decl. at Ex. 32 (Weber Testimony 5/4/21, 45:16-46:1).

75.     After the Alvin Cole incident, Mensah was brought back to work while he was on administrative leave.  Weber Dep. 6/6/23 at 53:16-17.

76.     Weber had decision-making power to investigate and discipline officers who violated WPD policies. Motley Decl., at Ex. 29.

77.     Weber agrees that whether an officer sees situations as more dangerous than the average person would is an important factor to look into to determine whether someone can be a successful police officer.  Weber Dep. 6/6/23 at 69 & 70:23-1.

78.     There is no step in the WPD administrative review process by which they would evaluate whether a police officer had the right mental makeup to continue to be a police officer.  Weber Dep. 6/6/23 at 63:11-21.

79.     Mensah was cleared to go back to work before the WPD's internal review into the Antonio Gonzales and Jay Anderson's shootings despite the fact that he was never interviewed by Weber or any of the WPD officers conducting the review and he returned back to work before the review was even completed. Motley Decl., at Ex. 33 (WPD Internal Emails).

80.     The WPD internal review in the Jay Anderson shooting was completed around May 15, 2017. Motley Decl. at Ex. 19 (hereafter "Farina Dep.") at 17:5-8.

81.     To be an effective officer and safe for the public, an officer should have a strong ability to read situations for its true danger.  Weber Dep. 6/6/23 at 70:2-6.

82. Despite Mensah's psychological examination when he was hired that determined that he had difficulty evaluating the motivations of others, Weber never questions whether he had the right mental makeup to be in life and death situations. Weber Dep. 6/6/23 at 77:8-18.

83. Weber did not wonder why in one year Mensah killed two people and did not engage his cameras at the right time. Weber Dep. 6/6/23 at 78:4-9.

84. Weber did not know what Mensah's perceptions were with the Antonio Gonzales and the Jay Anderson shootings, and no one from the City of Wauwatosa interviewed Mensah to learn his perceptions. Weber Dep. 6/6/23 at 78:19-22, 79:2-6.

85. An important step for the Wauwatosa Police Department in investigating whether an officer had acted reasonably would be to interview any officers at the scene. Weber Dep. 6/6/23 at 62:14-17.

86. Weber never questioned whether Mensah perceives danger where others do not or whether Mensah sees situations as inherently more dangerous than an average person would. Weber Dep. 6/6/23 at 69:7-19, 70:20-23.

87. Neither the Milwaukee Police Department nor the Wauwatosa Police Department investigated whether Mensah perceived each shooting as a reasonable officer would. Weber Dep. 6/6/23 at 79, 80:3-82:2.

88. Mensah was on probation as an officer with the WPD when he killed Antonio Gonzales on July 16, 2015. Weber Dep. 6/6/23 at 23:19-21.

In light of the duties and responsibilities of police officers and Mensah, Weber and Wauwatosa obviously knew that there is a need for specialized training and supervision, and that the inadequacy of training and/or supervision would potentially result in fatal

consequences and the violation of constitutional rights of Alvin Cole and were deliberately indifferent to those rights being violated. ECF 20, ¶ 185 & 191.[23]

89.     In 2020, Wauwatosa was the recipient of federal grant funding. Motley Decl., at Ex. 34 (WPD 2020 Annual Report pg. 50 as labeled DEF 002014).

90.     Mastrocola conducted the administrative review in relation to the Antonio Gonzalez shooting and he did not interview Mensah or Jeffrey Newman regarding their involvement in Gonzales' death and only looked to the MPD written report to give his final findings. Motley Decl. at Ex. 25 (hereafter "Mastrocola Dep.") at. 89-90: 25-4, 121:6-17.

91.     Weber, a final policymaker, condoned the shooting of Anderson by clearing Mensah for active duty without conducting a fitness for duty evaluation, nor did they have a policy, and without conducting an internal investigation of the Gonzales matter. Mastrocola Dep. at. 89-90: 25-4, 121:6-17; Weber 5/4/21 Dep., 93:15-94:4, Motley Decl., at Ex. 26-27, ECF 47, ¶ 63 and 64[24], ECF 20 ¶77, 78, 155, 157, & 217.[25]

92.     Weber testified that, "In the case of an officer-involved shooting and the officer involved is out on administrative leave and if he is cleared to come back, before

---

[23] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 185 & 191 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[24] Defendants failed to file an answer to the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179, after the Court's ruling on the motion to dismiss, and therefore, Defendants admit the allegations contained in Paragraph 2 to the Amended Complaint. *See* FRCP 8(b)(6)("Effect of Failing to Deny. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. . . ."); *Modrowski v. Pigatto,* 712 F.3d 1166, 1170 (7th Cir. 2013); *Barwin v. Village of Oak Park,* 14-cv-6046, 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[25] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 77, 79, 155, 157, 226, 227 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

we would allow him to come back, we would send him to a psychologist that we use to determine if in that person's professional opinion that he is able to return." Weber 5/4/21, Dep. 47:17-22.

93.     Despite Weber's policy of officers needing to be evaluated by a psychologist before returning back to work after an officer involved shooting, Mensah was not evaluated nor was there a fitness for duty assessment conducted by a psychiatrist or psychologist after the shooting of Antonio Gonzales on July 15, 2015, and before the shooting of Jay Anderson, Jr. on June 23, 2016, before he came back to work. Weber 5/4/21, 93:15-94:4.

94.     Defendant Weber and Wauwatosa knew about Mensah prior objectively unreasonable excessive deadly force against Antonio Gonzales and Jay Anderson, Jr. and acted with deliberate, reckless indifference as a result they condoned, approved and helped facilitated his behavior, which resulted in Mensah shooting and killing him. ECF 20 ¶ 226-228.[26]

95.     Shamsi could not tell if Cole was aiming his weapon at Olson. Shamsi Dep. at 34:7-9.

---

[26] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 226 - 228 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

Dated this 22nd day of August 2023.

**MOTLEY LEGAL SERVICES**

By: /s/Kimberley Cy. Motley
Kimberley Cy. Motley
State Bar No: 1047193
P.O. Box 1433
Matthews, North Carolina 28106
E: kmotley@motleylegal.com
P: (704) 763-5413
F: (704) 582-6229

**CADE LAW GROUP LLC**

Nathaniel Cade, Jr. SBN:  1028115
Annalisa Pusick SBN:  1116379
Antonique C. Williams SBN: 1051850
P.O. Box 170887
Milwaukee, WI  53217
P: (414) 255-3802
F: (414) 255-3804
E: nate@cade-law.com
E: annalisa@cade-law.com
E: antonique@cade-law.com