UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

ESTATE OF ANTONIO GONZALES, by and through its
its Personal Representative, Sandra Gonzales,

        Plaintiff,          CASE NO. 21-cv-00848

v.

CITY OF WAUWATOSA, et al.,

        Defendants.

---

ESTATE OF JAY ANDERSON, JR.
by Special Administrator, Starkeisha DeLaRosa;
J.A. minor child, through her next friend Starkeisha DeLaRosa,

        Plaintiffs,          CASE NO. 21-cv-1179

v.

CITY OF WAUWATOSA, et al.,

        Defendants.

---

ESTATE OF ALVIN COLE, by and through its
Special Administrator, Tracy Cole;
TRACY COLE, and ALBERT COLE,

        Plaintiffs,          CASE NO. 22-cv-856

v.

CITY OF WAUWATOSA, et al.,

        Defendants.

---

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

---

**INTRODUCTION**

Defendants moved for summary judgment seeking dismissal of the entire suit filed by the Estate of Antiono Gonzales against the Officer Mensah, the Wauwatosa Chief of Police, and the

1

City of Wauwatosa relating to the July 16, 2015, shooting of Gonzales. (ECF 69) Instead of responding to Defendants' summary judgment arguments and factual findings in support thereof, Plaintiffs filed a letter with the Court conceding Defendants' entitlement to summary judgment as a matter of law. (ECF 110) Therefore, all of the Defendants' Proposed Finding of Fact are undisputed (ECF 71) and based on the undisputed facts and relevant case law, all claims against the Defendants must be dismissed.

## DISCUSSION

### I. The Estates' Failure to Respond to Defendants' Proposed Findings of Fact Necessitates That All Uncontested Facts Be Deemed Admitted.

Generally, in reviewing a motion for summary judgment, a court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *See Perdomo v. Browner*, 67 F.3d 140, 144 (7th Cir. 1995). However, if the non-moving party fails to file a response to the movant's factual statement, the district court will deem the non-moving party's failure to contest the moving party's statement of uncontested facts as a binding admission of those facts. Civil L. R. 56. (b)(4); *Midwest Imports Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *Johnson v. Gudmundsson*, 35 F.3d 1104, 1108 (7th Cir. 1994). As a penalty, the court will "depart from [its] usual posture of construing all facts in favor of the non-moving party." *Johnson*, 35 F.3d at 1108; *see also Feliberty v. Kemper Corp.*, 98 F.3d 274 (7th Cir. 1996); *Midwest Imports*, 71 F.3d at 1313. Instead, the court will view the moving party's statement of facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *See Midwest Imports*, 71 F.3d at 1313.

The Estate failed to oppose Defendants' motion for summary judgment, file any response to Defendants' Proposed Findings of Fact, or submit their own additional Proposed Findings of Fact. (ECF 110) As such, the Court should adopt Defendants' proposed findings of fact as

2

undisputed for the purposes of the motion. Furthermore, because these cases have been consolidated (*Estate of Jay Anderson,* 21-CV-0117922 and *Estate of Alvin Cole*, CV-00856) at Plaintiffs' request because of the purported common issues of fact and law, the Court should also consider these facts undisputed for the purpose of deciding summary judgment in the Cole and Anderson matters. The Estate has alleged Mensah's prior shootings are evidence of the City of Wauwatosa's failure to act to prevent the subsequent shootings. *See generally* (Anderson ECF 47 ¶ 1) However, The Estate has conceded that Officer Mensah's shooting of Gonzales—who made a sudden assault on Officer Mensah with a samurai sword—was justified and further, that neither the City of Wauwatosa nor its Police Chief acted unlawfully in connection with that shooting. This means that any of the factual assertion in the Anderson and Cole cases that rely on the undisputed factual assertions in the Gonzales case, should also be deemed undisputed.

## II. The Law and Undisputed Factual Record Requires Summary Judgment on the Excessive Force Claim.

The Estate cannot dispute the fact that Officer Mensah *reasonably* perceived Gonzales as a deadly threat when he suddenly advanced on him with a five-foot bladed samurai sword after refusing commands to disarm. The objective reasonableness of Officer Mensah's actions is demonstrated by the undisputed factual record and the circumstances confronting Officer Mensah—to wit:

> Officer Mensah was dispatched to a domestic violence incident and based on the information provided by dispatch understood that the suspect had attacked or was attacking the caller with a spearhead or an arrow or some sort of edged weapon, and that both the suspect and victim were still on scene. (DPFF ¶¶ 7-13)
>
> When Officer Mensah observed Gonzales, he realized he was not simply armed with an arrowhead, but a samurai sword with a 5-foot blade. (DPFF ¶ 25)
>
> Officer Mensah knows that a suspect with a knife can be deadly within 21-feet and Gonzales advanced to within 8-10 feet in his attack of Officer Mensah. (DPFF ¶¶ 42-43, 79-81)

> With guns pointed at him, Gonzales was given—but ignored—numerous orders to drop the sword and to stop moving. (DPFF ¶¶ 26, 28-31, 35, 41)
>
> Officer Mensah's orders were so loud that it prompted Gonzales' neighbor to open her front door and investigate and when she did, she observed Gonzales standing in his front yard holding a samurai sword out in front of him and above his head like he was going to "come at the officers." (DPFF ¶¶ 26, 30, 33, 42)
>
> Witness Jack Tutton recounted the officer giving Gonzales multiple commands to not move and drop his weapon. Gonzales ignored those commands and waved the sword as he continued to advance on the officers. (DPFF ¶¶ 28, 30, 35, 42)
>
> Gonzales was given a final warning to stop and drop his sword or he would be shot. Gonzales did not comply with that order and instead advanced within striking distance of Officer Mensah with the sword raised above his head. (DPFF ¶¶ 41-43)
>
> Another officer on scene also perceived Gonzales as a deadly threat and fired his service weapon at him. (DPFF ¶¶ 44-46)
>
> On July 16, 2015, Officer Mensah shot Gonzales because he believed Gonzales posed an imminent and deadly threat. (DPFF ¶ 71)

These facts are inconvenient for the Estate, yet nonetheless, undisputed.

**Second**, in the moving Brief, Defendants cite a plethora of controlling precedent that demonstrates Officer Mensah's actions were reasonable, justified and necessary to prevent the deadly threat posed by Gonzales. See (ECF 70 pp. 11-14, citing *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018); *Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018); *Est. of Biegert by Biegert v. Molitor*, 968 F.3d 693, 700 (7th Cir. 2020); and *King v. Hendricks Cty. Commissioners*, 954 F.3d 981, 985 (7th Cir. 2020)). And, although qualified immunity is an affirmative defense, once raised the burden shifts to the non-moving party to defeat the defense by demonstrating that the undisputed facts establish a violation of "clearly established" right. *Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014). A clearly established right cannot be shown with "high levels of generality." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). Instead, a plaintiff must offer

4

"controlling authority" or "a robust consensus of cases of persuasive authority" barring such conduct as of the date of the incident. *Id*.

The Estate has failed to identify any clearly established law rendered Officer Mensah's use of deadly force to stop the active threat posed by Gonzales unreasonable. See *Kisela v*, 138 S. Ct. at 1154. Therefore, Officer Mensah is entitled to qualified immunity.

### III. The Law and Undisputed Factual Record Require Summary Judgment on the *Monell* Claims.

Because Officer Mensah's actions were constitutionally justified and, in the alternative, protected by the doctrine of qualified immunity, the Estate's section 1983 claims against the City of Wauwatosa and Weber are also precluded. *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 597–98 (7th Cir. 1997). As such, the Court should take a domino approach just as the Court did in *Doxtator v. O'Brien,* 39 F.4th 852, 864 (7th Cir. 2022), and dismiss the remaining claims as a matter of law.

Even assuming *arguendo* that Plaintiff could proceed with a *Monell* claim, it would fail because Plaintiff has not established a constitutional violation by any defendant and that the violation was caused by an "official municipal policy." *See Outlaw v. Vill. of Shorewood*, No. 19-CV-1092, 2021 WL 424224, at *6 (E.D. Wis. Feb. 8, 2021)(ruling that a plaintiff must first establish a constitutional violation); *Monell v. New York City Dept. of Soc. Servs*., 436 U.S. 658, 692 (1978)(ruling that a municipality would only be held liable if the violation was caused by an "official municipal policy").

The undisputed facts demonstrate that the City of Wauwatosa properly trained its officers on constitutional uses of force under the following circumstances:

(a) Protect the officer or others from what is reasonably believed to be an imminent threat of death or great bodily harm.

(b)  When it is necessary to prevent the escape of a fleeing violent felon whom the officer has reasonable belief poses an imminent threat of death or great bodily harm to the officer or others.

(c)  If feasible the officer must give some verbal warning prior to the use of deadly force.

(DPFF ¶ 68) These requirements mirror the constitutional standards.

Moreover, the training of City officers, as well as all other police officers in the state, is governed by § 165.85, Wis. Stats., which establishes the Law Enforcement Standards Board, and empowers it to establish minimum curriculum requirements for police officer training. (DPFF ¶ 82)

The undisputed facts also demonstrate that the City of Wauwatosa took steps and had processes in place to ensure that its officers were mentally fit prior to being hired, and after critical incidents:

> Under Wisconsin law all police officers must undergo psychological preemployment testing before they can be certified through the state. As such, all officers hired by the Wauwatosa Police Department are required to undergo a preemployment psychological screening to determine their fitness for duty from a psychological standpoint. (DPFF 64-65)
>
> Prior to his employment with the Wauwatosa Police Department, Officer Mensah underwent a preemployment psychological screening with Dr. Bauman and was deemed fit for duty by Dr. Bauman. (DPFF 66)
>
> At the time of the July 16, 2015, critical incident, it was the policy of the Wauwatosa Police Department that officers are placed on administrative leave pending investigation into the critical incident. (DPFF 62)
>
> At the time of the July 16, 2015, critical incident, it was the policy of the Wauwatosa Police Department Police Chief to order a separate internal investigation to determine whether any officers violated any department rules, regulations, or policies and to identify potential training deficiencies of all officer involved fatalities. (DPFF 55)
>
> Part of the administrative review was to evaluate Officer Mensah and Officer Newman's actions in accordance with the State of Wisconsin Defense and Arrest

Tactics (DAAT) system and ultimately determine whether there was justification to use deadly force against Gonzales. (DPFF 57)

At the time of the July 16, 2015, critical incident, it was the policy of the Wauwatosa Police Department that Officers involved in a fatality attend counseling and evaluation with an approved specialist prior to returning to full duty patrol after an officer involved shooting. (DPFF 59)

After the July 16, 2015, Gonzales shooting incident, Officer Mensah was referred to licensed professional counselor Marcia Williams at Systemic Perspectives, for evaluation and counseling regarding the critical incident. (DPFF 60)

Officer Mensah met with Marcia Williams on July 27, 2015, August 3, 2015, August 18, 2015, and August 24, 2015, regarding the critical police event that occurred on July 16, 2015. (DPFF 61)

Per department policy, Officer Mensah remained on administrative leave until the conclusion of the Milwaukee Police Department investigation, the DA's charging decision, and clearance from a licensed counselor. (DPFF 59)

On this record, no reasonable factfinder could conclude that the City of Wauwatosa or its Police Chief had a policy with constitutionally violative language nor that the City had adopted a "policy of inaction" with respect to training needs. *See King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2014). With no evidence of an infirm policy, practice, or custom, and no evidence of deliberate indifference to constitutionally impermissible informal conduct or to improper police training, the Estates' Monell claims cannot survive summary judgment.

### IV. The Law and Undisputed Factual Record Require Summary Judgment on the ADA Claim.

To survive summary judgement on their claims under Title II of the Americans with Disabilities Act ("ADA"), the Estate was required to put forth evidence proving that Gonzales [1] is a 'qualified individual with a disability, [2] was denied 'the benefits of the services" or otherwise subjected to discrimination by the City of Wauwatosa, and [3] that the denial or discrimination was 'by reason of' his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). The moving party bears the initial burden of demonstrating that these requirements have been met.

7

*Carmichael v. Village of Palatine, Ill.,* 605 F.3d 451, 460 (7th Cir.2010). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). As argued in the moving brief, the Estate lacks proof on each of these elements. (ECF 70, p. 23)

Officers Mensah and Newman were dispatched to a complaint that a subject had or was trying to cut his roommate. (DPFF ¶ 12) Dispatch radioed that the subject was "intoxicated" and "violent." (DPFF ¶¶ 10-13) It was never reported that Gonzales had any mental disability or that he was suffering from the effects of such an illness, nor did dispatch provide any information about race. It is undisputed that Officer Mensah never met Gonzales prior to that day. (DPFF ¶ 19) There is absolutely no evidence in this case that Gonzales was "a qualified individual with a disability" or that the City of Wauwatosa or any of its officers had prior knowledge of Gonzales' purported disability.

Assuming *arguendo* that the Estate could demonstrate both a cognizable mental illness and adequate notice of Gonzales' disability, the following undisputed facts demonstrate that the City Defendants did not discriminate against Gonzales nor was he denied access to emergency medical response after the shooting because of that disability:

> Moments after the shooting, Emergency Medical Services personnel were dispatched to the scene while, in the meantime, additional responding police officers had arrived and began administering first aid. (DPFF ¶¶ 47-48)
>
> Within five minutes of the shooting, the Wauwatosa Fire Department arrived on scene and took over life-saving measures. (DPFF ¶ 49)

No reasonable factfinder could conclude from the undisputed facts that the City of Wauwatosa denied Gonzales access to emergency medical care. *See e.g., Tatum v. City & Cnty. of*

*San Francisco*, 441 F.3d 1090, 1090 (9th Cir. 2006) Accordingly, the Estate's Title II ADA claim must be dismissed as a matter of law.

> **V. The Law and Undisputed Factual Record Require Summary Judgment on the Equal Protection Claim.**

To survive summary judgment on this claim, the Estate was required to prove that deadly force was used against Gonzales because Officer Mensah was motivated by a discriminatory intent. *Chavez v. Ill. State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). The time to produce evidence has arrived, and the Estate has no such evidence.

It is undisputed that none of Officer Mensah's actions relating to Gonzales were based on his race and instead the result of the deadly threat posed by Gonzales. (DPFF ¶ 58; *see also* ECF 80-3 Mensah 6/6/23 Dep. pp. 270-271) Without evidence showing the motive and intent to discriminate, summary judgment is appropriate. *Friedel v. City of Madison*, 832 F.2d 965, 971-72 (7th Cir. 1987)(citing *Munson v. Friske*, 754 F.2d 683, 690 (7th Cir. 1985)).

## CONCLUSION

Based on the foregoing arguments and authorities and the Estates' failure to contest Defendants' summary judgment motion, it is respectfully requested that this Court grant Defendants' Motion for Summary Judgement dismissing all the Estates' claims with prejudice, upon the merits, together with the costs and disbursements of this action.

Dated at Wauwatosa, Wisconsin this 22nd day of September 2023.

**WIRTH + BAYNARD**
Attorneys for Defendants

 */s/ Jasmyne M. Baynard*
Jasmyne M. Baynard, WI Bar No. 1099898
9898 W. Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: 414) 291-7979 / F: (414) 291-7960
Email: jmb@wbattys.com