# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

ESTATE OF ANTONIO GONZALES, by and through its
its Personal Representative, Sandra Gonzales,

                Plaintiff,                CASE NO. 21-cv-00848

v.

CITY OF WAUWATOSA, et al.,

                Defendants.

---

ESTATE OF JAY ANDERSON, JR.
by Special Administrator, Starkeisha DeLaRosa;
J.A. minor child, through her next friend Starkeisha DeLaRosa,

                Plaintiffs,           CASE NO. 21-cv-1179

v.

CITY OF WAUWATOSA, et al.,

                Defendants.

---

ESTATE OF ALVIN COLE, by and through its
Special Administrator, Tracy Cole;
TRACY COLE, and ALBERT COLE,

                Plaintiffs,           CASE NO. 22-cv-856

v.

CITY OF WAUWATOSA, et al.,

                Defendants.

---

## DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF FACT FOR THE ESTATE OF ALVIN COLE (21-CV-1179)

       The Defendants, by and through their attorneys, WIRTH + BAYNARD, submit the

following Response to Plaintiffs' Proposed Findings of Fact in support of their Opposition to

Defendants' Motion for Summary Judgment as follows:

1

**Shooting of Alvin Cole at Mayfair Mall on February 2, 2020**

1.      Alvin Cole was involved with a disturbance inside Mayfair Mall on February 2, 2020, before he was shot and killed by Officer Joseph Mensah. ECF 20, ¶¶ 118-119.[1]

**RESPONSE: Undisputed.**

2.      Several Wauwatosa officers, including Jeffrey Johnson, Dexter Schleis, Evan Olson, and David Shamsi arrived at Mayfair Mall to investigate the alleged disturbance. Declaration of Kimberley Cy. Motley dated August 22, 2023, at Ex. 22 (hereafter "Shamsi Dep.") at 14:1-20; at Ex. 18 (hereafter "Schlesi Dep.") at 9-10; at Ex. 21 (hereafter "Olson Dep.") at 68-70; at Ex. 20 (hereafter "Johnson Dep.") at 49-50.

**RESPONSE: Undisputed.**

3.      Cole had not committed any violent crimes and was not under arrest. ECF 20 ¶¶ 118-120.[2]

**RESPONSE: Objection to the use of the term "violent crimes" as vague and argumentative. Subject to the objection, Cole was under investigation for a disorderly conduct while armed incident within Mayfair Mall and officers were actively attempting to place him under arrest. (ECF 80-7 Johnson Dep. pp. 6:22-7:1; ECF 80-4 Olson Dep. pp. 11:1-7, 70:13-20; ECF 80-6 Schleis Dep., p. 26:8-12)**

---

[1] Defendants failed to filed answers to the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), and therefore, Defendants admit the allegations contained in the entire complaint but specifically Paragraphs 118-119 in the the Amended Complaint. *See* FRCP 8(b)(6)("Effect of Failing to Deny. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.         "); *Modrowski v. Pigatto,* 712 F.3d 1166, 1170 (7th Cir. 2013); *Barwin v. Village of Oak Park*, 14-cv-6046, 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[2] *Id.*

4.     Johnson indicated he was on foot pursuit of the subjects heading westbound in the parking lot towards Cheesecake Factory. Olson Dep. at 13:13-21.

**RESPONSE: Undisputed.**

5.     Once Olson arrived, he exited his vehicle and observed two subjects running directly towards him. Olson Dep. at 16:6-8.

**RESPONSE: Undisputed.**

6.     Olson "ordered them to stop and drop the gun" and drew his service weapon and they immediately stopped running and went to the ground in a four-point stance. Olson Dep. at 17:3-13, 18:4-19.

**RESPONSE: Objection. This proposed fact is neither relevant nor material to the question of whether Defendants are entitled to summary judgment. Subject to the objection, undisputed with the clarification that Olson testified they [meaning the two other males, not Cole] were "*semi-compliant*". They initially hesitated, causing him to move closer to them as he continued to order them to get onto the ground. (ECF 80-4 Olson Dep., p. 18:7-11)**

7.     Cole was given conflicting commands to drop the gun and throw his gun. ECF 20 ¶123.[3]

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent it is not based on personal knowledge and instead relies on speculation. Furthermore, this proposed fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions. (ECF 101-1, p. 3, ⁋ 15) Defendants further have a**

---

[3] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 123 of the Amended Complaint in the *Estate of Alvin Cole*, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

Motion to Enlarge and have filed responsive Pleadings. (ECF 108 & 101-3)

Subject to the objection, dispute.

Officer Shamsi ordered him [Cole] to stop and to drop the gun repeatedly. (ECF 80-5 Shamsi Dep at pp. 23:10-12, 31:11-14, 38:21-22) Shamsi also testified initially he was the only officer issuing commands:

> Q. You have given commands. He's not complied with those commands. Was anyone else giving commands at that time?
> A. I don't recall.
> Q. Okay.
> A. <u>Initially it was just me</u>.

(ECF 80-5 Shamsi Dep. p. 32:3-8)

Mensah also testified he issued commands for Cole to drop the gun, as well as hearing similar commands being issued:

> Q. Do you hear any -- anybody else issue commands to either of the -- I think there is maybe two people running, however many people were running, do you hear anybody else issue any command?
> A. I heard, I don't know if it was Shamsi or Johnson, but one of the officers close to me was saying the same thing similar to "drop the gun, drop the weapon." I'm not sure -- it's possible I heard other people in the background because I know that someone else was being detained near Mayfair Road.

(ECF 80-3 Mensah Dep. 6/26/23 p. 263:1-12) (*See* also *Id.* at pp. 219:18-21, 223:21 – 224:3; ECF 76-24 Shamsi Squad Video) Furthermore, Olson testified he ordered the other subjects to "stop and drop the gun, something similar to that." (ECF 80-4 Olson Dep. p. 17:5-6)

The Court should refuse to consider this fact to the extent that it is contrary to the factual record. Even if this fact is considered, it does not create a dispute as to the fact that Cole was armed, was ordered to disarm, and failed to do so.

4

8. While ordering the two men to the ground, Olson could see an officer, Johnson, running westbound towards him with a male African American boy wearing a grey sweatshirt, about 35 feet away. Olson Dep. at 18:20-19:2.

**RESPONSE: Undisputed.**

9. Olson was looking at the two subjects when he heard a single gunshot directly from the east where he observed Officer Johnson and the third subject, Alvin Cole. Olson Dep. at 19:16-24.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not an accurate reflection of cited testimony. Subject to the objection, undisputed that Olson testified he heard a single gunshot come directly from the east "*in the vicinity* of where he last saw the third subject wearing the grey hooded sweatshirt." (ECF 80-4 Olson Dep., p. 19:17-23)**

10. Olson observed Cole toward the east as in a "low ready stance" but could not see Cole's right arm. Olson Dep. at 20:6-16.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials as to Olson not being able to "see Cole's right arm." Subject to the objection, Officer Olson's cited testimony provides:**

> **Q: So he was still kind of elevated in terms of his position, he wasn't completely prone, so you put your foot on him to kind of force him down?**
> **A: Correct. At which point I looked back to my left, which would be eastbound, and I observed the subject in the grey hooded sweatshirt in what I would call a low ready stance, facing southbound.**

**(ECF 80-4, Olson Dep. p. 20:8-16) Even if the Court accepts this fact for purposes of summary judgment, there is no dispute of material fact precluding judgment in favor of the**

**Defendants.**

11.     A "low ready stance" is "a crouched position where you're bent at the knees and your torso is almost completely horizonal." Olson Dep. at 20:17-21.

**RESPONSE: Undisputed.**

12.     Olson states that Cole turned his right shoulder and head in his direction; in fact, Olson states that Cole "extended his right arm from under his body and pointed a dark colored semiautomatic firearm in [his] direction." Olson Dep. 24:24-25-7.

**RESPONSE: Undisputed.**

13.     Johnson also hears the single gunshot but is unsure of where it came from, and continues to run toward the subject in grey when he hears a "volley of four more shots." Johnson Dep. 26:5-20, 28:2-8.

**RESPONSE: Undisputed with clarification that Johnson testified he was unsure of where "*specifically*" the gunshot came from, but it was from somewhere in front of him. (ECF 80-7 Johnson Dep., pp. 26:24-27:7). Furthermore, Johnson testified that after hearing the first shot, he saw the officers in front of him move offline, which they are trained to do when a firearm is shot. Shortly after, is when he heard a volley of four more gunshots. (ECF 80-7 Johnson Dep., pp. 27:25 – 28:8)**

14.     Johnson's depiction of the scene includes the following: "JJ" is where Johnson was standing when he heard the "four shots;" the "X AC" is where Alvin Cole was located; and the two "X WPD" indicates where the other two officers were standing according to Johnson.



Johnson Dep. at Ex. 26.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that Johnson Dep. Ex. 26 is not a part of the record and therefore inadmissible. Subject to the objection, undisputed.**

15. After hearing the single gunshot, and from about 40 yards away, Johnson observed Cole to be "falling or moving down" to "a hands-and-knees position" and was in the "act of falling." Johnson Dep 31:1-15, 34:10-17.

**RESPONSE: Undisputed.**

16. Only after Mensah shoots Cole does Johnson identify Mensah and Shamsi near Cole as well as his first observation of "the gun *next to Alvin Cole."* Johnson Dep. 37:14-23.

**RESPONSE: Undisputed with clarification that Johnson later in his deposition testified he saw the gun "[U]nder or basically touching his [Cole's] right hand." (ECF 80-7 Johnson Dep. p. 38:20-22)**

17.     Citizen witnesses with unobstructed views who clearly saw Cole because he was illuminated by flashlights, saw him on the ground and did not see anything in Cole's hands before, during, or after he was shot by Mensah.  Decl. Shenora Stanten- Jordan ¶110, 9--15; Decl. John Rawlings ¶9, 12-14; ECF 20 ¶126[4].

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the Declarations of Shenora Stanten-Jordan and John Rawlings are not a part of the record and therefore inadmissible. Thus, to the extent that the cited evidence does not support the proposed fact, it should be disregarded.**

**Further, Officers on scene in close proximity to Cole observed him with the gun in his hands at all times until after the shooting when Officer Olson approached and kicked it away. (ECF 80-4 Olson Dep., p. 36:11-12)**

18.     While Shamsi was parking, he saw Johnson pursuing another subject passing in front of his vehicle. Shamsi Dep. at 22:9-17.

**RESPONSE:  Undisputed with clarification that Shamsi testified he saw one individual being pursued by "*another officer*" and that Officer Johnson was there, but he believed he had caught another suspect. (ECF 80-5 Shamsi Dep., p. 22:9-17) Even if the Court accepts this fact for purposes of summary judgment, there is no dispute of material fact precluding judgment in favor of the Defendants.**

19.     While running, Cole was Shamsi's only focal point and Cole was about 20 feet ahead of him. Shamsi Dep. at 25:23-26:11.

---

[4] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 126 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

**RESPONSE: Undisputed with clarification that Shamsi testified "He was probably a good 20 feet ahead of me. I'm estimating, but he had a good beat on me." (ECF 80-5 Shamsi Dep., p. 26:10-11) Even if the Court accepts this fact for purposes of summary judgment, there is no dispute of material fact precluding judgment in favor of the Defendants.**

20.     Shamsi did not have a flashlight or any other gear pulled out while he was running toward Cole because the encounter did not start off like it was going to escalate. Shamsi Dep. at 27:4-9.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not an accurate reflection of cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii). Officer Shamsi's cited testimony provides the following:**

> **A:      I don't recall if anybody else had a light. While I was chasing, I did not have a light. I was just running. I hadn't pulled anything out because -- to back up, when we initially made contact it didn't start off like it was going to be anything escalated.**
> **Q:      I understand.**
> **A:      So I didn't have any gear pulled out. So while I was running, I didn't have anything. The first time I pulled anything was when I pulled my gun because he had a gun in his hand, and I had a flashlight on my gun which I had activated.**

**(ECF 80-5 Shamsi Dep. p. 27:4-9) Subject to the objection, it is undisputed that Officer Shamsi only pulled out his gun in response to Cole escalating the situation by pulling out his gun.**

21.     Now on foot, Shamsi began chasing Cole and heard what "sound[ed] like a gunshot" but did not register it at the time and had no idea whether the sound came from another officer or a subject. Shamsi Dep. at 22:22-23:1.

**RESPONSE: Undisputed.**

22.     The first gunshot that Shamsi believed to hear felt "out of context" to him because he never observed anyone nearby with a weapon and it was only one shot. Shamsi Dep. at 24:19-

24.

    **RESPONSE:  Undisputed.**

23.     After the single gunshot, Cole's knees were on the ground and his back straight – similar to the yoga "child's pose". Shamsi Dep. at 29:9-30:2.

    **RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not an accurate reflection of cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).  Subject to the objection, undisputed as to Officer Shamsi's description of Cole when he observed him. However, Officer Shamsi testified that he did not see Cole go down to the ground:**

> **Q:    So there's a gunshot. At some point Mr. Cole goes down. You don't know if it's before or after. Describe how he was -- how he went down.**
>
> **A:    I didn't specifically see him start -- I didn't see how he went down. When I caught up to him and went by his feet and saw the gun in his right hand, I could see he was on his knees with his feet facing me, and then I saw the gun. So I focused on the gun which was stretched out. His right hand stretched out with the gun in his hand. His finger was on the trigger, and that's all I remember. And I didn't look at his full on body position. At that point I was focused primarily on his arm and the gun.**

**(ECF 80-5 Shamsi Dep. p. 27:21-28:11)**

24.     Shamsi states that while in this "child's pose" position, knees on the ground, that Cole's right arm is extended away from his body. Shamsi Dep. at 30:16-24.

    **RESPONSE:  Undisputed.**

25.     Shamsi observed Cole face down on the ground and approached Cole's feet – when Cole was running and going down to the ground, Shamsi noticed for the first time that Cole had a gun in his hand. Shamsi Dep. at 23:1-9.

    **RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary**

materials to the extent that Shamsi did not testify that he observed Cole face down on the ground. Officer Shami's cited testimony provides the following:

> A: I was chasing. As I was chasing after Mr. Cole, I remember hearing something. It did sound like a gunshot, but I had no idea what that was at the time. It really didn't register that it could come from another officer or anything like that. Then I saw Mr. Cole go down on the ground. So I placed myself pretty much at his feet. Once I – when he was running and going down to the ground, I noticed he had a gun in his hand. That caught me off guard. He did not have a gun when I saw them. There were no suspects that had a gun when we encountered them by the parking structure.

(ECF 80-5, Shamsi Dep. at 22:21-23:1-9) Subject to the objection, undisputed that when Cole was running and going down to the ground, Officer Shamsi noticed for the first time he [Cole] had a gun in his hand.

26. Shamsi verbally identified the firearm, and he drew his service weapon at Cole asking him to drop the gun while focusing solely on Cole's extended right arm. Shamsi Dep. at 23:10-14.

**RESPONSE:  Undisputed.**

27. Shamsi could not tell if Cole is aiming at Olson but thought that Cole's weapon could have been pointed towards Mayfair Road. Shamsi Dep. at 34:2-10.

**RESPONSE:  Objection. Misleading and mischaracterizes Shamsi's testimony. Shamsi testified he did not know what he [Cole] was looking at – he wasn't looking at his face. (ECF 80-5 Shamsi Dep. p. 34:9-10). Shamsi also testified that he could not say where [Cole's] mind was or what made him choose where he was pointing his gun. (ECF 80-5, p. 33:16-18). Subject to the objection, undisputed that Cole's gun is pointed toward Mayfair Road and Officer Olson is in that general direction.**

28.     Suddenly, Shamsi hears "a volley of shots off to [his] left" and did not know there was another officer nearby; he looked to the left and saw Mensah and realized that Mensah had fired his weapon. Shamsi Dep. at 23:20-24.

**RESPONSE:  Undisputed.**

29.     Between the time that Shamsi parked his vehicle and the time that Mensah fired his weapon was about 10-20 seconds. Shamsi Dep. at 24:2-11.

**RESPONSE:  Undisputed.**

30.     Shamsi has his weapon drawn and is giving verbal commands to Cole to let go of the weapon, but Cole never moved, likely because Cole was unconscious. Shamsi Dep. at 31:11-23; Motley Decl., at Ex. 28 (hereafter "MPD Autopsy Report") pg. 4; Decl. Tracy Cole.

**RESPONSE:  Objection. In contravention of Civil Local Rule 56(b)(2)(B)(ii) and Fed. R. Civ. P. 56, the proposed fact is not supported by the cited evidentiary materials to the extent that the Declaration of Tracy Cole is not a part of the record and therefore inadmissible, and the cited Autopsy Report (Exhibit 28) is not properly authenticated and therefore inadmissible hearsay under FRE 801. Further object to the extent that the purported fact calls for speculation and is an improper lay witness opinion that lacks foundation under Federal Rules of Evidence 701. Even if the Autopsy report was admissible, nowhere in that report supports the speculation that Cole was unconscious.**

**Subject to the objections, dispute that there is any evidence in the record that demonstrates Cole was "unconscious" at any time prior to being shot. The testimony about Cole's actions indicates he was conscious.**

> **THE WITNESS:     [. . .] and when he did go down, I'm speculating on a fall, he would have fell forward, but he didn't. He fell the other way because he was running toward Mayfair Road, but he fell facing south with his gun facing Mayfair Road. So he had to make**

a 90 degree turn and then fall.

(ECF 80-5 Shamsi Dep., pp. 38:23-25 – 39:1-4) Furthermore, Officer Olson testified:

> Q.     Was he on his knees?
> A.     No.
> Q.     So he's in this low ready, but his feet are planted?
> A.     Yes. He's almost in that lineman's position that you speak of, but he's not making contact with his hands with the ground or anything at that point.
> Q.     So his hands have not touched the ground?
> A.     That's my recollection is that he was very close to touching the ground, but he was not touching the ground.

(ECF 80-4 Olson Dep. pp. 22:17-25 – 23:1-3)

> Q.     Was the gun on the ground? Was his arm on the ground as he extended or was he elevated with the extension?
> A.     Elevated.
> Q.     And he was looking at you?
> A.     That's my perception is he was looking at me. He was looking directly in my direction.
> Q.     Okay. And you could see his face and his eyes?
> A.     Yes.

(*Id.* at pp. 25:25 – 26:1-8) To the extent that the cited evidence does not support the proposed fact, it should be disregarded. Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.

31.    Cole had abrasions to his face and his nose was swollen suggesting that Cole fell upon shooting himself accidentally and was unconscious. MPD Autopsy Report pg. 4; Decl. Tracy Cole.

**RESPONSE:**  Objection. In contravention of Civil Local Rule 56(b)(2)(B)(ii) and Fed. R. Civ. P. 56, the proposed fact is not supported by the cited evidentiary materials to the extent that the Declaration of Tracy Cole is not a part of the record and therefore inadmissible, and the cited Autopsy Report (Exhibit 28) is not properly authenticated and therefore inadmissible under

hearsay under FRE 801 and an improper lay witness opinion that lacks foundation under Federal Rules of Evidence 701.

To the extent that the cited evidence does not support the proposed fact, it should be disregarded.

32. Shamsi does not recall Cole moving or making any threatening movements and was sure that Cole's body and gun did not move. Shamsi Dep. at 31-32, 39:7-12, 42:8-23, 52:21-25, 55-56.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not a full, complete, and accurate reflection of Shamsi's testimony. Subject to the objection, Shamsi testified he *did not recall* seeing the gun move. He did not testify that he was "*sure*" Cole's body and gun did not move. (ECF 80-5 Shamsi Dep. pp. 54:25–55:15). Further, Officer Shamsi testified that Cole did make threatening movements by refusing to drop** and **pointing the gun. Cole's actions were so threatening that Officer Shamsi determined deadly force was justified and pointed his gun at Cole with his finger decompressing the trigger. (ECF 80 Shamsi Dep. p. 54:1-12)**

**Officer Shamsi testified:**

> **THE WITNESS:     When I initially got out of my car, you kind of always assume that things are going to escalate, but at first I just figured that we would be talking to the individuals, but they started to run, and clearly that's an escalation that they are running because then it turned into a chase. And then for me running after Cole once I caught up to him and I saw he had a gun in his hand when he was on the ground, that was a massive escalation for me. So at that point a gun being introduced into the situation creates a deadly force situation. So him introducing the gun made me pull mine. <u>I was prepared to use deadly force.</u>**

**(*Id*. pp. 51:15-52:4)**

> **THE WITNESS:       He did not comply after repeated commands to let**

go of the weapon in multiple different ways, drop the gun, throw the gun, push the gun. His hand never moved off the weapon.

(*Id.* pp. 52:21-25) To the extent that the cited evidence does not support the proposed fact, it should be disregarded.

33.     Shamsi arrived at the mall where "X1" appears on the map near Barnes and Noble to see if anyone walked out of that mall exit. Shamsi Dep. 15:1-16; Ex. 18.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that Shamsi Dep. Ex. 18 is not a part of the record and therefore inadmissible. Subject to the objection, undisputed with the clarification that Shamsi testified he parked at the Barnes and Noble entrance just in case he saw the person that they described with the gun come walking out. (ECF 80-5 Shamsi Dep., p. 15:3-5) Even if the Court accepts this fact for purposes of summary judgment, this fact is immaterial and irrelevant to the Constitutional violations alleged by Plaintiffs and does not preclude summary judgment in favor of Defendants.**

34.     Shamsi testified that he saw Johnson at "X2" exiting his vehicle and running toward a group of individuals consistent with the red marked arrows on Exhibit 18. Shamsi Dep. 20:2-16, Ex. 18.

**RESPONSE:   Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that Shamsi Dep. Ex. 18 is not a part of the record and therefore inadmissible. Subject to the objection, undisputed with clarification that Shamsi testified "I would be guesstimating." (ECF 80-5 Shamsi Dep. p. 18:1-9) Even if the Court accepts this fact for purposes of summary judgment, this fact is immaterial and irrelevant to the Constitutional violations alleged by Plaintiffs and does not preclude summary judgment in favor of Defendants.**

35.     The blue arrow shows that Shamsi drove his squad into Cheesecake Factory prior to getting out and pursuing the individuals on foot; where the blue arrows stop, at "X3" is where Shamsi gave case to a number of people. Shamsi Dep., 20:17- 21:10, Ex. 18.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that Shamsi Dep. Ex. 18 is not a part of the record and therefore inadmissible. Subject to and without waiving the objection, undisputed.**

36.     While running, Shamsi heard something that sounded like a gunshot but had no idea what it was at the time because he had not observed a gun. Shamsi Dep. 22:22-24; 24:15-24.

**RESPONSE:  Undisputed.**

37.     From the time that Shamsi parked his car to when Mensah ran onto scene and shot Cole was about 10-20 seconds at most. Shamsi Dep. 24:2-14.



Shamsi Dep. Ex. 18.

> **RESPONSE:  Undisputed.**

38.     Shamsi was the only officer near Cole and had visual of the gun and Cole the entire time. Shamsi Dep. at 40:11-13, 42:8-23.

> **RESPONSE:  Objection. In contravention of Civil Local Rule 56(b)(B)(ii) and Fed. R. Civ. P. 56, the proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of Shamsi's testimony and does not support that Shamsi was the only officer near Cole or that he was the only officer that had visual of the gun and Cole the entire time. Shamsi testified "From what I recall I thought I was the only person by him." (ECF 80-5 Shamsi Dep., p. 40:11-12). Furthermore, he testified he was aware Olson was**

20, 25 feet away. (ECF 80-5 Shamsi Dep., p. 40:18-22). Finally, Shamsi testified that Mensah was closer to Cole than he was but did not see him until after the shots were fired. (ECF 80-5 Shamsi Dep., p. 42:1-14). Moreover, the uncontroverted video evidence demonstrates that there were multiple officers in the vicinity. (ECF 76-24 Shamsi Squad Video; *see* also testimony from each officer who testified that they were on scene and near Cole at that time of the shooting ECF 80-4 Olson Dep. p. 23:17-19, ECF 80-3 Mensah Dep. 6/26/23 Depo, pp. 223:16 –224:3)

To the extent that the cited evidence does not support the proposed fact, it should be disregarded.

39.     Shamsi did not remember observing Cole's right arm moving underneath his body toward the direction of Mensah and Shamsi did not understand why Mensah was shooting at Cole as Cole was not a threat to anyone and he had control of the situation without resorting to deadly force. Shamsi Dep. at 55:19-56:1; ECF 20 ¶142[5].

**RESPONSE: Objection. In contravention of Civil Local Rule 56(b)(B)(ii) and Red. R. Civ. P. 56, the proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of Shamis' testimony. Shamsi testified as follows:**

> Q:     **Could it have moved?**
> A:     **It could have moved. I think that everybody had their own perspective, and I can't speak to anybody else's perspective. I know from what I was looking at I could see it from my angle, but there was other people looking from their angles as well.**

**(ECF 80-5 Shamsi Dep., p. 55:9-15) Further, deny that Officer Shamsi "did not know why Mensah decided to shoot Cole" and that Shamsi believed Cole did not pose a deadly threat.**

---

[5] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 142 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

Officer Shamsi testified that Cole did make threatening movements by refusing to drop and pointing the gun. Cole's actions were so threatening that Officer Shamsi determined deadly force was justified and pointed his gun at Cole with his finger decompressing the trigger. (ECF 80-5 Shamsi Dep. pp. 54:1-12) Officer Shamsi testified that Cole escalated the situation by pulling out a gun and that is when Officer Shamsi prepared himself to use deadly force. (*Id.* pp. 51:15-52:13)

40.     Cole did not have a gun in his hands when he fell to the ground and was his knees, he did not pose a threat of to anyone, and Mensah's deadly force was objectively unreasonable in light of the circumstances he was confronted with. ECF 20 ¶126, 128, 138, 166.[6]

**RESPONSE**: **Objection. This fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions. (ECF 101-1, ¶¶ 12, 17, 20, 31) Defendants further have a Motion to Enlarge time for filing an answer to the Amended Complaint and have filed corresponding responsive Pleadings. (ECF 108, 101-3).**

**Subject to the objection, disputed. Officer Shamsi testified that Cole did make threatening movements by refusing to drop and pointing the gun. Cole's actions were so threatening that Officer Shamsi determined deadly force was justified and pointed his gun at Cole with his finger decompressing the trigger. (ECF 80-5 Shamsi Dep. p. 54:1-12) Officer Olson also determined deadly force was justified and pointed his gun at Cole and was about to shoot. (ECF 80-4 Olson Dep. pp. 29:24–30:4) Furthermore, this fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions. (ECF 101-1, ¶¶ 12,**

---

[6] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 126, 128, 138, & 165 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

### Alvin Cole Purportedly Aimed His Weapon at Olson

41.     Once Cole had fallen to the ground, the right side of Cole's body was perpendicular

to Olson. Olson Dep. at 21:24-22:3.

**RESPONSE:  Objection. In contravention of Civil Local Rule 56(b)(B)(ii) and Fed. R.**

**Civ. P. 56, the proposed fact is not supported by the cited evidentiary materials to the extent that**

**the proposed fact is not an accurate reflection of Officer Olson's testimony.**

**Olson testified:**

> **A :     [. . .] I observed the subject in the grey hooded sweatshirt in what
> I would call a low ready stance, facing southbound.**
> **Q:      Describe a low ready.**
> **A:      I will certainly try. That would be almost in a crouched position
> where you're bent at the knees and your torso is almost
> completely horizontal.**
> **Q:      Okay. Was that individual on his knees?**
> **A :     No.**
> **Q:      Okay. So he was still -- there was space or elevation between his
> knees and the ground?**
> **A:      Correct. And his chest and the ground.**
> **Q:      So his torso is horizontal, but his knees, he's down, but he still
> can move?**
> **A:      That's correct.**
> **Q:      Okay.**
> **A:      While he was in that crouched low ready position, his right
> shoulder and arm and back of his head were facing me. So he
> was oriented with his right shoulder and back of his head facing
> away from me, and I could not see his right arm.**
>                            .         .         .
> **A:      The right side of his body was perpendicular to me. So I'm
> looking directly east. He's facing directly south.**
> **Q:      So you could see the right side of his body?**
> **A:      That's correct.**

**(ECF 80-4 Olson Dep., pp. 20:13-21:11, 21:24-22:3)**

To the extent that the cited evidence does not support the proposed fact, it should be

disregarded. Even if the Court accepts this fact for purposes of summary judgment, it is

neither relevant nor material to the question of whether Defendants are entitled to summary judgement.

42.      According to Olson, Cole then turned his right shoulder and head towards Olson and "extended his right arm from under his body and pointed a dark colored semiautomatic firearm in [Olson's] direction." Olson Dep. at 24:23-25:3.

**RESPONSE:  Undisputed.**

43.      Olson claims that Cole was looking only at him with Cole's right hand holding the gun and elevated off the ground. Olson Dep. at 25:8-26:3.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not a complete and accurate reflection of cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).  Subject to the objection, undisputed that Officer Olson testified it was his perception Cole was looking at him with his gun extended towards him, but the testimony does not support that Cole was only looking at Officer Olson.  (ECF 80-4 Olson Dep. at 25:8-26:3)**

**This fact is immaterial and irrelevant to the Constitutional violations alleged by Plaintiffs and does not preclude summary judgment in favor of Defendants.**

44.      According to Olson, Cole pointed his weapon *straight at him*; when Olson initially saw Cole, it appeared that Cole's right arm was under his body and facing Officer Johnson, but Cole eventually oriented his arm toward Olson. Olson Dep. at 51:24-52:9.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not a complete and accurate reflection of cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).**

**Olson's cited testimony provides:**

> **A:** I did not see him point the firearm at anyone else except when I initially saw his – what appeared to be his right arm was under his body, and he was facing what would have been Officer Johnson. Immediately thereafter his arm swung out with that firearm in his hand. So I did not physically see the firearm pointed at Officer Johnson. However, his arm was oriented and his head and upper body was oriented towards the direction of where Officer Johnson was foot pursuing him.

**(ECF 80-4 Olson Dep., pp. 51:24 – 52:9)**

To the extent that the cited evidence does not support the proposed fact, it should be disregarded. Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.

45.     Olson was "acquiring and isolating Mr. Cole;" Officers Shamsi and Olson controlled the situation knowing that the use of deadly force was not warranted." Olson Dep. at 29:24-30:6, ECF 20 ¶128[7].

**RESPONSE: Dispute that Officer Olson had control of the situation or knew deadly force was not warranted. The testimony cited by Plaintiffs demonstrates that Olson had decided to use deadly force and was in the process of isolating Cole as a target when Mensah shot first. (ECF 80-4 Olson Dep. pp. 29:24 – 30:6, 73:7-11) Furthermore, Olson testified the situation was not controlled. (*Id.* at 75:20-22)**

---

[7] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 128 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

46.     Olson did not see Cole point the firearm at anyone else. Olson Dep. 51:22-

52:9.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not n complete and accurate reflection of cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii). Officer Olson testified that while he did not** *physically* **see the firearm pointed at Officer Johnson, he saw Cole's right arm oriented toward the direction of where Officer Johnson. (ECF 80-4 Olson Dep., pp. 51:24 – 52:9)**

**To the extent this fact is not supported by the cited evidentiary materials it should not be considered. However, even if considered this fact does not create a dispute of material fact and does not preclude summary judgment in favor of defendants.**

47.     After the gunshots, Olson observes Cole "in the prone position now facing completely south, and his right arm is extended with the firearm in his right hand still orientated facing westbound." Cole's arm was flush on the ground. Olson Dep. at 35:5- 19.

**RESPONSE: Undisputed.**

48.     Mensah ran up to the scene, and without giving any verbal directions shot at Cole five times midstride while Officer Shamsi yelled at Mensah to, "Stop! Stop." ECF 20 ¶130, 132- 133, 141.[8]

---

[8] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 130, 132, & 141 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

**RESPONSE:  Objection.  The proposed fact is not supported by the cited evidentiary materials to the extent that it is not based on personal knowledge and thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).  Subject to the objection and without waiving, dispute. Officer Mensah testified he shouted at Cole to drop the weapon.  (ECF 80-3 Mensah Dep. 6/26/23, p. 262:24-25)**

**Furthermore, this fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions. (ECF 101-1, p. 4 ꝑ 21)**

49.     Each officer did not fear for the lives of other officers or the public, but only feared for his individual life. Olson Dep. at 29:24-30:6, 35:25-36:14, 51:17-21; Motley Decl., at Ex. 16 (hereafter "Mensah Dep. 6/26/23") at 269:14, Shamsi Dep. 36:24-25.

**RESPONSE:  Objection.  The proposed fact is not supported by the cited evidentiary materials to the extent that it is not a complete and accurate reflection of cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).**

**Shamsi testified:**

> **A:      My mindset was more of if he wasn't going to comply or let go of his firearm, that I was going to shoot. I think everybody has their own individual decisions that they make or gone over in their head of when and when not they are going to shoot, and then in those situations that's what comes to play. For me mine was if he wasn't going to let go of his firearm, he was posing a threat.**
> **Q:      A threat to you?**
> **A:      A threat to me, a threat to the other officer on Mayfair Road, a threat to anybody. I mean studies have shown -- and this is our training is that action beats reaction, and he had the beat on anybody if he had his finger on the trigger because he's the one making the choice. That's where my mind was that if he made the choice to  swing back at me, then he had the beat on me. And I was pretty close to him. So I was nervous for myself.**

**(ECF 80-5, Shamsi Dep. pp. 36:5-24)**

Furthermore, Olson testified:

> A: I already told my brain that I was going to shoot Mr. Cole at that point.
>
> Q: Why didn't you shoot?
>
> A: Because I have to isolate my target. I have to identify my target. I have to go through this process of moving off the X all within a second. I can't just shoot without doing those things as we are in a crowded space. There's other people. There's other officers. So in those milliseconds or a second or two I have to process that first.

(ECF 80-4, Olson Dep. pp. 50:19-51:4)

To the extent this fact is not supported by the cited evidentiary materials it should not be considered. However, even if considered this fact does not create a dispute of material fact and does not preclude summary judgment in favor of defendants.

50. Olson depicts the following scene: "X1" is where Olson parked his squad car; "X2" is where Cole had extended his right arm and pointed a firearm at Olson; "X3" is where Olson heard the first gunshot; "M" is where Olson observed Mensah; "S" is where Cole was with his head facing towards North Avenue, and "J" is where Johnson was standing. Olson Dep. at 47:22-52:12.



Olson Dep. at Exhibit 22

**RESPONSE: Disputed. Olson testified that he moved to position "X3" when he heard the shots fired, not the first gunshot, and "M" is where he (Olson) saw Mensah seated at a later time. (ECF 80-4 Olson Dep. p. 48:23 – 49:4) To the extent this fact is not supported by the cited evidentiary materials it should not be considered. However, even if considered this fact does not create a dispute of material fact and does not preclude summary judgment in favor of defendants.**

**Alvin Cole Purportedly and Simultaneously Aimed His Weapon at Mensah**

51.     Despite the fact that Mensah did not see Cole point his gun at anyone else, Mensah pulled his weapon while running and did not break stride until he fired five shots at Cole without justification. Mensah Dep. 6/26/23 at 214:16-18; 224: 17-18; ECF 20 ¶134[9].

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not a complete and accurate reflection of cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii). Officer Mensah testified as follows:**

> **Q:    Okay. When you heard shots fired after you saw the flash, does that mean that you pulled your weapon while you were running?**
> **A:    Yes.**
> **Q:    And you did not break stride; you pulled your weapon and kept running?**
> **A:    Correct.**
> **Q:    Okay. And as you are running with your weapon, do you recall if you were running with your weapon in ready low, meaning you've got it pointed down? Did you have it up in front of you as you were running? Did you have it, you know, the nozzle of the gun pointed upwards?**
> **A:    It was just down to my side.**

---

[9] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 134 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski*, 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

**(ECF 80-3 Mensah Dep. 6/26/2023, p. 214:12-25)**

> A:  [. . .] I saw the weapon in his hand before then, and we kept telling him to drop the gun, drop the gun, and he wasn't dropping it.

**(*Id.* at p. 219:18-21) To the extent this fact is not supported by the cited evidentiary materials it should not be considered. However, even if considered this fact does not create a dispute of material fact and does not preclude summary judgment in favor of defendants.**

52.  Two witnesses saw Cole stop running and fall to his knees on the ground.

Decl. of Shenora Stanten-Jordan at ¶ 9; Decl. of John Rawlings, at ¶8.

**RESPONSE: Objection. In contravention of Civil Local Rule 56(b)(2)(B)(ii) and Fed. R. Civ. P. 56, the proposed fact is not supported by the cited evidentiary materials to the extent that the Declarations of Shenora Stanten-Jordan and John Rawlings are not a part of the record and, therefore, inadmissible under FRE 801. Furthermore, this fact is also contrary to the record evidence, which includes the testimony of Officer Shamsi as follows:**

> A:  [. . .] When I caught up to him and went by his feet and saw the gun in his right hand, I could see he was on his knees with his feet facing me, and then I saw the gun. So I focused on the gun which was stretched out. His right hand stretched out with the gun in his hand. His finger was on the trigger, and that's all I remember. And I didn't look at his full on body position. At that point I was focused primarily on his arm and the gun.

**(ECF 80-5 Shamsi Dep., p. 28:1-11)**

> A:   He was on his -- his knees were on the ground. It was almost like if I went down to my knees and then -- I don't know the yoga position, but like his butt was in the air, and I just – I immediately saw the gun.

**(*Id.* at p. 29:9-13)**

And the testimony of Officer Olson as follows:

> Q:  Okay. Was that individual on his knees?

A:        No.

**(ECF 80-4 Olson Dep., p. 20:22-23; also *see Id.* at 21:2-4; 22:17-18; 29:1-2; 52:24-53:1)**

53.        Two people who witnessed the shooting of Alvin Cole, never saw a gun in Cole's hands before, during, or after he was shot and killed.  Decl. of Shenora Stanten- Jordan, at ¶ 13-15; Decl. of John Rawlings, at ¶ 12-14.

**RESPONSE:   Objection. In contravention of Civil Local Rule 56(b)(2)(B)(ii) and Fed. R. Civ. P. 56, the proposed fact is not supported by the cited evidentiary materials to the extent that the Declarations of Shenora Stanten-Jordan and John Rawlings are not a part of the record and, therefore, inadmissible.  This fact is also contrary to the record evidence. Officers on scene in close proximity to Cole observed him [Cole] with the gun in his hands at all times until after the shooting when Officer Olson approached and kicked it away.   (ECF 80-5 Shamsi Dep p. 28:1-11; ECF 80-4 Olson Dep., p. 36:11-12)**

54.        The witnesses also saw Mensah shoot Cole several times while Cole was on the ground.  Decl. of Shenora Stanten-Jordan, at ¶ 12; Decl. of John Rawlings, at ¶ 11.

**RESPONSE:   Objection. In contravention of Civil Local Rule 56(b)(2)(B)(ii) and Fed. R. Civ. P. 56, the proposed fact is not supported by the cited evidentiary materials to the extent that the Declarations of Shenora Stanten-Jordan and John Rawlings are not a part of the record and, therefore, inadmissible. This fact is also contrary to the record evidence, which includes the following testimony for Officer Olson:**

> Q:      **Was he on his knees?**
> A:      **No.**
> Q:      **So he's in this low ready, but his feet are planted?**
> A:      **Yes. He's almost in that lineman's position that you speak of, but he's not making contact with his hands with the ground or anything at that point.**
> Q:      **So his hands have not touched the ground?**
> A:      **That's my recollection is that he was very close to touching the**

ground, but he was not touching the ground.

(ECF 80-4 Olson Dep. pp. 22:17-25 – 23:1-3)

> Q:    Was the gun on the ground? Was his arm on the ground as he
>       extended or was he elevated with the extension?
> A:    Elevated.
> Q:    And he was looking at you?
> A:    That's my perception is he was looking at me. He was looking
>       directly in my direction.
> Q:    Okay. And you could see his face and his eyes?
> A:    Yes.

(*Id.* at pp. 25:25 – 26:1-8)

55.    As he is running towards Cole, and after hearing the first gunshot but also not knowing where the shot came from nor did he see a muzzle flash, Mensah stated that he saw the subject who matched the description go down to all fours and start crawling towards the construction site. Mensah Dep. 6/26/23 at 215: 1-12.

**RESPONSE:**   Objection. The purported fact that as Mensah is running toward Cole, and after hearing the first gunshot but also not knowing where the shot came from, nor did he see a muzzle flash is not supported by the cited evidentiary materials in contravention of Civil Local Rule 56(b)(2)(B)(ii) and Fed. R. Civ. P. 56. Subject to the objection, undisputed that Mensah testified he saw the subject (Cole) going down to all fours and start crawling toward the construction site. (ECF 80-3 Mensah Dep. 6/26/23 p. 215:10-12).

To the extent this fact is not supported by the cited evidentiary materials it should not be considered. However, even if considered this fact does not create a dispute of material fact and does not preclude summary judgment in favor of defendants.

56.    Mensah never saw Cole turn his head or body around while he was running. Mensah Dep. 06/26/23 21:13-21.

**RESPONSE:  Undisputed.**

57.     Cole was facing away from Mensah, and he could not remember whether the gun was over or under his right or left shoulder, but it was pointed at him.  Mensah Dep. 6/26/23 at 219: 5-10.

**RESPONSE:  Undisputed.**

58.     According to Mensah, while Cole is crawling with his hands and knees on the ground there is a light illuminating him.  Mensah Dep. 6/26/23 at 217: 9-14; 218:9-10

**RESPONSE:  Undisputed.**

59.     According to Mensah, Cole pointed his weapon directly at him and that is when he shot Cole, and this is inconsistent with Officer Shamsi who was the closest to Cole and did not report feeling threatened or Cole pointing his gun at anyone Mensah Dep. 6/26/23 at 222:8-15; Shamsi Dep. at 40:11-13, 42:8-23; ECF 20 ¶142.[10]

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not an accurate reflection of the cited testimony of Officer Shamsi or Officer Mensah does not supper thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).**

**Officer Mensah testified as follows:**

**Q:     And as he's -- whether it's over or under, he's, in essence, going from right across his body, his front chest, and he's pointing it behind himself?**
**A:     Correct.**
**Q:     And, again, I know you've said, I don't know if it's over the top or the bottom, it doesn't matter. You are going -- he's got it in his right hand across his body, and somehow it's reached back, and it appears as if the weapon is pointed directly at you because you are off to the side?**
**A:     Correct.**

---

[10] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 142 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

**(ECF 80-3 Mensah Dep. 6/6/23 Dep. pp. 221:23-222:11)**

      Officer Shamsi testified as follows:

         Q:     So who would have been closer, you or Mensah?
         A:     I believe Mensah would have been closer than I was.
         Q:     Okay.
         A:     He had to be. If he was going to take the shot, if he would have been farther away, it would have put another officer --
         Q:     Are you guessing that he was closer? I don't want you to speculate on that.
         A:     No. My recollection is he was closer than I was.

**(ECF 80-5, Shamsi Dep. p. 42:1-11)**

      Subject to the objection, dispute that Officer Shamsi was the closest officer or that Officer Shamsi did not feel threatened by Cole.

         A:     So him [Cole] introducing the gun made me pull mine. I was prepared to use deadly force.

**(ECF 80-5 Shamsi Dep. p. 52:2-4)**

         Q:     When you had done that, so gun out, pointed, decompressing the trigger, had you decided that deadly force was justified?

             .         .         .

         THE WITNESS: Any time I pull my gun it's because I believe deadly force is justified, and I'm in a deadly force situation.

**(*Id.* at p. 54:4-12)**

      Further dispute that Mensah's testimony is inconsistent.

    60.     Mensah states that no other officers were right next to him when he discharged his weapon. Mensah Dep. 6/26/23 at 224:1-3.

    <u>**RESPONSE**</u>**: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is mischaracterizes Officer Mensah's testimony:**

**A:** **[. . .] They were right – essentially not right next to me, but they were in close proximity to me, [. . .]**

**(ECF 80-3 Mensah Dep. 6/26/23 p. 224:1-3) To the extent this fact is not supported by the cited evidentiary materials it should not be considered. However, even if considered this fact does not create a dispute of material fact and does not preclude summary judgment in favor of defendants.**

61.     Mensah fired his gun at Cole five times, for all shots Cole was on the ground with the last three shots occurred when he was face down on the ground. Mensah Dep. 6/26/23 at 216: 3-4. ECF 20 ¶137[11].

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that it is not a complete and accurate reflection of cited testimony and, furthermore, plaintiffs do not have personal knowledge of this purported fact and thus, contravenes Civil Local Rule 56(b)(2)(B)(ii). Subject to the objection, it is undisputed that Mensah fired his gun five times, but dispute the characterization that his face was on the ground.**

62.     Officers were controlling the situation before Mensah shot and killed Cole, he was attempting to comply with their orders and was not a threat to them or any other persons, Mensah's use of deadly force was objectively unreasonable and excessive in light of the circumstances that he was confronted with, and Cole's constitutional rights were violated. ECF 20 ¶128, 129, 142, 161 - 167[12],

---

[11] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 137 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[12] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 128, 129, 142, 161-167 of the Amended Complaint in the Estate of Alvin Cole, 22-cv- 0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary material to the extent plaintiffs do not have personal knowledge of this purported fact and thus, contravenes Civil Local Rule 56(b)(2)(B)(ii). This fact is also contrary to the record evidence, which includes testimony from Officer Shamsi who testified that Cole did make threatening movements by refusing to drop and pointing the gun. Cole's actions were so threatening that Officer Shamsi determined deadly force was justified and pointed his gun at Cole with his finger decompressing the trigger. (ECF 80-5 Shamsi Dep. pp. 54:1-12) Officer Shamsi also testified that Cole escalated the situation by pulling out a gun and that is when Officer Shamsi prepared himself to use deadly force. (*Id.* pp. 51:15-52:13)**

**Olson testified he had decided to use deadly force and was in the process of isolating Cole as a target when Mensah shot first. (ECF 80-4 Olson Dep. pp. 29:24-25 – 30:1-6, 73:7-11) Olson also testified the situation was not controlled. (*Id.* at 75:20-22)**

**Furthermore, this fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions. (ECF 101-1 p. 4 ⁋⁋ 18, 20) Defendants further have a Motion to Enlarge and have filed responsive Pleadings. (ECF 108, 101-2 & 101-3)**

63.     Defendant Mensah seized and used excessive force against Mr. Cole without reasonable suspicion or probable cause to believe that Mr. Cole had committed a crime, without the suspicion that he posed a threat of harm to any other person or was a flight risk that would legally justify the force used. The lack of any such reasonable suspicion or probable cause, along with WPD's long history of racially biased policing without intervention, are evidence that the seizure of Cole, that Mensah treated Cole less favorably- and with unreasonable excessive force – then his similarly situated White counterparts - wholly or in part because Cole was black.   ECF

20 ¶ 200, 201, 204[13].

**RESPONSE:** **Objection. This fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions (ECF 101-1 ¶¶ 18, 20, 31) and their Answer to Plaintiffs Initial Complaint in Anderson. (ECF 14 [Case No. 2:21-cv-001179] ¶ 196) Defendants further have a Motion to Enlarge and have filed responsive Pleadings. (ECF 108, 101-2 & 101-3) This fact is also contrary to the record evidence, which includes the following testimony:**

**Mensah had reasonable suspicion to believe Cole had committed a crime. Cole was under investigation for a disorderly conduct while armed incident within Mayfair Mall and officers were actively attempting to place him under arrest. (ECF 80-7 Johnson Dep. pp. 6:22-7:1; ECF 80-4 Olson Dep. pp. 11:1-7, 70:13-20; ECF 80-6 Schleis Dep., p. 26:8-12)**

**Mensah, along with Officers Olson and Shamsi, testified Cole posed a threat and deadly force was justified. Officer Shamsi determined deadly force was justified and pointed his gun at Cole with his finger decompressing the trigger. (ECF 80-5 Shamsi Dep. pp. 54:1-12) Officer Shamsi also testified that Cole escalated the situation by pulling out a gun and that is when Officer Shamsi prepared himself to use deadly force. (*Id.* pp. 51:15-52:13) And Olson testified he had decided to use deadly force and was in the process of isolating Cole as a target when Mensah shot first. (ECF 80-4 Olson Dep. pp. 29:24-25 – 30:1-6, 73:7-11)**

**Furthermore, Mensah testified the shooting of Cole did not have anything to do with him being black.**

**Q:      Okay. Did you shoot Mr. Cole because he was black?**

---

[13] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 200, 201, 204 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

A: No.
Q: And you are aware that you are a defendant in three lawsuits involving the three shootings that you've had in your career with Wauwatosa Police Department, correct?
A: Correct.
Q: Okay. Did you shoot Mr. Anderson because he was black?
A: No.

**(ECF 80-3 Mensah 6/26/2023 Dep., p. 270:9-19)**

Q: Okay. Did you shoot Mr. Antonio Gonzales because he was Hispanic?
A: No.

**(ECF 80-3 Mensah 6/26/2023 Dep., p. 271:7-9)**

64. Mensah's depiction of the shooting scene is as follows: "C" indicates the location of his parked squad car; "X1" indicates where Mensah hears the first gunshot and begins running to "X2" where he sees Cole, "S" on all fours and does not stop running until he shoots Cole. Mensah Dep. 215:13-15; 278:6-22.



Mensah Dep. at Exhibit 14.

**RESPONSE: Objection. Mischaracterizes testimony. Mensah testified that before he fired, [we] kept telling him [Cole] to drop the gun, drop the gun, and he wasn't dropping it. When Cole was on the ground, Mensah testified he saw the gun over Cole's left shoulder or right under it, pointed directly at him and that is when he fired. (ECF 80-3, p. 219:1-13).**

### Chief Weber and the City of Wauwatosa's Involvement

65.     From July 15th of 2015 until February 2nd of 2020 and all times relevant, Weber was the police chief policy maker for the City of Wauwatosa and in that capacity established policies, procedures, customs, and/or practices for the same. Weber Dep. 7/7/23 at 3:12-15, 18-21, 5:12-21; ECF 20, ¶ 8, 179.[14]

**RESPONSE:  Undisputed.**

66.     Barry Weber and Wauwatosa had decision-making power to investigate and discipline officers who violated WPD policies, despite this WPD had a defacto policy of violating the constitutional rights of people of color by seizing and using excessive force against people of color. Motley Decl., at Ex. 29, ECF 47, ¶39, 89, 134, 189-204.

**RESPONSE: Objection.  This fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions. (ECF 101-1 ⫿⫿ 1, 31) Defendants further have a Motion to Enlarge and have filed responsive Pleadings. (ECF 108, 101-2 & 101-3)**

**Subject to the objection, undisputed that Barry Weber had decision making authority to investigate and discipline officers who violated WPD policies. However, dispute that WPD had a**

---

[14] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 8 & 179 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

**de facto policy of violating the constitutional rights of people of color by seizing and using excess force against people with color as there is no evidentiary support for such a position.**

67.     In the City of Wauwatosa, Mensah shot and killed three males of color in less than five years, firing his weapon nineteen times and Mensah is singularly responsible for 100% of all deaths by police shootings in Wauwatosa since at least January 2011 and 12% of all deaths by police shootings in Milwaukee County from 2013 through October 2020.[15] ECF 47, ¶ 52, 115, 116, 148.

**RESPONSE:   Objection. The proposed fact is not supported by the cited evidentiary material and thus, contravenes Civil Local Rule 56(b)(2)(B)(ii). Furthermore, this fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions. (ECF 101-1 ⁋ 2) Defendants further have a Motion to Enlarge and have filed responsive Pleadings. (ECF 108, 101-3)**

**Subject to the objection, undisputed that Mensah shot and killed three males in less than five years. However, dispute that the race of the three individuals is relevant or that it was the basis for any of the shootings. (ECF 80-3 Mensah Dep. 6/6/23 Dep. pp. 270-271) Even if considered, this fact does not create a dispute of material fact and does not preclude summary judgment in favor of defendants.**

68.     Mensah knew that Wauwatosa would not discipline him for using excessive force against Alvin Cole because of his race and in doing so the conduct against Cole was condoned when his constitutional rights were violated in comparison to that of his white counterparts. Alvin

---

[15] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 52, 115, 116, 148 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

Cole PL 1st RFA, Nos. 13 and 27, ECF 20, ¶200, 201, 206.[16]

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials and, furthermore, plaintiffs do not have personal knowledge of this purported fact and thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).  Cole PL 1st RFA, Nos. 13 and 27 do not support this fact. See (ECF 101-1 ¶¶ 13,27,20) Defendants further have a Motion to Enlarge time for filing an answer to the Amended Complaint and have filed corresponding responsive Pleadings in which they denied these allegations. (ECF 108 & 101-3).**

**Subject to the objection, dispute that Mensah knew that Wauwatosa would not discipline him for using excessive force. (ECF 80-3 Mensah 6/6/23 Dep. pp. 265-266) Further, deny that there is any evidence in the record to demonstrate that excessive force was condoned against black individuals as compared to their white counterparts or that Mensah's shooting of Cole was based on his race. (*Id.* pp.  270-271)**

69.      There is a history of over policing and devaluing people of color that is reflective in their policing by the Wauwatosa Police Department under the leadership of Weber which has resulted in racist "MLK" parties, the use of offensive literature from the KKK, overactive policing of Black and Brown individuals within Wauwatosa, and consistent racial profiling. Motley Decl., at Ex. 30 (Weber Depo. (*Knowlton et al matter*)) 5/13/21 299:3-9, 300:4-12 (ECF 20, ¶19-23, 38

---

[16] Defendants have admitted the allegations contained in Paragraphs 99-100 of the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

42, 45, 200, 201, 205-208[17] ; ECF 47, ¶ 22,23, 25, 42, 142-145.)[18]

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary material to the extent plaintiffs do not have personal knowledge of this purported fact. Also, this fact was denied by Defendants in their Answer to the Initial Complaint in Anderson. (ECF 14 [Case No. 2:21-cv-001179] ₱₱ 32-36, 49-51, 53, 159-162, 197, 198) Defendants further have a Motion to Enlarge time for filing an answer to the Amended Complaint and have filed corresponding responsive Pleadings. (ECF 108, 101-2 & 101-3)**

**To the extent that the cited evidence does not support the proposed fact, it should be disregarded.**

70.     For example, in 2016 it was reported that WPD officers stop black people 16% longer than whites, in 2018 64% of traffic stops were of black people; in 2018 83% of all arrests were of black people despite them comprising only 5.3% of the population; despite all of these statistics and data, Weber does not believe that they have a racial profiling issue with the WPD, the WPD only have a racial profiling policy within the WPD because it is mandated by the state and he is unsure if any of his officers are members of the KKK or white supremist groups. Weber Depo. (*Knowlton et al matter*) 5/13/21 299:3-9, 300:4-12.

**RESPONSE:  Objection.  The proposed fact is not supported by the cited evidentiary materials and further object as the above statement is neither relevant nor material to the**

---

[17] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 19-23, 38-40, 42, 45, 200, 201, 205-208 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[18] Defendants have failed to answer and thus have admitted the allegations contained in Paragraphs 22,23, 25, 42, 142-145 of the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

question of whether the Defendant is entitled to summary judgement. **Subject to the objections, undisputed. Therefore, the proposed fact does not preclude the entry of summary judgment in favor of the Defendant.**

71.     Weber and the City of Wauwatosa knew that Mensah had a practice of using objectively unreasonable excessive force and that he fired his weapon nineteen times killing three young males of color, he shot and killed Antonio Gonzales on July 16, 2015, Jay Anderson, Jr. on June 23, 2016, and Alvin Cole on February 2, 2020. Motley Decl. Ex. 29, ECF 47, ¶ 48, 71, 148, 154 218[19] ; ECF 20 ¶51, 52, 103, 230.[20]

**RESPONSE:  Objection.  The above statement is neither relevant nor material to the question of whether the Defendants are entitled to summary judgement. Furthermore, this fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions (ECF 101-1 ⊦ 31) and in their Answer to the Initial Complaint in Anderson. (ECF 14 [Case No. 2:21-cv-001179] ⊦⊦ 58, 59, 84, 86, 159-162, 170, 174, 225)**

**Defendants further have a Motion to Enlarge and have filed responsive Pleadings. (ECF 108, 101-3)**

**Subject to the objections, undisputed that Mensah shot and killed Gonzales on July 16, 2015, Jay Anderson, Jr. on June 23, 2016, and Alvin Cole on February 2, 2020.  However, dispute**

---

[19] Defendants failed to file an answer to the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179, after the Court's ruling on the motion to dismiss, and therefore, Defendants admit the allegations contained in Paragraph 2 to the Amended Complaint. *See* FRCP 8(b)(6)("Effect of Failing to Deny. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. "); *Modrowski v. Pigatto,* 712 F.3d 1166, 1170 (7th
Cir. 2013); *Barwin v. Village of Oak Park*, 14-cv-6046, 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[20] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 51, 52, 103, & 230 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

that the shootings were racially motivated or unlawful:

> Q: Did you shoot Mr. Cole because he was black?
> A: No
> Q: Okay. Did you shoot Mr. Anderson because he was black?
> A: No.
> Q: Okay. Did you shoot Mr. Antonio Gonzales because he was Hispanic?
> A: No.

(ECF 80-3 Mensah Dep. 6/26/2023, pp. 270:9-271:9) Further, Plaintiffs have conceded that Officer Mensah's shooting of Gonzales was justified by conceding Defendants' entitlement to summary judgement in the Gonzales matter. All three shootings were investigated by multiple outside law enforcement agencies who all came to the same conclusion. (ECFs 76-7,76-20, 76-23, 76-25)

72.     Mensah received "two medals of valor [from Weber], one while he was under investigation for the Jay Anderson shooting on August 22, 2016, related to the Antonio Gonzales shooting, (and) one related to the Cole shooting." Mensah Dep. 6/26/23 at 276: 19-23; ECF 20 ¶100, 153, & 221[21] ; ECF 47, ¶ 71.[22]

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of the cited testimony, thus contravenes Civil Local Rule 56(b)(2)(B)(ii) and Fed. R. Civ. P. 56.**

---

[21] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 100, 153, & 221 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[22] Defendants failed to file an answer to the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179, after the Court's ruling on the motion to dismiss, and therefore, Defendants admit the allegations contained in Paragraph 2 to the Amended Complaint. *See* FRCP 8(b)(6)("Effect of Failing to Deny. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied. "); *Modrowski v. Pigatto,* 712 F.3d 1166, 1170 (7th Cir. 2013); *Barwin v. Village of Oak Park*, 14-cv-6046, 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

Weber testified that Mensah received a medal of valor award acknowledging his actions in the Gonzales incident while he was under investigation for the Anderson shooting. (ECF 77-2 Weber Dep. 9/16/2022, p. 182:6-22) Even if the Court accepts this proposed fact, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgment.

73.     Awarding someone a medal of valor sends them a message that they conducted themselves the way a Wauwatosa police officer should conduct themselves in a particular incident and ratifies the officer's conduct. Weber Dep. 6/6/23 at 30:19-23, 31:3-7.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of Defendant's testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).  (ECF 77-7 Weber Dep. 6/6/2023, pp. 30:19-25, 31:3- 14) Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.**

74.     Weber gave the final approval for Mensah to get a medal of valor for the way he conducted himself during the Antonio Gonzalez shooting which he received in August 2016 while Mensah was being investigated for the shooting of Jay Anderson, Jr. Motley Decl. at Ex. 32 (Weber Testimony 5/4/21, 45:16-46:1).

**RESPONSE:   Objection. The above statement is neither relevant nor material to the question of whether the Defendants are entitled to summary judgement. Subject to the objection, undisputed. Regardless, even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.**

75.     After the Alvin Cole incident, Mensah was brought back to work while he was on administrative leave.  Weber Dep. 6/6/23 at 53:16-17.

**RESPONSE**:  **Undisputed that Mensah was "brought back" but still on administrative leave, not on patrol and not interacting with members of the community.**

**Weber testified to this as follows:**

> **Q:     Okay. And what does administrative -- I guess as administrative leave, is he -- what does that mean?**
> **A:     Well, he's -- he's not responsible for reporting to his normal shift duties. We don't allow him to do any police work as far as taking any enforcement action. We usually don't have his -- he doesn't have access to his firearm, and if we do call him back to the station, he just is in the building and he's not allowed to go outside in uniform or anything.**

**(ECF 80-8 Weber Dep. 7/7/2023, p. 75:10-21)**

**Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.**

76.     Weber had decision-making power to investigate and discipline officers who violated WPD policies. Motley Decl., at Ex. 29.

**RESPONSE**:  **Undisputed.**

77.     Weber agrees that whether an officer sees situations as more dangerous than the average person would is an important factor to look into to determine whether someone can be a successful police officer.  Weber Dep. 6/6/23 at 69 & 70:23-1.

**RESPONSE**:  **Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of Defendant's testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).  Weber also testified that they do a background check, as well as a psychological evaluation.**

> We also do the psychological evaluation when they're hired. So that
> would be the – the psychologist knows what they're testing for and
> lets us know if the officer would be a good fit and is qualified to be
> a police officer. We have a medical exam. So doctors determine if
> they're medically cleared.
> And then when we -- they're also certified through the state
> academy.

(ECF 77-7 Weber Dep. 6/6/2023, p. 71:10-18) Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.

78.     There is no step in the WPD administrative review process by which they would evaluate whether a police officer had the right mental makeup to continue to be a police officer. Weber Dep. 6/6/23 at 63:11-21.

**RESPONSE:  Disputed. This purported fact is incomplete and imprecise. As testified to many times by Weber, Farina, and Mastrocola, the Administrative Review process is to determine if any WPD policies and/or procedures were violated, and to identify any potential training deficiencies.**

**Weber testified as follows:**

> **A.      [. . .] Administrative review is mainly to assess if we need to do
> any further training or what things we could have done
> differently.**
>
> > **You know, as far as the other issues about the legalities
> > and all that, that's already addressed by the district attorney.**

**(ECF 77-7 Weber Dep. 6/6/2023, p. 62:19-24)**

**Also, Farina testified:**

> **Q:    This is not the time where -- this is not the venue where you
> would be determining whether an officer was fit to be an officer;
> is that correct?**
> **A.    That's correct.**
> **Q.    Okay. This is more about questions on whether officers need
> more training or if there are lessons to be learned on how to**

train officers in the future, correct?

A.    That, and if policy or procedures were violated.

Q.    Okay. And if an officer, perhaps, committed excessive force but was not in violation of Wauwatosa policy, that would not be -- this would not be the place where that would be investigated, correct?

A.    It's not correct. If -- if an officer used excessive force, that would be a policy violation. Does that make sense? I mean, that would

be    in violation of policy and that would have been addressed.

**(ECF 77-8 Farina Dep. 6/6/2023 at pp. 30:24-31:7)**

Q.    Okay. And if an officer, perhaps, committed excessive force but was not in violation of Wauwatosa policy, that would not be -- this would not be the place where that would be investigated, correct?

A.    It's not correct. If -- if an officer used excessive force, that would be a policy violation. Does that make sense? I mean, that would be in violation of policy and that would have been addressed.

**(*Id.* at p. 31:8-17)**

Furthermore, Mastrocola testified that the focus of his investigation is to make sure policies and procedures were followed and to see if there are any training deficiencies. **(ECF 77-3 Mastrocola Dep. 12/12/2022, p. 89:21-24)**

Furthermore, the officer must be evaluated by a therapist and found to be fit for duty before he returns to the Department. **(ECF 76-3 WPD Policy 14-07 Investigation of Law Enforcement Involved Fatalities / Great Bodily Harm)**

79.    Mensah was cleared to go back to work before the WPD's internal review into the Antonio Gonzales and Jay Anderson's shootings despite the fact that he was never interviewed by Weber or any of the WPD officers conducting the review and he returned back to work before the review was even completed. Motley Decl., at Ex. 33 (WPD Internal Emails).

**RESPONSE:  Objection. The proposed fact is based on inadmissible hearsay under FRE 801 and even if considered does not support the factual contention. To the extent that the cited**

**evidence does not support the proposed fact, it should be disregarded. Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.**

80.    The WPD internal review in the Jay Anderson shooting was completed around May 15, 2017. Motley Decl. at Ex. 19 (hereafter "Farina Dep.") at 17:5-8.

**RESPONSE:  Undisputed.**

81.    To be an effective officer and safe for the public, an officer should have a strong ability to read situations for its true danger.  Weber Dep. 6/6/23 at 70:2-6.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of the cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii). Subject to the objection, undisputed with the clarification that Weber testified to be an effective officer and safe for the public, *one factor* to take into consideration is an officer's ability to read situations for their true danger.**

> Q.    And if Officer Mensah was at a scene where other officers didn't fire who were closer than he was but he fired nonetheless, would that be a cause for certain?
>
>                    .              .              .
>
> A.    I'm not sure. It depends on how different officers perceive or what their vantage points are. Some people will perceive a threat. Some people won't.

**(ECF 77-7 Weber Dep. 6/6/2023, p. 70:7-10, 14-17) Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.**

82.    Despite Mensah's psychological examination when he was hired that determined that he had difficulty evaluating the motivations of others, Weber never questions whether he had

the right mental makeup to be in life and death situations. Weber Dep. 6/6/23 at 77:8-18.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of the cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).  Weber's cited testimony is as follows:**

> **Q.**     **Okay. After all that with a -- with a psychological exam that says he is -- he has difficulty evaluating the motivations of others, you didn't consider whether he had the right mental makeup to be in these life-and-death situations?**
> .          .          .
> **A.**     **I don't think I -- I -- *I didn't read the – the psychological saying that he is not qualified*. So I did not have any concerns.**

**(ECF 77-7 Weber Dep. 6/6/2023 p. 77:8-18; *see* also ECF 76-6, 80-1)**

**Even if the Court accepts this fact for purposes of summary judgment, there is no dispute of material fact precluding judgment in favor of the Defendant.**

83.     Weber did not wonder why in one year Mensah killed two people and did not engage his cameras at the right time.  Weber Dep. 6/6/23 at 78:4-9.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of the cited testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).**

**Weber's cited testimony is as follows:**

> **Q.**     **Did you wonder why two times in approximately one year he killed  people and did not engage his cameras at the right time?**
> .          .          .
> **A.**     **No, I -- I didn't. Because the first case, the Gonzales case, was a domestic. I'm not sure if he -- what he perceived when he got there if they   had got -- as I said earlier, if they went lights and siren. And in the Anderson case, he wouldn't have engaged -- he wouldn't have had the lights on anyway because it was just more of a let's see what this car is doing in the middle of the park**

**at 3 in the morning.**

**(ECF 77-7 Weber Dep. 6/6/2023, p. 78:4-18)**

**Also, object on the basis that the proposed fact presupposes the improper conclusion that Mensah did not engage his camera at the right now.**

**Officer Mensah testified:**

> **A.** **There's only a few times that we're required to have them on. And at that time it wasn't a requirement.**
> **Q.** **What are those times that you're required to have your dash cam recording?**
> **A.** **If I remember correctly, it's when a supervisor-- direction, during traffic stops, and at officer -- I guess it's officer discretion or when we deem appropriate.**

**(ECF 77-1 Mensah Dep. 3/17/2022, p. 160: 7-15) To the extent that the cited evidence does not support the proposed fact, it should be disregarded. Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.**

84.     Weber did not know what Mensah's perceptions were with the Antonio Gonzales and the Jay Anderson shootings, and no one from the City of Wauwatosa interviewed Mensah to learn his perceptions.  Weber Dep. 6/6/23 at 78:19-22, 79:2-6.

**RESPONSE:**  **Disputed. Weber testified that he relied on the investigation performed by the Milwaukee Police Department and the Milwaukee County DA:**

> **A.** **I don't -- I don't know what his perceptions were. But, again, he probably -- you know, it's in the report what he -- what he observed and what he told Milwaukee police officers that did the investigation. So, I think, he pretty much said what his perceptions   were.**

**(ECF 77-7 Weber Dep. 6/6/2023, p. 79:6-11) Also, Plaintiffs conceded summary judgment in favor of Defendants in the Gonzales Case and therefore cannot rely on any allegations**

stemming from that incident to defeat Defendants' entitlement to summary judgment in the present case. (ECF 110) **Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.**

85.     An important step for the Wauwatosa Police Department in investigating whether an officer had acted reasonably would be to interview any officers at the scene. Weber Dep. 6/6/23 at 62:14-17.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of Defendant's testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).  Even if the Court accepts this fact for purposes of summary judgment, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgement.**

86.     Weber never questioned whether Mensah perceives danger where others do not or whether Mensah sees situations as inherently more dangerous than an average person would.  Weber Dep. 6/6/23 at 69:7-19, 70:20-23.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of Defendant's testimony thus, contravenes Civil Local Rule 56(b)(2)(B)(ii).**

**Weber testified:**

> **Q.     And if Officer Mensah was at a scene where other officers didn't fire who were closer than he was but he fired nonetheless, would that be a cause for certain?**
>
> .                    .                    .
>
> **A.     I'm not sure. It depends on how different officers perceive or what their vantage points are. Some people will perceive a threat. Some people won't.**

.            .            .

> **Q.** And what steps does the City of Wauwatosa take either in training, in hiring, or in review to ascertain whether an officer sees danger unreasonably?
>
> **A.** When we hire people, of course, we do a pretty good background on -- on people. So in -- in like Mensah's case, he worked at another police agency. So we would get the records from that agency about him.
>
> We also do the psychological evaluation when they're hired. So that would be the – the psychologist knows what they're testing for and lets us know if the officer would be a good fit and is qualified to be a police officer. We have a medical exam. So doctors determine if they're medically cleared.
>
> And then when we -- they're also certified through the state academy.
>
> .            .            .
>
> **A.** And then we also do the -- you know, we have the year probation in which case they're riding with a police -- trained officers for three to four months too.

**(ECF 77-7 Weber Dep. 6/6/2023, pp. 70:7-10, 14-17, 71:1-18, 22-25)**

87.     Neither the Milwaukee Police Department nor the Wauwatosa Police Department investigated whether Mensah perceived each shooting as a reasonable officer would.  Weber Dep. 6/6/23 at 79, 80:3-82:2.

**RESPONSE:  Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of the cited testimony. Even if the Court accepts this proposed fact, it is neither relevant nor material to the question of whether Defendants are entitled to summary judgment.**

88.     Mensah was on probation as an officer with the WPD when he killed Antonio Gonzales on July 16, 2015. Weber Dep. 6/6/23 at 23:19-21. In light of the duties and responsibilities of police officers and Mensah, Weber and Wauwatosa obviously knew that there is a need for specialized training and supervision, and that the inadequacy of training and/or supervision would potentially result in fatal consequences and the violation of constitutional rights of Alvin Cole and were deliberately indifferent

to those rights being violated. ECF 20, ¶ 185 & 191.[23]

**RESPONSE: Undisputed that Mensah was on probation as an officer with the WPD when he killed Antonio Gonzales on July 16, 2015.**

89.    In 2020, Wauwatosa was the recipient of federal grant funding. Motley Decl., at Ex. 34 (WPD 2020 Annual Report pg. 50 as labeled DEF 002014).

**RESPONSE: Objection. The proposed fact is neither relevant nor material to the question of whether Defendants are entitled to summary judgment. Subject to the objection, undisputed. Therefore, the proposed fact does not preclude the entry of summary judgement in favor of the Defendants.**

90.    Mastrocola conducted the administrative review in relation to the Antonio Gonzalez shooting and he did not interview Mensah or Jeffrey Newman regarding their involvement in Gonzales' death and only looked to the MPD written report to give his final findings. Motley Decl. at Ex. 25 (hereafter "Mastrocola Dep.") at. 89-90: 25-4, 121:6-17.

**RESPONSE: Objection. The proposed fact is neither relevant nor material to the question of whether Defendants are entitled to summary judgment. Plaintiffs conceded summary judgment in favor of Defendants in the Gonzales Case and therefore cannot rely on any allegations stemming from that incident to defeat Defendants' entitlement to summary judgment in the present case. (ECF 110)**

91.    Weber, a final policymaker, condoned the shooting of Anderson by clearing Mensah for active duty without conducting a fitness for duty evaluation, nor did they have a policy, and

---

[23] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 185 & 191 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

without conducting an internal investigation of the Gonzales matter. Mastrocola Dep. at. 89-90: 25-4, 121:6-17; Weber 5/4/21 Dep., 93:15-94:4, Motley Decl., at Ex. 26-27, ECF 47, ¶ 63 and 64[24], ECF 20 ¶77, 78, 155, 157, & 217.[25]

**RESPONSE: Objection. The proposed fact is neither relevant nor material to the question of whether Defendants are entitled to summary judgment. Plaintiffs conceded summary judgment in favor of Defendants in the Gonzales Case and therefore cannot rely on any allegations stemming from that incident to defeat Defendants' entitlement to summary judgment in the present case. (ECF 110)**

**Furthermore, this fact was denied by Defendants in their response to Plaintiffs' First Request for Admissions. (ECF 101-1 ¶¶ 6, 7, 25) Defendants further have a Motion to Enlarge and have filed responsive Pleadings. (ECF 108, 101-2 & 101-3)**

92.     Weber testified that, "In the case of an officer-involved shooting and the officer involved is out on administrative leave and if he is cleared to come back, before we would allow him to come back, we would send him to a psychologist that we use to determine if in that person's professional opinion that he is able to return." Weber 5/4/21, Dep. 47:17-22.

**RESPONSE: Undisputed.**

---

[24] Defendants failed to file an answer to the Amended Complaint (Dkt. 47) in the Estate of Jay Anderson case, 21-cv-1179, after the Court's ruling on the motion to dismiss, and therefore, Defendants admit the allegations contained in Paragraph 2 to the Amended Complaint. *See* FRCP 8(b)(6)("Effect of Failing to Deny. An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *Modrowski v. Pigatto,* 712 F.3d 1166, 1170 (7th Cir. 2013); *Barwin v. Village of Oak Park*, 14-cv-6046, 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

[25] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 77, 79, 155, 157, 226, 227 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).

93.     Despite Weber's policy of officers needing to be evaluated by a psychologist before returning back to work after an officer involved shooting, Mensah was not evaluated nor was there a fitness for duty assessment conducted by a psychiatrist or psychologist after the shooting of Antonio Gonzales on July 15, 2015, and before the shooting of Jay Anderson, Jr. on June 23, 2016, before he came back to work. Weber 5/4/21, 93:15-94:4.

**RESPONSE: Objection. The proposed fact is not supported by the cited evidentiary materials to the extent that the proposed fact is not an accurate reflection of the cited testimony. Subject to the objection, Dispute that it was Weber's policy that Officers be evaluated by a psychiatrist or psychologist. At the time of the Gonzales and Anderson shootings, it was the policy of the Wauwatosa Police Department that Officers involved in a fatality attend counseling and evaluation with an approved specialist prior to returning to full duty patrol after an officer involved shooting. The policy states the officer must be evaluated by a _specialist_ and found to be fit for duty before he returns to the Department.**

> **As soon as practical and at Department expense, all Involved Officers will be required to attend a counseling evaluation session with an approved specialist. Details of the evaluation will remain confidential and will not be shared with the Department.**
>
> **Involved Officers will remain on leave at the discretion of the Chief of Police; however will not be permitted to return to duty until after the evaluation has occurred.**

**(ECF 76-3 WPD Policy 14-07, p. 5)**

**In addition, assert that Weber and Mensah's testimony directly contradicts this proposed fact. Weber's cited testimony asks if he [Weber] had written proof that there was a fitness for duty evaluation conducted on Officer Joseph Mensah after the Antonio Gonzales shooting, not whether Mensah underwent a fitness for duty evaluation. (ECF 91-13 Weber John Doe Testimony, pp. 93:25 – 94:4) Furthermore, Weber testified as follows:**

Q. Okay. Exhibit 6 is dated September 14, 2020, and it's a letter from a Marsha Williams, LPC. Which that is licensed professional counselor; correct?

A. Yes.

.            .            .

Q. And in it, it describes -- Ms. Williams describes, Meeting with Mensah on July 27 of '15. Do you see that?

A. Yes.

Q. Met with him again on August 3 of '15; correct?

A. Right.

.            .            .

Q. Okay. And then another individual session on August 24. [. . .]

A. Okay. Well, this, the Exhibit 6, the letter's dated September 14 of 2020, and she's referring to these -- she evaluated him in 2015, you know, five years prior to that.

Q. Right.

A. I'm guessing, I'm guessing. I don't know if we found the letter, the original letter that she sent us when we sent Mensah there.

(ECF 77-2 Weber Dep. 9/16/2022, pp. 234:19-23,235:5-11, 16-21, 236:4-11)

Mensah testified as follows:

Q: Okay. After the -- obviously, there was – you were involved in -- prior to Mr. Anderson, you were involved in a prior shooting where you discharged your weapon?

A: Yes.

Q: Okay. Did you have psychological testing done after that but before this shooting?

.            .            .

THE WITNESS: I don't know what you mean by "testing," but I did see a psychological professional.

.            .            .

Q: How many times did you see a mental health professional post the shooting involving Mr. Gonzales and the issue with Mr. Anderson?

A: Maybe at least -- I don't want to put an exact number on it, but maybe at least a dozen, I'm not sure.

(ECF 77-6 Mensah Dep. 2/28/2023, pp. 122:15-21, 123:1-2, 9-14)

Furthermore, Plaintiffs conceded summary judgment in favor of Defendants in the

Gonzales Case and therefore cannot rely on any allegations stemming from that incident to defeat Defendants' entitlement to summary judgment in the present case. (ECF 110)

94.     Defendant Weber and Wauwatosa knew about Mensah prior objectively unreasonable excessive deadly force against Antonio Gonzales and Jay Anderson, Jr. and acted with deliberate, reckless indifference as a result they condoned, approved and helped facilitated his behavior, which resulted in Mensah shooting and killing him.  ECF 20 ¶ 226-228.[26]

**RESPONSE: Disputed. Plaintiffs conceded summary judgment in favor of Defendants in the Gonzales Case and therefore cannot rely on any allegations stemming from that incident to defeat Defendants' entitlement to summary judgment in the present case. (ECF 110)**

95.     Shamsi could not tell if Cole was aiming his weapon at Olson.  Shamsi Dep. at 34:7-9

**RESPONSE: Undisputed.**

Dated this 22nd day of September 2023.

WIRTH + BAYNARD
Attorneys for Defendants

*/s/ Jasmyne M. Baynard*
Jasmyne M. Baynard, WI Bar No. 1099898
9898 W. Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: (414) 291-7979 / F: (414) 291-7960
Email: jmb@wbattys.com

---

[26] Defendants failed to answer the original Complaint (Dkt. 1) and they failed to answer the Amended Complaint (Dkt. 20) in the Estate of Alvin Cole case 22-cv-856 even after the Court's ruling on the motion to dismiss (Dkt. 25), therefore they have admitted all the allegations contained in the entire complaint but specifically Para. 226 - 228 of the Amended Complaint in the Estate of Alvin Cole, 22-cv-0856. FRCP 8(b)(6); *Modrowski,* 712 F.3d at 1170; *Barwin* 2021 WL 6882305, *1 (N.D. Ill. Apr. 30, 2021).