# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**ESTATE OF ANTONIO GONZALES,**
    Plaintiff,

    v.                                                       Case No. 21-cv-0848

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

**ESTATE OF JAY ANDERSON, JR., et al.,**
    Plaintiff,

    v.                                                       Case No. 21-cv-1179

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

**ESTATE OF ALVIN COLE, et al.,**
    Plaintiff,

    v.                                                       Case No. 22-cv-0856

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

## DECISION AND ORDER

Plaintiffs in these consolidated cases are the estates and relatives of individuals who were fatally shot by defendant Joseph Mensah, a former Wauwatosa police officer. Plaintiffs bring claims under 42 U.S.C. § 1983 against Mensah, former Wauwatosa police chief Barry Weber, the City of Wauwatosa, and the Cities and Villages Mutual Insurance Company ("CVMIC"). Before me now are several motions. These consolidated cases arise out of three separate on-duty shootings by Mensah: the July 16, 2015, shooting of

Antonio Gonzales, the June 23, 2016, shooting of Jay Anderson, Jr., and the February 2, 2020, shooting of Alvin Cole.

## I. GONZALES

On July 16, 2015, Mensah responded to a call about an intoxicated individual, Antonio Gonzales, who had threatened his roommate. When Mensah arrived, Gonzales exited the residence holding a large, decorative sword. Mensah ordered Gonzales to drop the sword. Gonzales moved towards Mensah, and Mensah issued Gonzales a final warning to "stop or I will shoot you." Gonzales waved the sword and continued to advance. When Gonzales came within 10 feet, Mensah fired two rounds at Gonzales, who later died from his injuries. Defendants move for summary judgment as to the claims alleged by the Estate of Antonio Gonzales. Plaintiffs concede that defendants are entitled to summary judgment. ECF No. 110. I will therefore grant defendants' motion.

## II. ANDERSON

In the early morning hours of June 23, 2016, Mensah, while working the late shift as a patrol officer in uniform, entered Madison Park and observed a single vehicle in the parking lot. ECF No. 79, ¶ 17. Inside the vehicle was an individual, later identified as Jay Anderson Jr., who appeared to be asleep. *Id.*, ¶ 19. Mensah called dispatch to alert them to an occupied vehicle in the park. ECF No. 92, ¶ 4. Mensah parked his squad car in front of the vehicle and turned on his bright illumination lights which allowed him to see inside the vehicle. ECF No. 79, ¶ 18. Mensah approached the vehicle from the passenger side and knocked on the passenger side window to wake Anderson up, identified himself as police, and asked Anderson to roll the passenger side window down. *Id.*, ¶¶ 26, 28; ECF No. 92, ¶ 8. Anderson woke up and rolled down the passenger window. ECF No. 79, ¶

28; ECF No. 92, ¶ 8. Mensah observed a gun and other belongings on the front passenger seat. ECF No. 79, ¶ 33; ECF No. 92, ¶ 11. When Mensah saw the gun he stepped back, radioed dispatch that Anderson had a gun and requested additional assistance. ECF No. 79, ¶¶ 34–35; ECF No. 92, ¶ 18. Mensah unholstered his service weapon and told Anderson not to reach for the gun. ECF No. 79, ¶ 38; ECF No. 92, ¶ 14.

The parties dispute exactly what occurred in the seconds leading up to the shooting. Defendants contend that Anderson extended his right arm toward the front passenger seat several times and, in response, Mensah pointed his gun at Anderson and "forcefully" ordered him to not reach for the gun. ECF No. 79, ¶¶ 40, 42–43. Plaintiffs argue that there is no evidence that Anderson reached for the gun. Plaintiffs note that Anderson's cell phone was also in the front seat and that the vehicle's registration was in the glove compartment. ECF No. 92, ¶¶ 11, 13, 90. Plaintiffs also contend that Anderson struggled to keep his hands up as instructed because he was tired and intoxicated. *Id.*, ¶ 98. Defendants contend, and plaintiffs dispute, that just before the shooting, Anderson "lunged" "his whole body" towards the gun on the seat, resulting in Mensah's belief that Anderson was reaching for the firearm. ECF No. 79, ¶¶ 44–45. Mensah immediately discharged his firearm six times as he disengaged, walking backwards. *Id.*, ¶ 46; ECF No. 92, ¶ 19. Mensah then contacted dispatch to alert them that shots had been fired. ECF No. 79, ¶ 47; ECF No. 92, ¶ 21.

Both parties provided the court with footage of the shooting captured by the camera in Mensah's squad car. The footage[1] begins at 03:06:55 A.M., depicting Mensah with his service weapon raised at the front passenger window of Anderson's vehicle. Anderson's hands are raised above his head. At 03:07:13 A.M., Anderson's right hand dips toward the seat and rises back up again. Two seconds later, at 03:07:15 A.M., Anderson's right hand again dips toward the seat. In response, Mensah discharges his weapon six times while backing away from the vehicle.

Approximately three minutes after the shooting, Wauwatosa Police Officers Ralph Salyers and Stephen Mills arrived on scene. ECF No. 79, ¶ 54. Both Salyers and Mills testified that they observed the gun on the passenger seat of the vehicle. *Id.*, ¶ 56. Mills retrieved the gun from the passenger seat of the vehicle, and Anderson's body was removed from the vehicle. *Id.*, ¶¶ 59–60; ECF No. 92, ¶ 32.

During the course of discovery, motion practice, and consolidation of the various claims against Mensah, defendants did not timely file answers to the amended complaints in the *Anderson* and *Cole* cases. Defendants have since moved for an extension of time to file answers and have attached their proposed answers to the motion. Rule 6(b) of the Federal Rules of Civil Procedure gives district courts discretion to grant extensions when deadlines are missed because of excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B) ("When an act may or must be done within a specified time, the court may, for good cause,

---

[1] The footage includes no audio until 03:07:23 A.M. Wauwatosa Police Officers at the time were outfitted with a device that allowed them to remotely activate the dash camera in their squad vehicles. Upon activation, recording equipment on the squad car's dash camera recovered and preserved the 30 seconds of video recorded prior to activation and began recording audio. *See* ECF No. 79, ¶ 49; ECF No. 92, ¶ 25.

extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect."). The Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership* enumerated the factors a district court should consider when evaluating a claim of excusable neglect. 507 U.S. 380, 385 (1993). The Court explained that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* Specifically, a court should consider the danger of prejudice to the nonmovant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *Id.* District courts "enjoy wide latitude" in determining whether a litigant's explanation for missing a deadline amounts to excusable neglect. *Jones v. Bayler*, No. 22-1296, 2023 WL 3646069, at *2 (7th Cir. May 25, 2023), *cert. denied*, 144 S. Ct. 387 (2023); *Nartey v. Franciscan Health Hosp.*, 2 F.4th 1020, 1024 (7th Cir. 2021).

Considering these factors, I find that defendants' tardiness is excusable neglect. Defendants filed their motion for extension of time four months after the answers were due but only three days after they learned of the omission. The delay will not delay the case. Defendants acted in good faith as demonstrated by their attempt to rectify the omission as soon as it came to light. Most importantly, I find no prejudice to the nonmovant. Plaintiffs do not argue that they have suffered any prejudice. Nor is there any danger of prejudice. Plaintiffs knew that defendants disputed their factual allegations. The parties were engaged in discovery regarding such disputes at the time. I will therefore grant defendants' motion for extension of time to file answers to the amended complaints in *Anderson* and *Cole*.

I turn now to defendants' motion for summary judgement in *Anderson*. Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* I view the evidence in the light most favorable to the nonmoving party and must grant the motion if no reasonable juror could find for that party. *Id.* at 248, 255.

Although on summary judgment I view the facts in the light most favorable to the nonmovant, in the rare circumstances when video footage clearly contradicts the nonmovant's claims, I may consider that video footage without favoring the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 944 (7th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)). Videos are sometimes unclear, incomplete, and may fairly be open to varying interpretations. *Id.* However, when video footage firmly settles a factual issue, there is no genuine dispute of material fact precluding summary judgment. *Id.* When "the person most likely to rebut the officers' version of events—the one killed—can't testify," to ensure fairness to a deceased plaintiff whose representative alleges an impermissible use of deadly force, given the impossibility of victim testimony to rebut the officers' account, I must "scrutinize all the evidence to determine whether the officers' story is consistent with other known facts." *King v. Hendricks City Commissioners*, 954 F. 3d 981, 985 (7th Cir. 2020). (internal citations omitted).

6

Plaintiffs allege that Mensah used excessive force when he shot Anderson. A claim that police officers have used excessive force is "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In considering whether use of force was reasonable, I assess the totality of the facts and circumstances, including consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Strand v. Minchuk*, 910 F.3d at 914–15 (quoting *Graham*, 490 U.S. at 396).

Where an officer uses deadly force, the officer must have "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985). The proper inquiry is one of "objective" reasonableness without regard to the subjective "intent or motivation" of the officer. *Strand*, 910 F.3d 909, 915–16 (citing *Graham*, 490 U.S. at 397). This inquiry is highly fact-intensive and involves "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. In determining "reasonableness" I must take into consideration the fact that police officers are often forced to make split-second judgments in tense and rapidly evolving circumstances. *Strand*, 910 F.3d at 916. The objective reasonableness of an officer's actions must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. What matters in determining whether the officer used an appropriate level of force is the amount and quality of the information known to the officer at the time he fired the weapon. *Horton*, 883 F.3d at 950.

Based on the circumstances surrounding the shooting, I find that Mensah's response was not objectively unreasonable and thus did not violate Anderson's Fourth Amendment rights. Mensah observed a weapon in Anderson's front passenger. Prior to the shooting, Mensah radioed dispatch to inform the other officers about the gun. Officer Salyers and Officer Mills both testified that they observed the gun in the front passenger seat. The squad car footage shows Officer Mills removing the weapon from the front seat. Mensah testified that he ordered Anderson not to reach for the gun and to keep his hands up. It also shows that in the seconds leading up to the shooting, Anderson reached his right hand towards the seat where the weapon was located.

An officer who shoots a suspect when the suspect is reaching for his firearm exhibits a response that is "objectively reasonable," and thus cannot be found to have violated that suspect's Fourth Amendment rights. *Helman v. Duhaime*, 742 F.3d 760, 763 (7th Cir. 2014). Deadly force is reasonable "where an officer has reasonable cause to believe that the suspect poses a danger of serious bodily harm, such as when the officer believes the suspect has a weapon." *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (citing *Garner*, 471 U.S. at 11) (holding that an officer had reasonable cause to use deadly force in a struggle for a loose gun where suspect "had his hands on or near" the weapon); *see also Conley-Eaglebear v. Miller*, No. 16-3065, 2017 WL 7116973, at *2 (7th Cir. Sept. 26, 2017) (noting that an officer need not wait for a suspect "to face him or point the gun directly at him before acting to protect himself"). Under the circumstances, Mensah's belief that Anderson posed an immediate threat to his safety was not unreasonable.

Plaintiffs contend that there is no evidence that Anderson reached for the gun, that he could have been reaching for his cell phone, which was also located on the front passenger seat, or for the vehicle's registration in the glove compartment. But the proper inquiry is whether Mensah's actions were reasonable based on the information he knew at the time he fired his weapon. Mensah could not have known whether Anderson was reaching for the weapon or for something else. The phone was located on the seat next to the gun, and one would need to reach over the seat where the gun was located to reach the glove compartment. Plaintiffs also argue there is no evidence that the gun was loaded. But again, the reasonableness inquiry focuses on the information Mensah had at the time. Mensah could not have known whether the gun was loaded or not. Finally, plaintiffs argue there is a factual dispute as to whether Anderson even reached towards passenger seat. However, they acknowledge that Anderson lowered his arm possibly as a result of being too tired or intoxicated. The footage confirms that Anderson lowered his right hand in the direction of the passenger seat. Once again, Mensah could have reasonably believed that Anderson was reaching for his gun. Thus, defendants are entitled to summary judgment on Anderson's excessive force claim.

Defendants also move for summary judgment on the claims against police chief Weber, Mensah's superior, against the City of Wauwatosa, based on failure to train, and on Anderson's minor daughter J.A.'s claim for loss of society and companionship. I will grant these motions because these claims necessarily fail if the excessive force claim against Mensah fails. I will also grant summary judgment to defendants on the estate's equal protection claim. I will also grant summary judgment on the equal protection claim. To state an equal protection claim, plaintiffs must prove that the defendants' actions had

9

Case 2:21-cv-00848-LA   Filed 03/14/24   Page 9 of 11   Document 125

a discriminatory effect and were motivated by a discriminatory intent or purpose. *Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). There is no evidence in the record of any discriminatory effect or purpose.

### III. COLE

On February 2, 2020, Wauwatosa police were dispatched to Mayfair Mall to investigate an alleged disturbance. Witnesses to the disturbance identified a group of minors, including a young African American male in a light grey hoodie, later identified as Alvin Cole. An officer encountered the group whose members fled. The police pursued the group on foot, and a gun was fired. Ten seconds later, Mensah shot Cole five times. The parties dispute what occurred in the moments before the shooting. Defendants assert that Cole had a gun in his hands when Mensah shot him, but the officers offer conflicting testimony as to the position of Cole's body at the time of the shooting and as to where the gun was pointed. In their brief, plaintiffs assert that witnesses observed Cole without a gun but do not present supporting evidence. The footage of the shooting from a squad car does not clearly indicate what occurred.

Defendants move for summary judgment on all claims alleged by the Estate of Alvin Cole. I find that oral argument might be helpful on whether there are issues of material fact. Accordingly, I will hold argument on the motion on **April 9, 2024, at 11:00 A.M.** Each side will be allotted twenty (20) minutes.

### IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that defendants' motion for summary judgment in *Gonzales* (ECF No. 69) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' amended motion for extension of time to file answers to the amended complaint in case number 21-CV-1179 and the amended complaint in case number 22-CV-0856 (ECF No. 108) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment in *Anderson* (ECF No. 78) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for oral argument (ECF No. 98) is **GRANTED IN PART**. Oral argument on defendants' motion for summary judgment in *Cole* is scheduled for **April 9, 2024, at 11:00 A.M.** in Courtroom 390, 517 E Wisconsin Ave., Milwaukee, WI 53202.

**IT IS FURTHER ORDERED** that plaintiffs' motions to file sur-reply briefs (ECF Nos. 119, 121) are **GRANTED**.

**IT IS FURTHER ORDERED** that defendants' first motion for extension of time to file answer (ECF No. 100), plaintiffs' motion to strike defendants' first motion for extension of time (ECF No. 104), and plaintiffs' motion to strike defendants' motion for protective order (ECF No. 59) are **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin, this 14th day of March, 2024.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge