# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ESTATE OF ANTONIO GONZALES,**
    Plaintiff,

    v.                                                                                          Case No. 21-cv-0848

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

**ESTATE OF JAY ANDERSON, JR., et al.,**
    Plaintiff,

    v.                                                                                         Case No. 21-cv-1179

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

**ESTATE OF ALVIN COLE, et al.,**
    Plaintiff,

    v.                                                                                         Case No. 22-cv-0856

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

## DECISION AND ORDER

    The Estate of Alvin Cole and Tracy and Albert Cole bring this § 1983 excessive force action against former Wauwatosa police officer Joseph Mensah, former Wauwatosa police chief Barry Weber, the City of Wauwatosa and the Cities and Villages Mutual Insurance Company ("CVMIC"). As the caption indicates, I consolidated the Cole lawsuit with two other excessive force suits against Mensah, the Gonzales and Anderson actions, both of which have been resolved. The Cole plaintiffs' claims arise out of the fatal shooting

of Alvin Cole by defendant Mensah. Before me now is defendants' motion for summary judgment.

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* I view the evidence in the light most favorable to the non-moving party but must grant the motion if no reasonable juror could find for that party. *Id.* at 248, 255.

Plaintiffs allege that Mensah used excessive force when he shot Cole. A claim that police officers have used excessive force is "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In considering whether use of force was reasonable, I assess the totality of the facts and circumstances, including consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Strand v. Minchuk*, 910 F.3d 909, 914–15 (7th Cir. 2018)(quoting *Graham*, 490 U.S. at 396). Where an officer uses deadly force, the officer must have "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).

On February 2, 2020, several young people were involved in a disturbance at the Mayfair Mall, a shopping center in Wauwatosa, Wisconsin. One of the individuals in the

2

group, an African American male wearing a light grey sweatshirt, later identified as Alvin Cole, was reported to be in possession of a gun. A report of the disturbance was broadcast, and several Wauwatosa police officers responded to the call. Officer Jeffrey Johnson encountered the individuals in the mall parking lot and ordered them to stop. The group fled westbound through the parking lot. Officer Johnson pursued them on foot, focusing on Cole as the suspect matching the description of the individual with the gun. Officers Evan Olson, David Shamsi, and Mensah, all starting from different places, also pursued Cole. While Cole was fleeing, the gun in his hand discharged resulting in Cole shooting himself in his left arm. Cole then fell to the ground, and the officers converged on him. Mensah fired five shots at Cole, killing him.

The officers provide conflicting testimony regarding what happened in the moments before the shooting. Olson, who was positioned to the west of Cole, testified that Cole had the gun in his right hand and that Cole's right arm was extended westward pointing the gun in his direction. He further testified that even after Mensah shot Cole, Cole's "right arm [remained] extended with the firearm in his right hand still oriented facing westbound." Deposition of Evan Olson at 35:10–35:12, ECF No. 95-6. Shamsi, who was also positioned to the west of Cole, testified largely to the same effect as Olson. Shamsi observed Cole's arm pointed westward "between where [Shamsi] was and where [Olson] was." Deposition of David Shamsi at 32:13–32:21, ECF No. 95-7. Shamsi further testified that he had sight of the gun at all times, and that the gun did not move at any time before Mensah shot Cole:

> Q: Did Cole ever take the gun and …Did he ever go the other way, counterclockwise, towards Mensah's position?
>
> A: I don't recall that.
>
> Q: Because you had sight of the gun at all times?
>
> A: Correct.
>
> Q: And the gun did not move while you had—prior to the shots, correct?
>
> A: I don't remember it moving.

Shamsi Dep. at 45:9–45:23, ECF No. 95-7. Contrary to the testimony of Olson and Shamsi, Mensah, who was positioned to the northeast of Cole, testified that he shot Cole because Cole turned his body around and pointed the gun at him either over or under his left shoulder. Deposition of Joseph Mensah at 218:24–219:6, ECF No. 95-1. Mensah further testified that he did not see Cole point the gun at anyone else, and that he shot Cole solely because Cole pointed the gun at him. Mensah Dep. at 224:9–224:18, ECF No. 95-1.

Based on the conflict between the testimony of Olson and Shamsi, on the one hand, and Mensah, on the other, it is impossible to know what happened and whether Mensah's use of deadly force was reasonable. A jury might determine that Cole pointed the gun at Mensah, and that Mensah, therefore, reasonably feared that Cole posed a significant threat to him. A jury might also conclude, as Olson and Shamsi testified, that Cole never pointed the gun in the direction of Mensah, and that Mensah did not have a right to use deadly force. Because there is conflicting testimony, a reasonable jury could also find that neither the Olson/Shamsi or the Mensah version of the facts accurately described what happened, or that some combination of them did. It is worth noting that to

point the gun at Mensah, Cole would have had to turn his body some 270 degrees while on the ground and suffering from a gunshot wound. Thus, there is a genuine issue of material fact as to whether it was reasonable for Mensah to shoot Cole. Accordingly, Mensah's motion for summary judgment must be denied.

Defendants assert that Mensah is entitled to qualified immunity. Whether qualified immunity applies turns on two questions: first, whether the facts, taken in the light most favorable to plaintiffs, describe a violation of a constitutional right; and second, whether the federal right at issue was clearly established at the time of the alleged violation. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam). "If either inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (citation and internal quotation marks omitted). As discussed above, taking the evidence in the light most favorable to plaintiffs, a reasonable jury could find that Cole did not point the gun in Mensah's direction, and that Mensah was, therefore, not justified in using deadly force. Thus, Mensah is not entitled to qualified immunity.

Defendants also move for summary judgment on plaintiffs' claims against former police chief Weber. Plaintiffs allege that Weber is personally liable for Mensah's conduct based on supervisory liability. To be found personally liable for the acts of subordinates, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992–93 (7th Cir.1988) ("They must in other words act either knowingly or with deliberate, reckless indifference."). Supervisors who are merely negligent, even grossly negligent, in failing to detect and prevent subordinates' misconduct are not liable. *Id.* at 992. Plaintiffs allege that Weber failed to conduct an internal investigation of Mensah's fitness or to

5

discipline him, for having previously shot and killed Antonio Gonzales and Jay Anderson, Jr. Weber, however, provided evidence that after each shooting, Mensah was placed on administrative leave, investigated internally and by an outside agency, received counseling from a licensed practitioner, and was evaluated by a specialist prior to his return to patrol. Plaintiffs do not provide evidence that Weber facilitated, approved, condoned, or turned a blind eye to unconstitutional conduct. Thus, Weber's motion for summary judgment will be granted.

The City of Wauwatosa also moves for summary judgment on plaintiffs' claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), alleging that the City had a custom and practice of condoning excessive force. Plaintiffs allege that the City failed to maintain protocols for officer-involved shootings, and that it failed to adequately train or supervise Mensah following his prior on-duty shootings. But again, plaintiffs do not provide sufficient evidence to support this claim. Therefore, the City's motion will be granted. Defendants also move for summary judgment on plaintiffs' claim that the City and Mensah denied Cole equal protection by using excessive force against him because of his race. To state an equal protection claim, plaintiffs must show that defendants' actions had a discriminatory effect and were motivated by a discriminatory intent or purpose. *Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). Plaintiffs, however, offer no evidence that Mensah's conduct met this standard.

In conclusion, defendant Mensah's motion for summary judgment is **DENIED** with respect to the Estate's claim for excessive force and with respect to Tracy and Albert Cole's claim for loss of society and companionship. Defendant Mensah's motion is

6

**GRANTED** with respect to plaintiffs' equal protection claim. Defendants Weber and the City's motions for summary judgment are **GRANTED**.

Dated at Milwaukee, Wisconsin, this 29th day of March, 2024.

/s/ Lynn Adelman_____
LYNN ADELMAN
United States District Judge

7

Case 2:21-cv-00848-LA   Filed 03/29/24   Page 7 of 7   Document 131