UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTATE OF ALVIN COLE, et al.,

                Plaintiffs,

CASE NO.: 21-cv-848

(originally, Case No.: 2:22-cv-0856) [1]

v.

JOSEPH A. MENSAH,

                Defendant.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT DECISION (ECF 131)

On March 14, 2024, the court issued its decision and order granting summary judgment in favor of defendants in all respects in the Gonzales and Anderson cases. (ECF 125) Thereafter, the court held oral argument on the question of whether material disputes of fact existed to deny dismissal of the Cole lawsuit. (ECF 128)

On March 29, 2024, the court issued its decision and order granting defendants' motion for summary judgment dismissing the claims in Cole's lawsuit against the City of Wauwatosa, Barry Weber and the equal protection claim against Officer Mensah; however, the court denied summary judgment dismissing the excessive force claim against Mensah. (ECF 131at 6-7) That claim remains the sole claim currently scheduled to go to trial.

### DISCUSSION

---

[1] This case was consolidated with two other cases, and the court ordered filings in any of the three consolidated cases to be made in the lead case (21-CV-848) only. The court's order on the defendants' motion for summary judgment dismissed the lead case in its entirety, as well as the second consolidated case (21-CV-1179). As a result, this case, 22-CV-0856, is the only matter with a claim surviving to a contemplated trial. The court has not yet amended its order that all materials be filed in the lead case, so this motion is being filed in Case No. 21-CV-848, pursuant to court order, but affects only the remaining claim in 22-CV-0856.

Motions to reconsider a summary judgment ruling are brought under Federal Rule of Civil Procedure 54(b), which permits revision of non-final orders. *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012). "[M]otions to reconsider an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Woods v. Resnick*, 725 F.Supp.2d 809, 827 (W.D. Wis. 2010). The Seventh Circuit has summarized the role of motions to reconsider as follows:

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citations omitted). In other words, "Motions to reconsider 'are not replays of the main event.'" *Dominguez v. Lynch*, 612 F. App'x 388, 390 (7th Cir. 2015) Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

Officer Mensah brings this motion to correct an error of law and an error of fact. Correcting those errors should entitle Officer Mensah to dismissal of Cole's excessive force claim, thereby concluding the lawsuit in its entirety.

<u>Correct standard of law.</u>

The court's order and decision correctly noted the framework for assessing Officer Mensah's use of deadly force in this case:

> In considering whether use of force was reasonable, I assess the totality of the facts and circumstances, including consideration of "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Strand v. Minchuk*, 910 F.3d 909, 914–15 (7th Cir. 2018)(quoting *Graham*, 490 U.S. at 396). Where an officer uses deadly force, the officer must have "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985).
> (ECF 131 at 2)

The courts' recitation of the applicable framework also comports with the Seventh Circuit Pattern Jury instruction, which provides in part:

> [An officer may use deadly force when a reasonable officer, under the same circumstances, would believe that the suspect's actions placed him or others in the immediate vicinity in imminent danger of death or serious bodily harm. [It is not necessary that this danger actually existed.] [An officer is not required to use all practical alternatives to avoid a situation where deadly force is justified.]]

(Seventh Cir. Pattern instruction 7.10).

### Error of law.

The court cited the appropriate review standard, but the order denying Mensah's motion to dismiss the excessive force claim shows manifest error of law. Rather than considering the totality of the circumstances surrounding the shooting of Cole, the denial of the motion upon the merits and upon qualified immunity focused on only a single issue - whether Cole was pointing his gun at Officer Mensah at the time Mensah used deadly force. (ECF 131 at pg. 5)[2] Single-issue focus on an improperly narrow standard was an error of law.

A proper analysis required consideration of *all* circumstances preceding and surrounding Officer Mensah's use of force. That analysis must include the fact that the dispatch call to Mensah was for disorderly conduct while armed, that he was responding to an armed occurrence in a shopping mall, that the suspect had fled into the mall parking lot, that there was an in-progress foot pursuit, that the suspect had fired his weapon while being pursued, and that while officers' testimony might have inconsistencies in who Cole was pointing his weapon at when he was shot,

---

[2] ". . . Cole never pointed the gun in the direction of Mensah, and that Mensah did not have a right to use deadly force." ECF, pg. 4, ll. 20-21.

"A reasonable jury could find that Cole did not point the gun in Mensah's direction, and that Mensah was, therefore, not justified in using deadly force. Thus, Mensah is not entitled to qualified immunity." ECF, pg 5, ll. 12-14

3

they all agree he was pointing his weapon at police officers. The crime to which Mensah was responding was obviously severe.

Cole's actions would cause any reasonable officer to believe Cole was actively resisting and attempting to evade arrest. See, e.g., *Henning v. O'Leary*, 477 F.3d 492, 495–96 (7th Cir. 2007) (concluding deadly force was reasonable where suspect resisted arrest). The sole question upon which the court focused to deny summary judgment, whether Cole was actively pointing his gun at Mensah, was improperly narrow and not the standard of review in a use of force analysis.

<u>An excessive force analysis does not hinge on whether a gun was pointed at Officer Mensah.</u>

Even if the court felt there is a question of fact on whether or how the suspect pointed his weapon at Officer Mensah, that question alone is insufficient to defeat summary judgment. Indeed, the court's focus on that single issue creates a danger that the special verdict question will also – improperly – focus on a single question, rather than on the totality of the circumstances.

Although an officer may not continue to use force against a suspect who has been subdued, a suspect has not been subdued merely because he has fallen to the ground, especially if he remains in possession of a weapon. *Doxtator v. O'Brien*, 39 F.4th 852, 862 (7th Cir. 2022). ("being on one's stomach on the ground does not preclude one from firing a gun, so the fact that he was facedown on the ground and handcuffed does not render him 'subdued,' especially if officers believed that one of his hands contained a firearm.") *Id.* A singular focus – whether on summary judgment or in a special verdict - on who Cole's gun was targeting is error; that Cole was even capable of pointing a gun meant he was not subdued and that the totality of the circumstances warranted a response of deadly force.

An officer does "not need to wait for [a suspect] to face him or point the gun directly at him before acting to protect himself and the community." *Conley-Eaglebear v. Miller*, No. 16-3065, 2017 WL 7116973, at *2 (7th Cir. Sept. 26, 2017) (suspect shot as he turned towards officer

4

with gun in hand); *citing*, *Helman v. Duhaime*, 742 F.3d 760, 763 (7th Cir. 2014) (deadly force is objectively reasonable when suspect reaches for a firearm); *Henning v. O'Leary*, 477 F.3d 492, 496 (7th Cir. 2007) (officers "cannot be expected to wait" for a suspect to finalize control of what he intends to do with a weapon).

The court's denial of Mensah's motion to dismiss the excessive force claim was error because it improperly elevated a single issue above the totality of circumstances. The law decidedly does not require that Cole have been pointing his gun at Officer Mensah for Mensah to have been permitted to use deadly force.

The danger of denying summary judgment by citing the singular question is that it relies upon too narrow an issue for summary judgment and risks that sole issue improperly becoming a standalone special verdict question. Both are errors of law requiring that the court reconsider the dismissal of Officer Mensah's summary judgment motion. At minimum, the court must clarify in its order denying dismissal of the excessive force claim, that any trial will examine the totality of the circumstances, not solely ask whether Cole pointed his weapon at Mensah.

<u>Factual errors warrant reconsideration of the summary judgment denial.</u>

Reconsideration of the Officer Mensah's motion to dismiss the excessive force claim is also required because the order is based upon errors of fact. The court's order misstated as fact that Officers Shamsi and Olson testified that "Cole never pointed the gun in the direction of Mensah." (ECF 131 at 4) That was not the officer's testimony:

**Officer Shamsi testified:**

> Q: And that you don't know or you don't recall seeing it move, correct?
>
> A: Correct.
>
> Q: Could it have moved?
>
> A: It could have moved. I think that everybody had their own perspective, and I can't speak to anybody else's perspective. I know from what I was looking at I could see it from my angle, but there was other people looking from their angles as well.

5

(ECF No. 95-97, at pg. 55)

Officer Shamsi did not testify that Cole never pointed his weapon at Officer Mensah. He testified that he could not recall seeing the gun move while in Cole's control, and that he did not even know Mensah was on scene until after the shooting. Characterizing Shamsi's testimony as saying Cole never pointed the gun in the direction of Mensah is an error of fact. Basing a denial of Officer Mensah's motion on an error of fact warrants reconsideration of the denial.

In turn, Officer Olson testified that after he heard the shot from Cole's gun, Olson began moving toward Cole:

**Officer Olson:**

> Q: Okay. So as you're moving, you're in your head processing when it's safe to engage and shoot him?
>
> A: Yes. I still have to acquire and isolate Mr. Cole using the sights of my firearm and all those things need to transpire before I pull the trigger on my firearm.
>
> Q: Okay. The decision to shoot Mr. Cole or at least begin the process of shooting Mr. Cole, that was because you believed your life was in danger, correct?
>
> A: That is correct.
>
> Q: You did not see Mr. Cole point his weapon at anyone else other than you, fair?
>
> A: I did not see him point the firearm at anyone else except when I initially saw his – what appeared to be his right arm was under his body, and he was facing what would have been Officer Johnson. Immediately thereafter his arm swung out with that firearm in his hand. So I did not physically see the firearm pointed at Officer Johnson. However, his arm was oriented and his head and upper body was oriented towards the direction of where Officer Johnson was foot pursuing him.
>
> . . . .
>
> Q: Have you reviewed any of the other officers' narrative statements?
>
> A: No.
>
> Q: Are you aware that Joseph Mensah indicated that Mr. Cole had pointed the gun actually at him directly?
>
> A: No, I don't recall.

Q    Well, recall or knowing are two different things. You've never seen the other statements, correct?

A:    I don't believe I have, no.

Q:    Okay. And just so I'm clear, you had indicated that Mr. Cole, you told me you could clearly see his eyes and that he was pointing the weapon in your direction, correct?

A:    Yes. At one point, yes.

(ECF No. 95, 96 Olson Dep. at 51:10-52:9, 76:10-25)

Olson's sworn testimony is that he was unaware of Officer Mensah's statement – not a denial of whether such gun-pointing occurred. Olson was clearly aware that Cole pointed the gun at him – information sufficient under the federal standard to justify deadly force – "at one point." But, again, that is factually different than testifying that "Cole never pointed the gun in the direction of Mensah."

Officer Olson supported the conclusion that deadly force was required in this case:

Q  Okay. Why do you pull your firearm?

A  Because I believe there is a firearm that was discharged, and at that point deadly force is beyond justified, and that's why I pulled my firearm, to protect myself and others.

(*Id.*, p. 56)

Conclusion

The denial of Officer Mensah's motion for summary judgment dismissing Cole's excessive force case was based upon an improper narrowing of the standard of review. The use of force is examined under a totality of the circumstances not simply "whether Cole pointed the gun at Mensah." To have denied Mensah's motion on a question of whether Cole pointed his weapon at Mensah is an error of law that requires reconsideration.

Additionally, permitting the case to go to trial risks compounding the error by suggesting the special verdict will have a single focus – whether Cole pointed his weapon at Mensah. Such a case presentation or verdict form contravenes the legal scope of review and the Seventh Circuit

Pattern Jury Instructions. An error of that magnitude would be unfairly prejudicial to Officer Mensah and risk reversal of any jury verdict that relied upon that faulty instruction.

Additionally, the factual support for the court's single-focus denial of Mensah's motion is also erroneous. Neither Officers Shamsi nor Olson ever testified that "Cole never pointed the gun in the direction of Mensah." (ECF 131 at 4) Adopting that misstatement as fact and relying upon it as justification for denying Officer Mensah's motion is a factual error that mandates reconsideration.

Accordingly, officer Mensah respectfully requests that this court reconsider his motion for summary judgment denial of the excessive force claim against him, and reverse its decision, then dismiss all claims and causes of action in this matter.

Dated this 26th day of April 2024.

**WIRTH + BAYNARD**
Attorneys for defendants

 */s/ electronically signed Joseph M. Wirth*
JOSEPH M. WIRTH
WI Bar No. 1012080
9898 W. Bluemound Road, Suite 2
Wauwatosa, Wisconsin 53226
T: (414) 291-7979 / F: (414) 291-7960
Email: jmw@wbattys.com