# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

ESTATE OF ALVIN COLE, et al,

    Plaintiffs,

  v.

JOSEPH ANTHONY MENSAH, et al.,

    Defendant.

Case No: 22-CV-0856[1]

(Original Case No 21-CV-0848)

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT MENSAH'S MOTION FOR RECONSIDERATION OF THE COURT'S SUMMARY JUDGMENT DECISION (DKT. 132)

Plaintiffs, the Estate of Alvin Cole, Tracy Cole, and Albert Cole, by their attorneys, submits this brief in opposition to Defendant Joseph Anthony Mensah's Motion for Reconsideration of the Court's Summary Judgment Decision[2] in the Alvin Cole matter, Case No. 22-CV-0856, and alleges and shows the Court as follows:

### PROCEDURAL POSTURE

Defendants moved for summary judgment and filed its proposed facts on July 31, 2023. (Dkt. 84; Dkt. 85). Plaintiffs filed its brief in opposition, proposed statement of facts, and response to Defendants' proposed statement of facts on August 22, 2023. (Dkt. 94; Dkt. 96; Dkt. 97). Plaintiffs also filed a request for oral argument on August 22. (Dkt. 98).

---

[1] The Court ordered all filings be made in the lead case, 21-CV-848; although the lead case has been dismissed, the order has not been amended. Plaintiff follows Defendant's lead and files this response in Case No. 21-CV-848, although it only affects only the remaining claims in 22-CV-0856.

[2] The Court's summary judgment Decision and Order is Dkt. 131.

Defendant filed a reply to Plaintiff's response, and a response to Plaintiff's proposed finding of facts on September 22, 2023. (Dkt. 117; Dkt. 118).

Defendants' proposed facts were heavily disputed. (Dkt. 97). Plaintiffs disputed Defendants' proposed facts on the grounds that their citations did not support the proposed fact, there was inadmissible evidence supporting the proposed fact, and that there was other evidence disputing the proposed fact. (*Id.*, at ¶¶ 9-10, 15, 49, 79). Defendants never once proposed a fact that Cole was actively resisting arresting or under arrest in its proposed facts, yet they seek to rely on this purported statement now. (Dkt. 97; Dkt. 85).

Following the parties' summary judgment submissions, the Court granted Plaintiffs request for oral argument that was scheduled for March 26, 2024. (Dkt. 128). The Court heard oral arguments (Dkt. 130); and issued a Decision and Order on March 29, 2024. (Dkt. 131). Defendants' summary judgment motion was granted in part and denied in part; relevant here, the Court denied Mensah's motion for summary judgment on the excessive force claim. (Dkt. 131). The Court noted that there was a significant dispute as to the events leading up to the moment Mensah killed Cole. (Dkt. 131, at 2-5). Specifically, after the Court reviewed the surrounding circumstances of the events leading up to Mensah's use of deadly force against Cole, it notes:

> Based on the conflict between the testimony of Olson and Shamsi, on the one hand, and Mensah, on the other, it is impossible to know what happened and whether Mensah's use of deadly force was reasonable.

(Dkt. 131, at 4). The Court also stated that qualified immunity was inapplicable because after

> taking the evidence in the light most favorable to plaintiffs, a reasonable jury could find that Cole did not point the gun in Mensah's direction, and that

2

> Mensah was, therefore, not justified in using deadly force. Thus, Mensah is not entitled to qualified immunity.

(Dkt. 131, at 5).

Subsequently, Defendant Mensah filed a motion to reconsider on April 26, 2024 as to the excessive force claim.[3] (Dkt. 132; Dkt. 133). Defendant Mensah alleged that the Court made an error of law and an error of fact, which if corrected, would entitle the excessive force claim against Mensah to be dismissed. (Dkt. 133, at 2). Plaintiff now files its response in opposition to Defendant's motion.

## DISCUSSION

"While motions to reconsider are permitted, they are disfavored." (Dkt. 129,[4] at 2). Such motions "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996); *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A "manifest error" is not demonstrated by the disappointment of the losing party. *Oto*, 224 F.3d at 606. Rather, the "wholesale disregard, misapplication, or failure to recognize controlling precedent" demonstrates a "manifest error of law." *Id*.

A party asserting such an error bears a heavy burden, and motions for reconsideration "are not at the disposal of parties who want to 'rehash' old arguments." *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F.Supp.2d 1041, 1045 (N.D.Ill. 2005). "To be within a mile of being granted, a motion for reconsideration has to give the tribunal to

---

[3] Defendant's did not argue in its motion for reconsideration about Plaintiffs Tracy Cole and Albert Cole's claim for loss of society and companionship.
[4] Dkt. 129 is Defendants' Response Brief in Opposition to Plaintiffs' Motion for Reconsideration in the *Anderson* case (*see* Dkt. 127).

3

which it is addressed a reason for changing its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

## I. THE COURT DID NOT MAKE A MANIFEST ERROR OF LAW; RATHER, THE COURT EXAMINED THE TOTALITY OF THE CIRCUMSTANCES.

### A. The Court Used the Proper Legal Standard.

The defense desperately attempts to argue that one fact alone cannot dictate whether a court grants or denies summary judgment, yet the reality is that the Court's decision was not based on one fact. Defendant Mensah through counsel claims that "a proper analysis required consideration of all circumstances preceding and surrounding Officer Mensah's use of [deadly] force." (Dkt. 133, at 3). Although consideration of all circumstances surrounding Officer Mensah's use of force is necessary, the "only relevant" question for summary judgment is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure." *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005), quoting *Tennessee v. Garner*, 471 U.S. 1, 8–9, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985).

Mensah blatantly ignores the fact that the Court analyzed the surrounding circumstances of Cole's unfortunate death. The Court reviewed the surrounding circumstances in detail and supported its view of the events by including: "several young people were involved in a disturbance at the" mall and that one of the persons were in possession of a gun. (Dkt. 131, at 2-3). Several officers responded, a group of the minors fled through the parking lot, and Officer Johnson pursued Cole on foot as Cole matched the description of the individual with a gun. (*Id*., at 3). There were multiple officers in different locations, and while fleeing, Cole shot himself in the arm, fell to the ground, and several officers converged on him. (*Id*.). Olson, who was to the west of Cole, testified

that moments before Mensah killed Cole, the right arm of Cole was extended and the gun was pointed west towards Olson. (*Id*.). Shamsi testified that moments before Mensah killed Cole, Cole's right arm, which held the gun, was pointed between Shamsi and Olson; that the gun never moved any time before or after Mensah shot Cole; and that Shamsi always had sight of the gun. (*Id*.). Mensah, who was to the northeast of Cole, testified that he shot Cole because Cole turned his body 270 degrees and pointed the gun only at him either over or under his left shoulder. (*Id*., at 3-4). Mensah testified that he shot Cole because he believed *his life* was in danger, not because other officer's lives were in danger. (*Id*., at 4). The level of detail from the Court indicates a full understanding of the scope of events leading to Cole's death, not a haphazard view of one fact as the Defendant suggests.

The Court's recap of the circumstances surrounding Mensah's deadly force is a perfect example of what was required of the Court. Specifically, that is "attention to the facts and circumstances of [this] particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer [], and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Despite Mensah's belief, which is not the law, a court may have a singular focus when analyzing a summary judgment motion on an excessive force claim and the Court does not have to specifically lay out a response to each *Graham* factor. *See, e.g.*, *Abdullahi*, 423 F.3d at 769-70 (finding that a jury must weigh all the evidence and choose between competing inferences as summary judgment decision focused on whether the officer knelt on suspect with enough force to inflict lethal injuries).

The Court's review of the facts shows that it implicitly went through the *Graham* analysis. Specifically, the Court acknowledged the severity of the crime – "several young people were involved in a disturbance at the Mayfair Mall." (Dkt. 131, at 2); *Graham*, 490 U.S. at 396. The Court also analyzed whether Cole posed a threat to Mensah – Mensah further testified that he did not see Cole point the gun at anyone else, and that "he shot Cole solely because Cole pointed the gun at him.". (Dkt. 131, at 4); *Graham*, 490 U.S. at 396. The Court did not have to analyze whether Cole posed a threat to the other officers because Mensah testified that he only feared for the safety of himself. (Dkt. 131, at 4); *Graham*, 490 U.S. at 396. The Court also addressed whether Cole was actively resisting arrest or attempting to flee – the Court concluded that a reasonable jury could believe that Cole was not "**actively**… attempting to evade arrest by flight," and rather that Cole was on the ground suffering from a gunshot wound. (Dkt. 131, at 4-5); *Graham*, 490 U.S. at 396. The Court acknowledged that Cole originally fled from Johnson, that at the time Mensah used deadly force, Cole was on the ground suffering from a self-inflicted gunshot wound, that two other officers testified that Cole never moved his right-arm, which was holding the gun, and that Cole's right-arm was not pointed in Mensah's direction. (Dkt. 131, at 3); *Graham*, 490 U.S. at 396.

The Court's own analysis shows that the Court got it right. Defendant should not be allowed to rehash old arguments. *Zurich Capital*, 383 F.Supp.2d at 1045. Defendant's complaints about the Court's decision shows a mere disappointment with the outcome, as opposed to criticism of the standard: the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606 ("manifest error" is not demonstrated by the disappointment of the losing party). Because the Court did not

disregard, misapply, or fail to recognize the law, this case should be tried before a jury as the Court intended.

## II. THE COURT SHOULD DENY DEFENDANT'S MOTION BECAUSE HE MISSTATES THE FACTS AND HIS CITED CASE LAW IS IRRELEVANT.

Defendant misstated the facts in this case and cited to precedent that does not support his argument. None of the four cases Defendant cited in support of his "error of law" analysis are on point. Defendant cited to cases in support of the legal standard that "deadly force is reasonable when a subject is resisting arrest." (Dkt. 131, at 4). Although that may be true in certain circumstances, those cases are irrelevant here because (1) Cole was <u>never</u> under arrest or resisting arrest at the time Mensah used deadly force, and (2) as Defendant stated, "one singular" fact cannot dictate the use of deadly force analysis.

### 1. Cole was Never Under Arrest or Resisting Arrest When Mensah Used Deadly Force and Defendants' Summary Judgment Submissions Do Not Support the Theory That Cole was Under Arrest or Resisting Arrest.

Nowhere in Defendant's proposed facts (that were heavily disputed) show that Cole was under or resisting arrest at the time Mensah killed him. (Dkt. 117; Dkt. 97; Dkt. 96; Dkt. 85). In fact, in Defendant's brief and facts in-chief, <u>never</u> once did Mensah put forth a proposed fact showing that Cole was under arrest or actively resisting arrest. *See* (Dkt. 97;[5] Dkt. 85). At best, Defendant alleged Officer Olson was trying to "cut off the group" of young persons from "fleeing further," but Plaintiff disputed that fact as Defendants' citation did not support it. (Dkt. 97, ¶ 28). As a result, Defendant should be barred from arguing that Cole was actively resisting arrest or under arrest as Defendant's summary judgment materials do not include that proposed fact.

---

[5] Dkt. 97 is Plaintiff's Response to Defendant's Proposed Facts in *Cole*.

## 2. The Cases Defendant Cited are Factually Distinct and Inapplicable.

### A. *Doxtator v. O'Brien*, 39 F.4th 852 (7th Cir. 2022).

The first misinterpreted case cited by Defendant is *Doxtator v. O'Brien*, 39 F.4th 852 (7th Cir. 2022). Defendant cited *Doxtator* in support of the theory that "a suspect has not been subdued merely because he has fallen to the ground, especially if he remains in possession of a weapon." (Dkt. 133, at 4). However, Defendant's use of *Doxtator* is heavily misleading for three reasons: (1) the Court never concluded or needed to conclude that Cole was subdued to deny Mensah's motion for summary judgment, (2) Defendant is rehashing old arguments from his summary judgment brief (Dkt. 84, at 8), and (3) Cole was not actively resisting arrest as discussed above. *Doxtator* does not support Defendant's legal arguments, nor does it show that the Court made a manifest error of law.

In *Doxtator*, the officer initiated a traffic stop of a vehicle with an unregistered plate that ran a red light. *Id.*, at 856. The vehicle did not initially pull over and continued to drive. *Id*. When the vehicle stopped, the suspect gave a false identification. *Id*. Once the suspect was identified, the officer discovered he had active warrants out for his arrest. *Id.*, 856-57. The officer placed the suspect under arrest, put him in the squad car with seatbelt on, and drove him to the jail. *Id.*, 857. On the way to jail, the suspect undid his seatbelt and maneuvered his handcuffed hands from behind his back to under the front of his shirt. *Id*. At the jail, officers went to get the suspect out of the squad car and saw that his hands were under his shirt; the suspect refused to get out of the car and remove his hands from under his shirt. *Id*. The officers believed the suspect had a gun. *Id*.

After the suspect refused to get out of the squad car multiple times, less lethal force was used. *Id*., 857-859. The officers used bean bag rounds, pepper spray, and a K-9, before resorting to deadly force. *Id.* Officers thwarted all other attempts to subdue the suspect, "including handcuffing him, spraying him with pepper spray, firing two bean bag rounds at him, releasing a canine unit to apprehend him. *Id*., at 862. Every time less lethal was used on the suspect, he got up and attempted to flee. *Id*.

The *Doxtator* court decided this case on "the veracity of this belief [that the suspect was armed]." *Id*., at 861. The most important part of the analysis was that "although [the suspect] was on the ground at the time [the officer] fired his gun in response to what he believed to be a gunshot, it was reasonable for [the officer] to believe that [the suspect] was not in fact subdued and would imminently get back up to his feet to rush for the exit. Indeed, mere seconds earlier, [the officer] had observed [the suspect] do just that after being shot with the first bean bag round." *Id*.

Here, Mensah's veracity cannot be properly assessed by the Court, which the Court correctly noted, as this job is left solely for a jury. In *Doxtator*, the officers' beliefs aligned – here, that is not the case as two versions of events emerged – Olson and Shamsi's vs. Mensah's. In addition, as Plaintiff pointed out, Mensah never said he shot Cole because he heard a gunshot or that he fired his gun in response to what he believed was a gunshot. (Dkt. 97, ¶ 39). Mensah fired at Cole because he purportedly saw a gun pointed <u>in his direction</u>. (Dkt. 131, at 4); *cf. Doxtator,* 39 F.4th at 861-62 (officer used reasonable deadly force when he shot an arrestee after he believed he heard gunshots). Mensah also never said he reasonably believed Cole was actively fleeing or that he watched Cole get back up and continue to flee on multiple occasions after being subjected

9

to less lethal force. *Cf*. *Doxtator,* 39 F. 4th at 862 (officer used reasonable deadly force when he shot an arrestee who continued to flee after being subject to less lethal force). And finally, Cole was never placed under arrest prior to being killed by Mensah. *Cf*. *Doxtator,* 39 F.4th at 861-62. Therefore, the *Doxtator* case is not similar in any respect to this case, and it does not support Defendant's motion.

### B. *Henning v. O'Leary*, 477 F.3d 492 (7th Cir. 2007).

The second irrelevant case utilized is *Henning v. O'Leary*, 477 F.3d 492 (7th Cir. 2007). Defendant believes that *Henning* supports his conclusion that "Cole's actions would cause any reasonable officer to believe Cole was actively resisting and attempting to evade arrest." (Dkt. 133, 4). Again, Cole was never under or resisting arrest and Defendant never tried to propose a factual assertion that he was. (Dkt. 97). *Henning* is the farthest thing from supporting Defendant's motion. *Henning* does not support Defendant's legal arguments, nor does it show that the Court made a manifest error of law.

In *Henning*, the plaintiff was leaving a friend's apartment, where a neighbor called the cops to report a suspicious person wearing a ski mask, leather jacket, and gloves who was hanging around in the parking lot. *Id*., at 493. After investigating the neighbor's complaint, the officers realized it was the plaintiff – who was not only wanted for a shooting a few days earlier, but also was on probation as a convicted felon for sexually assaulting a minor. *Id*., at 494. An officer pulled the plaintiff over and after talking with him, decided to give him a warning instead of a formal citation. *Id*. Before issuing the warning, the plaintiff said he did not have a ski mask and the officer saw the ski mask in his car, so the officers ordered the suspect out of the car to search it. *Id*. During the search of the car, they found a gun, which was a clear violation of his probation. *Id*. When the officers

10

arrested him, the plaintiff began to resist, and the officers were unable to put him in handcuffs. *Id*. The cops tried to bring him down and told him to stop resisting but the plaintiff failed to do so. *Id*. The officers tried hand strikes, pepper spray, and baton blows to get the plaintiff subdued. *Id*.

While attempting to subdue the plaintiff, one of the officers noticed his gun was no longer in his holster and it was under the plaintiff's body. *Id*. The officer felt the plaintiff's finger reach for the trigger and believed the barrel was pointed at him. *Id*. In response to that, the officer shot the suspect in the torso. *Id*. The court found that it was reasonable to use deadly force because the suspect "refusal to submit to the officers' attempts to handcuff him, the officer's gun got loose, and at least two officers believed the suspect had his hands on or near the gun." *Id*., at 496.

*Henning* fails to support Defendant's theory that any reasonable officer would believe Cole was actively resisting and attempting to evade arrest. *Henning* actually shows that the officers went through various other methods of subduing the suspect before resorting to deadly force, and that the officers <u>both</u> believed the suspect was pointing the gun in their direction. *Henning*, 477 F.3d at 496. And although Cole had a gun, at least two officers <u>dispute</u> Mensah's version of events – Shamsi and Olson said the gun was <u>not</u> pointed in Mensah's direction. (Dkt. 131, at 4). The officers in *Henning* were in direct proximity to the suspect, they were actively attempting to arrest the suspect; here, Mensah was not as close to Cole, he ran up behind him, and Mensah as well as the other officers were not actively attempting to put Cole in handcuffs. Moreover, Mensah was the *only* officer to shoot and kill Cole, despite other officers being closer and having a better view of Cole and the gun. That directly contradicts the assertion that all

11

reasonable officers would believe Cole was actively resisting and attempting to evade arrest.[6] Therefore, the *Henning* case is entirely distinguishable and fails support Defendant's motion.

### C. *Conley-Eaglebear v. Miller*, No. 16-3065, 2017 WL 7116973 (7th Cir. Sept. 26, 2017).

Defendant continues with citations to irrelevant cases and wholly ignores the factual dispute here – whether Cole pointed the gun at Mensah. (Dkt. 133, at 4-5). Defendant cites to *Conley-Eaglebear v. Miller*, and argues that, like the officer in *Conley*, who faced a "suspect [that] shot as he turned towards officer with gun in hand," his conduct was reasonable. (Dkt. 133, at 4-5; No. 16- 3065, 2017 WL 7116973 (7th Cir. Sept. 26, 2017)). This case is not only unpublished but also does not support Defendant's legal arguments or show that the Court made a manifest error of law.

Specifically, the court in *Conley*, concluded it was reasonable to use deadly force because the officer "saw the suspect draw a gun" and the gun "was moving toward" the officer. *Id*. That court's decision also explicitly noted that *the plaintiff did not show any facts to dispute* the defendant's version of events. *Id*.

As stated above, Defendant's version of events is heavily disputed, and this Court agreed. As this Court correctly noted, Mensah's colleagues disputed Mensah's version of events, i.e., that Cole <u>never</u> pointed a gun in Mensah's direction. (Dkt. 133, at 4). Moreover, Defendant's argument seemingly goes against his first point: that the Court

---

[6] Plaintiffs believe it is important to caution this Court against several severe misstatements of fact. Defendant continuously asserts throughout his brief that the Court should reconsider its decision because Cole was "actively resisting and attempting to evade arrest," but Defendant **never** alleged in its proposed facts that Cole was resisting or under arrest. Defendant has waived its ability to argue that fact when that fact was not included in his summary judgment submissions. *See* Dkt. 97. Misstatement of fact and advancing arguments not supported by the summary judgment submissions are improper and unprofessional.

should not have focused on a singular issue. By citing *Conley*, Defendant tried to argue that if an officer sees a gun pointed at them, the officer is justified in using force; however, that proposition, as Defendant initially argued, wholly ignores the mandate that a court must consider the totality of the circumstances leading up to the deadly force. There is no blanket rule that the moment an officer sees a gun, the office is justified in using deadly force. Because Defendant's arguments are circular and lack support, the Court was correct to send this case to the jury.

### D. *Helman v. Duhaime*, 742 F.3d 760, 763 (7th Cir. 2014)

Finally, Defendant cites *Helman v. Duhaime*, 742 F.3d 760 (7th Cir. 2014) to support the argument that "deadly force is objectively reasonable when suspect reaches for a firearm" (Dkt. 133, at 4-5). Defendant misstates *Helman*'s holding, and *Helman* does not show that the Court made a manifest error of law.

In *Helman*, the plaintiff argued that he did not attempt to draw his weapon until he was shot; but the court found that that was inconsistent with his criminal conviction. *Id*., at 763. Defendant's pinpoint citation does not stand for the proposition that it is objectively reasonable for deadly force to be used when suspect reaches for firearm. *Id*. The plaintiff's theories in *Helman* were denied because the plaintiff's versions of facts "would necessarily imply the invalidity of his state court conviction for resisting law enforcement," thus violating the rule of *Heck*. *Id*.

Here, there is no issue with *Heck* because Mensah killed Cole. Cole was never arrested, charged, or tried for any crime. Therefore, Defendant's citations are wholly irrelevant, misleading, and do not support his arguments. Because the citations do not show that this Court made a manifest error of law and that Defendant continuously

misstates the proposed facts, this Court should deny Defendant's motion for reconsideration.

## III. THE COURT DID NOT MAKE FACTUAL ERRORS THAT WARRANT RECONSIDERATION OF THE SUMMARY JUDGMENT DENIAL.

Defendant not only attempts to deflect from his own actions of misstating the facts, but also asks this Court to re-weigh the evidence – *in his favor*. Defendant has a high burden and to show an error of fact, he had to show the "wholesale disregard [or] misapplication" of the undisputed facts to the law. *Oto*, 224 F.3d at 606. But the facts were heavily disputed, and this case is prepared for a jury.

Defendant cited to Officers Shamsi's and Olson's deposition testimony to support his allegation that the Court incorrectly found that "Cole never pointed the gun in the direction of Mensah." (Dkt. 133, at 5-7). That is not what the Court found. The Court specifically stated it was denying summary judgment because a reasonable jury *could* believe Mensah, or it could believe Shamsi and Olson, or no one. (Dkt. 131, at 4). The Court decided that a jury was best equipped to judge that disputed issue of fact. (Dkt. 131, at 4-5).

Besides the fact that this is an improper ground for reconsideration as Defendant cites to no new evidence and is merely rehashing old arguments, *Zurich Capital*, 383 F.Supp.2d at 1045 (motions for reconsideration "are not at the disposal of parties who want to 'rehash' old arguments), it was not an error to use Shamsi and Olson's testimony as a basis to send this case to the jury. Whether the gun was pointed at Mensah is a disputed issue of fact, which is properly left for the jury to determine.

Moreover, it was not a factual error because (1) all facts must be taken in favor of the non-movant (here, that is Plaintiff), and (2) the Court cannot make credibility

determinations, thus, could not have credited Mensah's story over Shamsi and Olson's. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (when deciding motion for summary judgment, all disputed issues of fact are to be resolved in favor of the non-moving party).

Defendant is asking this Court to give Mensah's version of events more weight than Shamsi and Olson's. (Dkt. 133, at 5-7). That would be an error. *Reinebold v. Bruce*, 18 F.4th 922, 927 (7th Cir. 2021) ("A district court judge may not make credibility determinations [or] weigh the evidence…when ruling on a motion for summary judgment."). Just because Defendant disagrees with the outcome does not justify grounds for reconsideration. *Oto*, 224 F.3d at 606 ("manifest error" is not demonstrated by the disappointment of the losing party). Therefore, this Court should deny Defendant Mensah's motion and allow this case to proceed to trial.

## CONCLUSION

Plaintiffs respectfully request that this Court deny Defendant Mensah's motion because (1) Defendant misleads this Court by continuously misstating the proposed facts in the parties' summary judgment materials, (2) Defendant has not shown a manifest error of law, and (3) Defendant has not shown a manifest error of fact because the Court cannot re-weigh the evidence in favor of the non-movant or make credibility determinations, which further shows that a jury is required to sort this case out.

Dated this May 3, 2024.

**CADE LAW GROUP LLC**

By: s/Nathaniel Cade, Jr.
Nathaniel Cade, Jr. SBN: 1028115
Antonique C. Williams, SBN: 1051850
Annalisa Pusick SBN: 1116379

Madison Bedder SBN: 1121996
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (phone)
(414) 255-3804 (fax)
nate@cade-law.com
antonique@cade-law.com
annalisa@cade-law.com


**MOTLEY LEGAL SERVICES**
Kimberley Cy. Motley, SBN: 1047193
P.O. Box 1433
Matthews, NC 28106
(704) 763-5413 (phone)
(704) 909-4100 (fax)
kmotley@motleylegal.com


Attorneys for Plaintiffs