UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**ESTATE OF ANTONIO GONZALES,**
    Plaintiff,

    v.                        Case No. 21-cv-0848

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

**ESTATE OF JAY ANDERSON, JR., et al.,**
    Plaintiff,

    v.                        Case No. 21-cv-1179

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

**ESTATE OF ALVIN COLE, et al.,**
    Plaintiff,

    v.                        Case No. 22-cv-0856

**JOSEPH ANTHONY MENSAH, et al.,**
    Defendant.

---

## ORDER

Plaintiffs in these consolidated cases are the estates and relatives of individuals who were fatally shot by defendant Joseph Mensah, a former Wauwatosa police officer. On March 29, 2024, I granted in part and denied in part defendants' motion for summary judgment on the claims alleged by the Estate of Alvin Cole and Cole's parents, Tracy and Albert Cole. Defendant Mensah now moves for reconsideration of my decision denying his motion for summary judgment on the excessive force claim pursuant to Rule 54(b) of

the Federal Rules of Civil Procedure. For the reasons stated below, the motion will be denied.

Under Rule 54(b), I may revise any order adjudicating fewer than all the claims at any time before entry of judgment. Motions to reconsider an order under Rule 54(b) are judged largely by the same standards as motions to alter or amend a judgment under Rule 59(e), "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987). "Manifest error of law" refers to the misapplication or misidentification of controlling law. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Mensah argues that in denying his summary judgment motion I made mistakes of fact and law.

Briefly summarized, the facts leading up to Mensah's shooting of Cole are as follows: a number of Wauwatosa police officers responded to a report that a young man had a gun in a local mall. The young man, Alvin Cole, fled through the mall parking lot. The gun discharged in his hand causing Cole to shoot himself in his left arm. Cole then fell to the ground and the four officers surrounded him. Mensah fired five shots at Cole, killing him. I found that there was a material question of fact as to whether it was reasonable for Mensah to shoot Cole. This was so because there was a direct conflict between the testimony of Mensah and that of two of the other officers about whether Mensah's belief that he was in danger of death or serious bodily injury was reasonable. Mensah testified that his conduct was reasonable because Cole pointed a gun at him. Officers Evan Olson and David Shamsi, however, contradicted Mensah's testimony. Mensah contends that I misconstrued Olson and Shamsi's testimony. But Mensah is mistaken on this point.

The conflicting testimony that the record discloses is as follows: Mensah testified that he observed Cole down on all fours crawling southward with the gun in his right hand. Dep. of Joseph Mensah at 217:2–217:16, 219:24, ECF No. 95-1. Mensah further testified that immediately before he fired the fatal shots, Cole turned around and pointed the gun over or under his left shoulder at him. *Id.* at 219:1–219:6. Mensah stated that he saw Cole point the gun at him, and not at anyone else. *Id.* at 224:9–224:18. Olson, however, testified that when Mensah shot Cole, Cole's right arm was pointed westward in the direction of Mayfair Road, away from Mensah. Dep. of Evan Olson at 35:10–35:12, ECF No. 95-6. Olson further testified that after Mensah shot Cole, Cole's "right arm [was] extended with the firearm in his right hand **still oriented facing westbound**." *Id.* at 24:24–25:3 (emphasis added). Shamsi's testimony was to the same effect as Olson's. Shamsi testified that Cole's right arm "was pointed between where [Shamsi] was and where [Olson] was on Mayfair Road." Dep. of David Shamsi at 32:16–32:18, ECF No. 95-7. Mayfair Road was almost in the opposite direction of Mensah. Shamsi further testified that he never saw Cole's arm move from that position:

> Q: Did Cole ever take the gun and …Did he ever go the other way, counterclockwise, towards Mensah's position?
>
> A: I don't recall that.
>
> Q: Because you had sight of the gun at all times?
>
> A: Correct.
>
> Q: And the gun did not move while you had—prior to the shots, correct?
>
> A: I don't remember it moving.

3

*Id.* at 45:9–45:23. Both Olson and Shamsi testified that they did not recall seeing Cole point the gun at Mensah, and that they saw Cole pointing the gun an entirely different direction.[1] Thus, a reasonable jury could conclude from the testimony of Olson and Shamsi that Mensah did not have probable cause to believe that Cole posed a threat to his safety.

Mensah further contends that other statements made by Shamsi demonstrate that Shamsi believed the gun "could have" moved. Defs.' Br. in Supp. of Mot. for Recons. at 5, ECF No. 133. He points to Shamsi's testimony that:

> I think that everybody had their own perspective, and I can't speak to anybody else's perspective. I know from what I was looking at I could see it from my angle, but there was [sic] other people looking from their angles as well.

Shamsi Dep. at 55:3–55:15, ECF No. 95-7. This statement does not diminish the conflict between Shamsi's and Mensah's version of events. If anything, Shamsi's statement that everybody has their own perspective reinforces the proposition that an independent factfinder, a jury, is required to determine what happened.

Mensah also argues that I improperly focused on the issue of whether he had probable cause to believe that he, himself, was in danger or death or serious injury. Claims that law enforcement officers used excessive force are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The question is whether the officer had probable cause to believe that the suspect

---

[1] As I previously noted, based on Olson and Shamsi's testimony, from his position on the ground, Cole would have had to rotate his arm 270 degrees counterclockwise across his body in order to point the gun at Mensah. Olson and Shamsi testified that they did not observe Cole's arm move from the westward direction it was pointed in.

posed a significant threat of death or serious physical injury to himself or to others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *see also Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015) ("[A] person has a constitutional right not to be shot unless an officer reasonably believes that he poses a threat to the officer or someone else."). In the present case, Mensah testified that the reason he shot Cole was because Cole was pointing a gun at him. He testified that he did not see Cole point the gun at anyone else. Thus, he acknowledges that, as he saw it, Cole did not pose a threat to anyone other than himself. Whether he had probable cause to use deadly force, therefore, depends on whether his testimony that Cole was pointing the gun at him is determined to be credible. And, on this point, the testimony of Olson and Shamsi directly conflicts with Mensah's, presenting a factual question which only a jury can resolve.

Mensah argues that no matter which officer's testimony is credited, Cole was pointing a weapon somewhere and thus warranted a response of deadly force. But in determining whether force is "objectively reasonable" under the Fourth Amendment, only information known to the officer who used the force is considered. *Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988); *Doornbos v. City of Chicago*, 868 F.3d 572, 579 (7th Cir. 2017) ("In deciding excessive force claims, the issue is whether an officer's use of force was objectively reasonable given the information he or she knew at the time."). And the only information on which Mensah justifies his shooting Cole is that Cole was pointing a gun at him.

Mensah further asserts that it was error to deny qualified immunity. Whether a defendant is entitled to qualified immunity turns on two questions: (1) whether the facts, taken in the light most favorable to plaintiffs, describe a violation of a constitutional right;

5

and (2) whether the federal right at issue was clearly established at the time of the alleged violation. *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019). If either inquiry is answered in the negative, the defendant official is protected by qualified immunity. *Id.* As discussed above, a reasonable jury could conclude that Mensah lacked probable cause to believe that Cole posed an immediate threat to his safety, and thus, Mensah's use of deadly force violated Cole's Fourth Amendment rights. It is also clearly established—and has been since long before the shooting at issue here—that a person has a right not to be subjected to deadly force by an officer unless he puts the officer or another in imminent danger. *Williams v. Indiana State Police Dept.*, 797 F.3d 468, 484 (7th Cir. 2015); *Weinmann*, 787 F.3d at 448. Because a jury could find that Mensah did not have probable cause to believe that Cole had put him or others in imminent danger, I cannot presently grant Mensah's request for qualified immunity. *See Smith v. Finkley*, 10 F.4th 725 (7th Cir. 2021).

## CONCLUSION

Because there is no manifest error of fact or law warranting reconsideration of denial of summary judgment, **IT IS ORDERED** that Mensah's motion for reconsideration (ECF No. 132) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2024.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

6

Case 2:21-cv-00848-LA    Filed 10/18/24    Page 6 of 6    Document 140